UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

WILLIAM SCOVIN,

          Plaintiff,

v.

GREAT-WEST LIFE & ANNUITY CO., ONE HEALTH PLAN, INC., AUERBACH, POLLAK & RICHARDSON, INC, HUGH REGAN, LEWIS COHEN, ROBERT DRAKE, A. JONES YORKE,

          Defendants.

CIVIL ACTION NO.
02CV01161 (AWT)

June 27, 2003

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS REGAN, COHEN, AND YORKE'S MOTIONS TO DISMISS BASED ON A LACK OF PERSONAL JURISDICTION

Plaintiff William Scovin ("Scovin") submits this memorandum in opposition to the identical motions to dismiss and supporting memorandums of law submitted by Defendants Hugh Regan ("Regan"), Lewis Cohen ("Cohen"), and A. Jones Yorke ("Yorke") (collectively these three individual defendants are referred to as the "Officer Defendants"). Each of these defendants, who are former employees and officers of the defendant Auerbach, Pollak & Richardson, have moved to dismiss Plaintiff Scovin's complaint against them for lack of personal jurisdiction based on a "minimum contacts" test which does not apply in ERISA actions. Defendants' arguments fail because ERISA provides for personal jurisdiction based on a national

-1-

contacts test, and thus by virtue of their United States citizenship, personal jurisdiction is appropriate for all three Defendants. In addition, each of the Officer Defendants has minimum contacts with the state of Connecticut as a result of their activities and contacts with this jurisdiction.

## FACTUAL BACKGROUND

As alleged in his complaint, from August 1999 through January 2001, Scovin worked for Defendant, Auerbach, Pollak, and Richardson, Inc. ("Auerbach"), a small securities firm based in Stamford, Connecticut with offices in New York City. Scovin was advised that in late 2000 Auerbach merged with another firm known as Evision USA.Com, Inc., ("Evision") based in Colorado. As an employee, Scovin's health insurance was then provided by Auerbach through Oxford Health Plans.

In late January 2001, Scovin resigned. Scovin determined to continue his healthcare coverage with Auerbach under a COBRA plan. Auerbach agreed to pay for his coverage for the months of February and March 2001. Near the end of March 2001, Scovin had not heard from Auerbach regarding documentation, procedures or payment methods for obtaining health insurance under COBRA. After inquiring, he was referred to Terry Spahn, Human Resources Director for the combined companies, who was situated in Auerbach's Denver, Colorado offices. Ms. Spahn advised Scovin that effective April 1, Auerbach had stopped purchasing insurance from Oxford and was shifting its employees to Evision's existing health insurance plan (the "Plan") which was provided by Great-West. Ms. Spahn sent Scovin a description of the medical insurance coverage and the appropriate application forms but did not

provide him with the Summary Plan Description setting forth all of his rights under ERISA (the "SPD"). Scovin believed that he was purchasing a health insurance plan in which Great-West was serving as an insurer. Thereafter, beginning in April 2001 and through August 2001, Scovin paid $729.79 each month for his continued family health insurance coverage. Initially, these payments were made directly to Auerbach and beginning in July 2001 Scovin made the payments to a company known as CobraServ-CAP in Florida. CobraServ was a company retained by Great-West for the purpose of collecting and processing payments under COBRA plans.

      Scovin was concerned about ensuring continued coverage because he had an existing medical condition that required treatment. For several years, Scovin had suffered from intensely painful hip dysplasia. In the spring of 2001, Scovin and his physicians determined that the time had come for the surgical replacement of both hips. In May and June 2001, he began preparations for hip surgery. Scovin underwent a number of tests, autologous blood extractions and specialist consultations. At all points, the physicians, surgeons, and hospital conferred with Great-West and obtained pre-certification. In every case, Great-West approved the preliminary procedures and acknowledged the treatments would be accepted under his health insurance Plan.

      Scovin learned from industry sources in May 2001, that Auerbach was ordered by securities regulators to wind down its business as a result of a capital problem. Scovin was not advised that Auerbach was unable to pay its obligations or that there would be any cessation in the COBRA health insurance coverage he was paying for each month. While Scovin continued to be in contact with Auerbach's

at the hospital. In total, Scovin incurred $94,220.49 in medical expenses, which he believed should have been 90% to 100% covered by his Auerbach insurance Plan. In late July, Scovin sent his COBRA payment for August 2001 to CobraServ and the payment was accepted and deposited.

In September 2001, Scovin was called by the hospital's accounting department and was advised that Great-West was now refusing to pay the bills. Scovin immediately called Great-West but they would only state that the Plan was on "administrative hold". There was no one at Auerbach available to answer questions as Terry Spahn had left the firm and Scovin was never advised by Auerbach or the Officer Defendants that anyone else had been designate to advise him about his health coverage. After he submitted complaints to the Insurance Commissioners of Colorado, Connecticut, and New York and conferred with the Connecticut State Healthcare Ombudsman in the Attorney Generals Office, Scovin finally received a letter from Great-West, dated October 24, 2001, stating that the health insurance Plan had been terminated in September because Auerbach had not funded it.

In early 2002, Scovin contacted Terry Spahn and learned that as of approximately June 2001, Auerbach was in severe financial distress. Ms. Spahn indicated that she had resigned as the Director of Human Resources and the administrator of the Plan during that month.[1] Before Ms. Spahn left, she was aware that Great-West had sent Auerbach several demands for payment. In addition she was aware that Great-West had placed the Plan on "administrative hold" but had not cancelled it. She also indicated at that time, Auerbach employees were not being paid

---

[1] Scovin was not advised that Auerbach ever appointed anyone to replace Ms. Spahn as the Administrator of the Plan under the Plan documents after she resigned.

-5-

and layoffs were in process. Despite her requests to close the Plan in an orderly fashion, defendant Hugh Regan, the Chairman of the Board and President and CEO of Auerbach ("Regan") refused. Prior to Scovin's operation on July 12, 2001, for which he incurred $94,220.49 in medical expenses, no one from Great-West, Auerbach, or the Officer Defendants told him of these problems, or the fact that the Plan had been placed on "administrative hold." In early 2002 after months of trying to get a formal determination from both Great-West and Auerbach, Scovin finally was provided with a copy of the SPD by Great-West. Great-West again denied any obligation, claiming it had no discretionary authority under the Plan and that responsibility for payment rested solely with Auerbach. Auerbach simply failed to respond.

Scovin's claim for benefits has never been denied under any discretionary authority of the Plan Administrator, by Auerbach, or by any Plan fiduciary. No one has ever asserted his care was not medically necessary or that his treatment was not covered by the Plan. The sole reason given by the Plan, through the communications of Great-West, is that the Auerbach stopped funding the Plan resulting in an "administrative hold" followed by a termination of the Plan. It is significant that nowhere in the SPD which was delivered to Scovin in early 2002, more than 8 months after his surgery, does it permit the Plan to be placed on "administrative hold" or "terminated" retroactively.

Scovin commenced this action by his complaint dated June 28, 2002, against Great-West, Auerbach, Regan, Cohen, and Yorke and other former officers of Auerbach for their breach of fiduciary duty with respect to the Plan. Defendants

Regan, Cohen, and Yorke were the Chairman and CEO, Controller, and Vice Chairman of Auerbach and a member of its Board of Directors, respectively, and because of the control they exerted over the Plan by virtue of their positions, Scovin has alleged they are fiduciaries within the meaning of ERISA. 29 U.S.C. § 1002(21)(A) and he claims that they breached their fiduciary duties to him and are reasonable for the Plan's failure to pay his benefits.

## ARGUMENT

### I. STANDARD TO DISMISS FOR LACK OF PERSONAL JURISDICTION

In an ERISA action where the defendant presents a motion to dismiss based on a lack of personal jurisdiction, the Plaintiff must establish the Court's jurisdiction over the defendants. *AMA v. United HealthCare Corp.*, 2001 U.S. Dist. LEXIS 10818 at *13 (S.D.N.Y. 2001); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Prior to discovery, a motion to dismiss may be defeated if the plaintiffs' complaint and affidavits contain sufficient allegations to establish a *prima facie* showing of jurisdiction. *Id.* Moreover, the Court must assume the truth of the plaintiffs' factual allegations, *PDK Labs., Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997), even if the defendant asserts "contrary allegations that place in dispute the factual basis of plaintiff[s'] prima facie case." *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 (S.D.N.Y. 1995).

Discovery has not yet taken place in the present case. Therefore, the Court need only assume the truth of Plaintiff's allegations in his prima facie case, namely that the breach of fiduciary duty which is the basis for this suit took place in

-7-

Connecticut. Because the standard of review requires the Court to ignore Defendants' contrary assertions to Plaintiff's prima facie case, the motion to dismiss is not well founded at this time.

## II. AS FIDUCIARIES THE OFFICER DEFENDANTS ARE SUBJECT TO JURISDICTION NATIONALLY UNDER ERISA

### A. The Officer Defendants Are ERISA Fiduciaries

Scovin alleges a breach of fiduciary duty on the part of his ERISA benefits providers. (Plaintiff's Complaint at ¶ 30-48). He further alleges that the Officer Defendants were fiduciaries under the ERISA Plan. (Plaintiff's Complaint at ¶14-15). Regan, Cohen, and Yorke admit that they were, at the relevant time, officers, directors, employees, and/or agents of Auerbach. (Affadavit of Hugh Regan at ¶11, Affadavit of Lewis Cohen at ¶12, Affadavit of A. Jones Yorke at ¶13). Under 29 U.S.C. § 1002(21)(A), "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets…(iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

A person may be a fiduciary under ERISA based on the extent of his or her discretionary authority with respect to the ERISA plan or plan assets. 29 U.S.C. § 1002(21)(A); *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996). *See IT Corporation v. General American Life Insurance Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997) (actor with any control over disposition of plan money is a fiduciary). "An entity need not

-8-

have absolute discretion with respect to a benefit plan in order to be considered a fiduciary." *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987). An entity need only have "sufficient control over at least a part of the [Plan] assets to create a fiduciary relationship." *United States v. Glick*, 142 F.3d 520, 528 (2d Cir.1998).

Here, the Plan was not properly funded and the designated Plan administrator left the employ of Auerbach and was not replaced. All of these actions were within the control of the Officer Defendants who controlled both Auerbach and the Plan. Therefore Regan, Cohen, and Yorke may be considered to be fiduciaries under ERISA, as defined in 29 U.S.C. § 1002(21)(A), and thus personal jurisdiction over these defendants is appropriate under ERISA.

### B. Under ERISA The Officer Defendants Are Subject To National Jurisdiction

Section 502(e)(2) of ERISA states:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

Under ERISA this Court has nationwide jurisdiction without regard to the long arm provisions of state law. *See e.g., I.L.G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc.*, 986 F. Supp. 816, 822 (S.D.N.Y. 1997); *AMA, supra*, at *15. For purpose of this analysis it is enough that Scovin has alleged an ERISA claim against the Officer Defendants for breach of their duties as fiduciaries. "Whether a defendant is liable under ERISA is the subject to be litigated following service; it is not a condition

-9-

precedent to personal jurisdiction." *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035 (7th Cir. 2000).

It is clear Scovin has properly invoked this Court's jurisdiction over the Officer Defendants. Auerbach had an office in Stamford, Connecticut at which Scovin was employed, Scovin's medical benefits, for which defendants have failed to pay, were rendered in Connecticut at a time that Scovin was a Plan member residing in Connecticut, Scovin engaged in numerous communications with the Plan's representatives including Spahn and Great-West from Connecticut. Accordingly, Connecticut is a district in which both the Plan was administered and a breach allegedly occurred. Under the applicable standard of review, these allegations are sufficient to defeat the Officer Defendants' motions to dismiss. *See AMA*, *supra*, at *13.

The Officer Defendants' arguments to the contrary must fail and this Court need not look to the Connecticut long-arm statute as the starting point in its analysis. Courts have construed the ERISA nationwide service provision to confer personal jurisdiction over a defendant without regard to state long-arm statutes, so long as the defendant has sufficient minimum contacts with the United States. *See* 28 U.S.C. § 1132(e)(2); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir.1993), *cert. denied*, 513 U.S. 822, (1994); *I.L.G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc.*, 986 F.Supp. 816, 821 (S.D.N.Y.1997); *Trans World Airlines, Inc. v. Sinicropi*, 1994 WL 132233, at *2 (S.D.N.Y. April 14, 1994), *aff'd*, 84 F.3d 116 (2d Cir.), *cert. denied*, 519 U.S. 949, (1996). This approach, referred to as the "national" contacts test, inquires whether the defendant has minimum contacts with

-10-

the United States as a whole. Therefore, the "minimum contacts" analysis of *International Shoe Co. v. Washington*, 326 U.S. 310, (1945), which examines the contacts between the defendant and the state where the federal court that would exercise jurisdiction sits, does not govern when Congress provides nationwide service of process in connection with a federal cause of action. *See, e.g., Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974); *Dittmann v. Dyno Nobel, Inc.*, 1998 WL 865603 (N.D.N.Y. 1998).

"No limitations on sovereignty come into play in federal courts when all litigants are citizens." *Bd. of Trustees*, 212 F.3d at 1036 (internal citations omitted). As Defendants Cohen, Regan, and Yorke have all admitted that they are United States citizens (Affidavit of Cohen, at ¶3 (resident of New Jersey), Affidavit of Regan at ¶3 (resident of New York), and Affidavit of Yorke at ¶3 (resident of New York)), personal jurisdiction over each of these Defendants is clearly appropriate under the national contacts test. *Dittman, supra*, at *9.

Auerbach formerly had offices in both New York and Stamford, Connecticut. All three individual defendants are United States citizens, and all are alleged to have made decisions in their status as ERISA fiduciaries and former employees of Auerbach, which affected Scovin, an ERISA beneficiary domiciled in Connecticut. Defendant's affidavits all speak to their direct personal and business-related contacts with the state of Connecticut, but under the relevant ERISA jurisdictional provisions, this analysis is irrelevant, as the applicable "national contacts" test examines the relevant contacts with the United States, not the state where the federal court hearing

-11-

the action sits. *Mariash*, 496 F.2d at 1143. Therefore, this Court should deny the Motion to Dismiss.

### C. Defendants Have Not Established Any Constitutional Defect to Jurisdiction

Without ever addressing the national jurisdiction applicable to them under ERISA, the Officer Defendants assert that due process precludes jurisdiction over them because they lack minimum contacts with this District. The Officer Defendants assert "the mere fact of employment with a corporation which does business within the state of Connecticut is not enough to establish personal jurisdiction over an individual employee." Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint (Regan, Cohen & Yorke) at 3, *citing Marczeski v. Kamba*, 2001 U.S. Dist. LEXIS 12555, *7 n.2 (D.Conn. 2001). Further, the Officer Defendants assert that the exercise of personal jurisdiction over them would violate the due process clause of the Fourteenth Amendment of the United States Constitution. Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint at 4.

Defendants' analysis is entirely misplaced because it is predicated upon and solely applicable to claims brought under state law and the diversity statutes. The Defendants have misplaced their reliance on the "minimum contacts" due process standard set out by the seminal *International Shoe* case, which requires that a defendant "personally avail [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v.*

*Denckla*, 357 U.S. 235, 253 (1958). As previously noted, the minimum contacts test set out by *International Shoe* "does not govern when Congress provides nationwide service of process in connection with a federal cause of action." *Dittmann, supra*, at *7. Because ERISA is a federal statute, all claims arising under it are within federal jurisdiction. *Bd. of Trustees*, 212 F.3d at 1038. "The Supreme Court has not addressed the constitutionality of the national contacts test, but all the courts of appeals that have addressed the question [including the Second Circuit] have applied a national contacts standard when process is served under an applicable federal service provision." *Dittman, supra*, at *9 (internal citations omitted).

Because the statute provides federal jurisdiction for ERISA claims, the Plaintiff is not bound by the limits of the Fourteenth Amendment. In the Second Circuit, the limits on due process under the Fourteenth Amendment simply do not apply to ERISA claims: "It seems anomalous that a federal court adjudicating federally created rights and exercising the sovereign power of the United States should be bound by limitations developed under the Fourteenth Amendment, which by its own language applies only to the several states and not to the federal government." *Dittman, supra*, at *7, *citing* 4 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1067.1 at 310 (2d ed. 1987). Accordingly, the Officer Defendant's are properly subject to this Court's jurisdiction under the national jurisdiction standard of ERISA.

### III. THE OFFICER DEFENDANTS DID HAVE MINIMUM CONTACTS WITH CONNECTICUT

Even if this Court were to assume that the traditional minimum contacts test for personal jurisdiction was appropriate in this ERISA action, personal jurisdiction over the Officer Defendants is proper because the Officer Defendants did have the minimum contacts with Connecticut necessary to assert personal jurisdiction over them through Connecticut's long-arm statute, Conn. Gen. Stat. § 52-59b. Defendants Regan, Cohen, and Yorke were the Chairman and CEO, Controller, and Vice Chairman of Auerbach and a member of its Board of Directors, respectively. Plaintiff's Complaint, ¶¶ 6,8,9. Auerbach was, at all relevant times, a Connecticut corporation with its principal place of business in Stamford, Connecticut.[2] Plaintiff's Complaint ¶5. It is inapposite that these defendants can claim that they did not have any contact with a state that headquartered the company they formerly controlled.

Defendants correctly assert case law which stands for the general proposition that one cannot assert personal jurisdiction over a corporate officer for acts done in another state only in his employee capacity. *See Reese v. Arrow Fin. Servs., LLC*, 202 F.R.D. 83, 89 (D.Conn. 2001). Defendants, however, have been brought in this case not merely based on their former employment with Auerbach, but because of their status as ERISA fiduciaries at all relevant times. *See Brujis v. Shaw*, 876 F.Supp. 975, 980 (N.D.Ill. 1995) (exercise of jurisdiction over non-resident corporate officers was proper where defendants' contacts with forum state were made in

---

[2] A Lexis search for New York Times articles which discussed Auerbach all described the company as located in Stamford, Connecticut. *See, e.g.*, Mireya Navarro, *Florida to Sell Tobacco Stocks from Its Retirement Fund*, N.Y. TIMES, May 29, 1997; David Barboza, *Investing It: Asking a Lawyer to Lift Tobacco's Haze*, N.Y. TIMES, May 4, 1997; Alison Leigh Cowan, *Agent Orange Ruling May Affect Product-Liability Lawsuits*, N.Y. TIMES, Feb. 23, 1994.

representative capacity but defendants "were senior corporate officers in a position to decide whether those contacts should be made at all").

The Officer Defendants' reliance on contrary ERISA authority is misplaced. For example, in *Mozes ex rel. General Elec. Co v. Welch*, 638 F.Supp. 215, 224 (D.Conn. 1986), it was held that there could be no jurisdiction over the outside directors of a company for ERISA violations. These Defendants cannot claim the distance and disconnection from the plan which might accrue to a mere outside director. It can be argued that an outside director could not exert the type of discretionary authority required under 29 U.S.C. § 1002(21)(A) with regard to the ERISA Plan. Here, however, all three of the Officer Defendants were formerly employees and officers of Auerbach and it is expressly alleged that they exercised fiduciary discretion regarding the disposition of Plan and its assets. Thus, the allegations which made personal jurisdiction inappropriate in *Mozes* simply do not apply in the present case.

Indeed, Plaintiff Scovin's complaint has alleged facts which indicate that Auerbach and its officers, as ERISA fiduciaries, have made representations (or caused representations to be made) to Scovin by letter and telephone regarding the status of his health care plan which later turned out to be false. In Connecticut, even minimum contacts such as these have been appropriate to assert personal jurisdiction. *David v. Weitzman*, 677 F. Supp. 95, 96-97 (D.Conn. 1987) (false representations by mail and telephone to Connecticut plaintiff sufficient to establish long-arm jurisdiction because acts were committed within Connecticut). Plaintiff Scovin relied the representations of ERISA Plan fiduciaries regarding the continuing coverage

status of his health care plan before undergoing surgery. As the chief operating officers and key inside directors of Auerbach, it was the Officer Defendants who had an the power to replace Ms. Spahn as the Plan Administrator when she resigned in June 2001, it was the Officer Defendants, who determined to stop funding the Plan, and it was the Officer Defendants who had the duty to advise Scovin that if he proceed with his operation, the Plan would default on its obligation to pay for his treatment.

### IV.  THIS COURT SHOULD NOT GRANT DISMISSAL WITHOUT DISCOVERY

Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990). Where discovery has taken place, however, "the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Id.* at 197. As discovery has not yet taken place, no facts have come to light which would counter the jurisdictional elements of Plaintiff's *prima facie* case as alleged in his ninth and tenth causes of action, and therefore this Court should not dismiss Officer Defendants from this action.

Plaintiff Scovin's complaint describes the Defendants' failure to provide ERISA benefits, their misrepresentations regarding the status of the Plan, and their communications to him regarding his coverage under the Plan, which were all made to Scovin while he was domiciled and underwent surgery in Connecticut. In benefits

and insurance claims, tort actions for failure to make payment to a Connecticut beneficiary are deemed to have taken place in Connecticut for jurisdictional purposes, because all communications regarding benefits payments are transmitted to the plan beneficiary in Connecticut. *Teleco Oilfield Services, Inc. v. Skandia Insurance Company, Ltd.*, 656 F.Supp. 753, 758 (D.Conn. 1987). Officer Defendants, as Plan fiduciaries, were responsible for those communications because of their discretion over the Plan. The Plaintiff has clearly made out his *prima facie* case for jurisdiction under the applicable Connecticut standard, therefore, this Court should not grant dismissal.

If however, this Court wishes to look beyond the allegations of the complaint, Plaintiff should be permitted time to pursue discovery from the Officer Defendants. Scovin has already served interrogatories and document requests on these defendants and is currently awaiting their responses. If the facts of the Officer Defendant's involvement in the control of the Plan and its assets are at issue, then Scovin should be allowed time to obtain the responses to its currently pending discovery and conduct depositions of each of these defendants, before this Court makes a final determination on these motions.

## CONCLUSION

The appropriate test for personal jurisdiction in ERISA cases relied upon in the Second Circuit is one of national contacts. The Plaintiff here clearly has personal jurisdiction over each of these Defendants, who were, at all relevant times, are alleged to have been ERISA fiduciaries. Further, each of the Defendants' had minimum

-17-

contacts with the state of Connecticut at all relevant times. Accordingly, their motions to dismiss should each be denied.

                                       **THE PLAINTIFF,**
                                       **WILLIAM SCOVIN.**

By _____

                    Kevin M. Greco (ct 13195)
                    Peter M. Nollin (ct 06223)
                    **Sandak Hennessey & Greco LLP**
                    970 Summer Street
                    Stamford, CT 06905
                    (203) 425-4200
                    (203) 325-8608 (fax)
                    His Attorneys.

-19-

## CERTIFICATION

     I hereby certify that a copy of the foregoing was mailed, postage prepaid, on this 27th day of June, 2003 to:

James J. Ciapciak, Esq.
Ciapciak & Associates, P.C.
99 Access Road
Norwood, MA 02062

Peter Flemming, III, Esq.
Curtis, Mallet-Prevost, Colt & Mosle
695 East Main Street
Stamford, CT 06901

Robert Drake, Pro Se
333 Ludlow Street
Stamford, CT 06902

                                                  _____
                                                  Kevin M. Greco