### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

_____
)
**WILLIAM SCOVIN**                        )
)
)
**Plaintiff,**                        )
)        **CIVIL ACTION NO.**
**v.**                                        )
)        **3:02CV01161 (AWT)**
**GREAT-WEST LIFE & ANNUITY INS. CO.,**        )
**ONE HEALTH PLAN, INC., AUERBACH, POLLAK**        )
**& RICHARDSON, INC., HUGH REGAN,**        )
**LEWIS COHEN, ROBERT DRAKE, A. JONES**        )
**YORKE**                                )
**Defendants.**                        )
_____)        **NOVEMBER 1, 2005**

### <u>AMENDED COMPLAINT</u>

### <u>INTRODUCTION</u>

1.        Mr. William Scovin brings suit under the Employee Retirement Income Security

Act ("ERISA"), Sections 29 U.S.C. §§1001 <u>et</u> <u>seq</u>.; 29 U.S.C. §1132(a)(1)(B) <u>et</u> <u>seq</u>.; and §1140

<u>et</u> <u>seq</u>., for the defendants failure to pay medical benefits under their medical benefits plan, and

state law claims for breach of contract, negligent misrepresentation, negligent management,

breach of fiduciary obligations, fraud and deceit, Connecticut General Statutes Section 42-110,

et seq. (CUTPA), negligent infliction of emotional distress, piercing the corporate veil, and breach of contract / promissory estoppel.

## THE PARTIES

2.    Plaintiff, William Scovin, resides in Bridgewater, CT.

3.    Defendant Great-West Life & Annuity Ins. Co. ("Great West"), is an insurance company organized under the State of Colorado with its principal place of business in Colorado and does business throughout the United States including New York, New Jersey, and Connecticut.

4.    Defendant One Health Plan ("One Health") is an insurance company organized under the laws of the State of Colorado with its principal place of business located in Colorado and is a subsidiary of Defendant Great West.

5.    At all relevant times, the Defendant Great West was acting as the servant an agent of the Defendant Auerbach or was otherwise acting with the authority to handle, process, authorize, and accept claims on behalf of the Defendants.

6.    Defendant Auerbach, Pollak & Richardson, Inc. ("Auerbach") is or was a Connecticut corporation with its principal place of business located at 333 Ludlow Street, Stamford, CT.  Auerbach also had addresses in New York and New Jersey.

7.    Defendant Hugh Regan is or was the Chairman/President & CEO of Defendant

Auerbach with offices located in Stamford, CT.

    8.    Defendant Robert Drake was the head of Operations at Defendant Auerbach with an office located in Stamford, CT.

    9.    At all times relevant, Defendant Lewis Cohen was the controller of Defendant Auerbach with offices located in Stamford, CT.

    10.    Defendant A. Jones Yorke is or was vice chairman of Defendant Auerbach and a member of Auerbach's Board of Directors with offices in Stamford, CT.

## JURISDICTION

    11.    This court has jurisdiction of this action pursuant to 29 U.S.C. §1132(e) and 28 U.S.C. §1331.  This court has venue of this action pursuant to 29 U.S.C. §1132(e)(2).  Moreover, this Court has supplemental jurisdiction under 28 U.S.C. 1367 and the Plaintiff has exhausted all available remedies under his medical benefit plan supplied by his employer at the time, Defendant Auerbach.

## FACTS

    12.    During approximately August of 1999, the Plaintiff, William Scovin began his employment with Defendant Auerbach and received, among other things, family medical and insurance benefits in the form of a Point of Service ("POS") or a Primary Care Provider ("PCP") Plan  provided by Oxford Healthcare as part of his employment package with Auerbach.

13.     Subsequently, Auerbach acquired certain assets from eVision USA.COM and changed to or otherwise adopted eVision's healthcare plan which was a self funded plan administered and provided by Great West (the "Plan").

14.     Commencing approximately in April 2001, Auerbach provided health care coverage to Scovin under COBRA and enrolled Scovin and his family in the Great West health care plan, but at all relevant times, the Defendants did not provide William Scovin with a copy of the Summary Plan Description ("SPD") and provided no relevant information concerning the type or status of the Plan.

15.     Auerbach is the sponsor of the Plan and it is also a Plan fiduciary under ERISA.

16.     At all relevant times, Defendants Hugh Regan, ("Regan"), Louis Cohen, ("Cohen"), Robert Drake ("Drake"), and A. Jones Yorke ("Yorke") were officers, directors, employees, and/or agents of Defendant Auerbach and controlled the funding and operation of Auerbach's healthcare Plan.

17.     As a result of the facts set forth herein and in furtherance of their acts, omissions, responsibilities, and conduct, Defendants Regan, Cohen, Drake, and Yorke are Plan fiduciaries under ERISA.

18.     Defendants Great West and Health One are, among other things, administrators of the Plan, fiduciaries under the Plan pursuant to ERISA, and were agents and servants of

Auerbach.

19.     At all times set forth herein, the Plaintiff, William Scovin and his family were participants under the Plan.  As a result and at all times relevant, each of the Defendants had a fiduciary relationship, obligations, and/or contractual obligations with respect to the Plaintiff.

20.     At approximately the end of January 2001, the Plaintiff left his employment at Auerbach and Auerbach, acting through Regan, agreed to pay his family health care benefits for February and March of 2001 to the then provider, Oxford Health Service.  Regan also confirmed and stated that, thereafter, Scovin could continue coverage under COBRA.  Sometime during approximately April of 2001 and unbeknownst to the Plaintiff, Defendant Auerbach switched providers from Oxford to Defendants Great West and One Health.

21.     As the insurance providers, fiduciaries, and/or as acting on behalf of Defendant Auerbach, the Defendants are subject to and governed by ERISA and/or the common law.

22.     Commencing approximately in April of 2001, Plaintiff William Scovin was advised of the existence of the Great West Plan, continued to maintain his family medical benefit package/coverage and in consideration of Auerbach / Regan's statements, paid monthly premiums of $729.79 under COBRA through approximately August 2001 for healthcare coverage under the Plan provided by the Defendants, Auerbach, Great West, and One Health.

23.     The Defendants, their agents and/or servants, accepted each of the Plaintiff's

monthly premiums, cashed or negotiated the Plaintiff's COBRA payment checks during the

pertinent time period(s), acted in concert with the Plan fiduciaries in failing to provide the

benefit(s), and/or used the Plaintiff's payments for their own or Auerbach's purposes instead of

their ERISA and/or contractual obligations and promises to the Plaintiff.  In so doing, among

other things, Defendants induced the Plaintiff into believing that he had insurance coverage and

that it was in full force and effect, and into not obtaining alternative insurance..

　　　　24.　　At no time did the Defendants, their agents or servants, return or otherwise

reimburse the Plaintiff his COBRA payments which he paid to them to secure the benefits and

cover his contribution towards the promised medical benefits which benefits he never received.

　　　　25.　　At no time did the Defendants advise Scovin that, unlike the prior Oxford

healthcare plan, the Great West healthcare plan with Auerbach was a "self funded plan" that

was dependent upon Auerbach making periodic/monthly payments to Great West to fund the

medical cost incurred by Auerbach's employees.

　　　　26.　　In early 2001 and into June 2001, Auerbach experienced a significant capital

short fall(s) and as a result stopped its day to day trading activity and/or sent out regulatory

notices in connection therewith.

　　　　27.　　In addition, Auerbach, its agents and servants, lost an arbitration litigation which

also contributed towards the capital shortfall or otherwise caused an adverse affect on the

company and its capitalization status.

28.     During approximately June and into July 2001, Auerbach stopped paying many of its employees, and began laying off its employees.

29.     As a result of these financial problems and during that time, Auerbach at the direction of and/or with the knowledge or consent of Defendants Regan, Yorke, Cohen and Drake ceased funding the Plan.

30.     During the early part of 2001 including June/July, the Plan administrator advised and otherwise warned the Defendants, including Regan, of the financial concerns and adverse status of the Plan and what needed to be done as a result thereof.

31.     In late June or early July 2001, the Plan administrator appointed by Auerbach resigned, but the Defendants Auerbach, Regan, Yorke, Cohen and Drake failed to appoint a replacement Plan administrator or otherwise address the funding problems with the Plan.

32.     On or about July 12, 2001, Plaintiff William Scovin underwent a medically necessary surgical procedure involving a bilateral hip replacement at the Danbury Hospital.

33.     As a result of the medical treatment, therapy, and hospitalization, Plaintiff's medical bills and expenses exceeded $90,000.00.

34.     In accordance with the procedures set forth in the Plan, the Plaintiff William Scovin before incurring the aforesaid medical care and hospitalization, sought express approval

for his course of treatment.

35.    Defendants Great West and One Health at all relevant times were authorized under the Plan and/or held themselves out to have the authority to pre-approve/ pre-certify the subject medical treatments set forth herein.

36.    As a result, prior to the aforesaid surgery and related medical treatment(s), the Danbury Hospital, the other medical providers, and/or Plaintiff William Scovin received pre-approval/pre-certification for the treatments and surgery from the Defendants Great West and One Health.

37.    Throughout the relevant time period, the Defendants, their agents and representatives, omitted telling Plaintiff the true status of the Plan, and repeatedly represented to and assured William Scovin that his medical benefits were continuing, that the Plan was in effect, and that his procedures were approved and that therefore his bills would be paid.

38.    The Plaintiff relied upon the above representations, omissions, and conduct of the Defendants, their agents and servants to his financial detriment.

39.    At times during this time period, the Defendants, including Regan, Yorke, Cohen, and/or Drake met and discussed that Auerbach was financially failing and should be wound up; knew or should have known of Auerbach's adverse financial status, knew or should have known that its bills and expenses were not being paid, that the Plan was not being funded or adequately

funded, that the Plan or its benefits had been placed on hold, that the Plan was otherwise in

jeopardy, and/or they were advised to fund the Plan or, in the alternative, to advise the

beneficiaries under the Plan of the situation and that the coverage may not be available or would

otherwise be on hold or cease.

    40.    Prior to July 12, 2001 and despite their knowledge that Auerbach's finances were

precarious and/or that Auerbach could not fund the Plan and that Defendants Regan, Yorke,

Cohen and Drake had decided not to fund the Plan, the Defendants failed to advise the Plaintiff

of these facts when they knew or should have known it was their obligation to inform him, and

that it would be unreasonable not to do so.

    41.    Notwithstanding a decision to stop funding the Plan, the defendants Auerbach,

Regan, Yorke, Cohen and Drake took no steps to close down or terminate the Plan or to notify

beneficiaries of the Plan, including COBRA beneficiaries like the Plaintiff, that the Plan could

no longer meet all its financial obligations to pay for the medical costs incurred by such

beneficiaries.

    42.    The Defendants, their agents, servants, or representatives, failed to timely and/or

properly notify the Plaintiff of any financial or funding concerns about the Plan, administrative

holds, or other similar issues adversely affecting his benefits when they knew or should have

known that it would be unreasonable not to do so and that such conduct would financially harm

William Scovin and would violate their fiduciary obligations to him.

43.    In approximately September 2001, well after the completion of the surgery, Plaintiff learned from Danbury Hospital and other providers that his medical bills remained unpaid and/or outstanding.

44.    Despite their pre-approval of his course of treatment, their representations, and their acceptance of his COBRA payments, the Defendants refused to pay and/or otherwise cover the medical bills and costs incurred by Plaintiff William Scovin claiming that the Plan was not being funded by Auerbach, but at no time did the Plan ever determine that Scovin's bills and costs were not eligible for payment under the Plan.

45.    William Scovin also learned that Defendant Auerbach has not and/or has refused to cover the outstanding medical expenses incurred by other beneficiaries of the Plan during the relevant time period(s) and upon information and belief, Plaintiff has learned that the Plan was on administrative hold by Great West during part of the relevant time period of his treatment and subsequently Great West terminated its relationship with Auerbach as a result of Auerbach's failure to fund the Plan.

46.    At this time, Plaintiff's medical expenses and bills remain outstanding and he has been placed into collections by his medical providers thereby causing him damages.

47.    As a result of, among other things, the Defendants' delay, their acceptance of his

monthly payments, their representations, pre-approvals and conduct, their failure to inform him of the status of his coverage or of the status of the Plan, and the Defendants' retroactive refusal to pay for pre-approved medical treatments, the Plaintiff incurred medical expenses and costs to his financial detriment and which he would not have otherwise incurred.

48.     Additionally, the Defendants' failure to timely notify the Plaintiff William Scovin of any concerns or other problems with the Plan or its funding precluded him from timely obtaining alternative insurance coverage before undertaking the aforesaid medical treatment.

49.     As a further result of the above, the Plaintiff has suffered mental anguish and emotional distress.

## FIRST CAUSE OF ACTION

### (Denial of Benefits by Defendant s Great West and One Health under the Plan)

50.     Paragraphs 1 through 49 are replead as if fully set forth herein.

51.     The Defendants Great West and Health One have breached their contractual and fiduciary obligations by failing to pay Plaintiff's medical expenses and benefits to which he is entitled.

52.     29 U.S.C. §§1001 et seq. entitles Plaintiff to enforce his rights to benefits under the Plan.

## II. SECOND CAUSE OF ACTION

### (Denial of Benefits by Defendants Auerbach, Regan, Yorke, Cohen, and Drake

### Under the Plan)

53.     Paragraphs 1 through 49 are replead as if fully set forth herein.

54.     The Defendants Auerbach, Regan, Yorke, Cohen, and Drake have breached their

contractual and fiduciary obligations under the Plan by failing to pay Plaintiff's medical

expenses and benefits to which he is entitled.

55.     29 U.S.C. §§1001 et seq. entitles Plaintiff to enforce his rights to benefits under

the Plan.


## III.  THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty Against Great West and One Health)

56.     Paragraphs 1 through 55 are replead as if fully set forth herein.

57.     Plaintiff reasonably relied to his detriment on the Defendants Great West and One

Health's pre-approval of his treatment as well as the Defendants' omissions and representations

set forth herein as well as the fact that he was covered under the Plan both before and after

seeking medical treatment.

58.     Defendants Great West and One Health had a duty to inform Plaintiff of the status

of the Plan, that it was on administrative hold, and the conditions under which his coverage existed at the time and that it could end so that he could act accordingly.

59.    By pre-approving his care and treatment, by failing to inform him that the Plan was on administrative hold, that it was not being funded, that it was otherwise at risk, or that his coverage could end or lapse under the circumstances, Defendants Great West and One Health breached their fiduciary duty and as a result Mr. Scovin proceeded with medical treatment to his detriment and/or was deprived of the opportunity to apply for alternative medical benefits and/or seek replacement coverage.

60.    In addition, Defendants' failure to provide plaintiff a copy of the Plan deprived plaintiff of his right to know the extent of his coverage and any rights or appeals relating thereto.

61.    As a result, Plaintiff has suffered economic and consequential losses and Defendants should be estopped from now denying coverage.

## IV.  FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty Against Auerbach)

62.    Paragraphs 1 through 61 are replead as if fully set forth herein.

63.    Plaintiff reasonably relied to his detriment on the Defendant Auerbach, its agents, servants, and representatives' pre-approval of his treatment and Defendants' omissions and

representations that he was covered under the Plan before seeking medical treatment and after.

64.     Defendant Auerbach, its agents servants, and representatives, had a duty to inform Plaintiff of the status of the Plan and the conditions under which his coverage could end so that he could conduct his personal/medical affairs and act accordingly.  By pre-approving his treatment, by omitting or failing to inform him that the Plan was on administrative hold, that it was not being funded, or that it was otherwise at risk, or that his coverage could end or lapse under the circumstances, Defendant Auerbach breached its fiduciary duties and as a result Mr. Scovin proceeded with medical treatment to his detriment and/or was deprived of the opportunity to apply immediately for alternative medical benefits and/or seek replacement coverage.

65.     In addition, Defendant's failure to provide Plaintiff a copy of the Plan deprived plaintiff of his right to know the extent of his coverage and any rights or appeals relating thereto.

## V.  FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation Against All Defendants

66.     Paragraphs 1 through 656 are replead as if fully set forth herein.

67.     At all relevant times, the Defendants, Great West,  Health One, Auerbach, Regan, Yorke, Cohen and Drake their agents and servants, knew or should have known that the Plaintiff needed and believed that he had coverage, and/or would use it or otherwise rely upon it and/or

that, in fact, he was scheduled for non-emergency medical treatment and surgery.

68.    At all relevant times, the Defendants, their agents or servants, had a duty to advice or otherwise inform William Scovin of the status of the Plan and in particular, that coverage was on hold or did not or might not exist.

69.    At all times relevant, the Defendants, and their agents, servants, and representatives, had a duty to disclose adverse information concerning the status of the Plan, including its financial status and if it was on administrative hold, whether it was being adequately funded, and/or similar concerns, as well as the status of Plaintiffs' coverage there under to the Plaintiff.

70.    At no time before William Scovin underwent the medical treatment and/or surgery as described herein did the Defendants, their agents or servants, orally or in writing advise him that the Plan was on administrative hold, or that problems and/or concerns existed with the financial status of the Plan.

71.    The Defendants, their agents or servants, negligently omitted telling William Scovin that the Plan was on administrative hold, or that problems and/or concerns existed with the financial status of the Plan.

72.    At all times relevant, the Defendants knew or should have known that William Scovin would rely upon the Plan's existence, their omissions and representations that he was to

be covered under the Plan and that he was pre-approved for the aforesaid treatments.

73.    The Defendants, their agents or representatives, pre-approved medical treatment, failed to advise participants including William Scovin, and permitted the Plan to continue under the circumstances when they knew or should have known for some time that it was not being properly funded by Auerbach and/or otherwise was at financial risk and would possibly be terminated.

74.    The Defendants failed to disclose any information to the Plaintiff regarding his status or exposure under the Plan or that of the Plan itself under the circumstances,  and pre-approved him despite their knowledge that the Plan was in financial jeopardy and/or that the Plaintiff was at risk of losing coverage.

75.    As a result of their negligent omissions, conduct, and/or representations, the Defendants are liable to the Plaintiff.

## VI.  SIXTH CAUSE OF ACTION

### (Negligent Management of the Plan By All Defendants Under State Law)

76.    Paragraphs 1 through 75 are replead as if fully set forth herein.

77.    At all times relevant, the Defendants, Great West, Health One, Auerbach, Regan, Yorke, Cohen and Drake their agents and servants, were required to exercise due care in connection with the handling of and the processing of claims, including William Scovin's, and in

the management of the Plan.

78.    The Defendants omissions and acts concerning the handling and processing of William Scovin's claim, and/or permitting the Plan to continue under the circumstances, constitute mismanagement of the Plan.

### VII.    SEVENTH CAUSE OF ACTION

### (Violation of CUTPA Against All Defendants Under State Law)

79.    Paragraphs 1 through 78 are replead as if fully set forth herein.

80.    The aforesaid conduct, representations, and/or actions of the Defendants Great West, Health One, Auerbach, Regan, Yorke, Cohen and Drake constitute the engagement by the defendants of unlawful unfair methods of competition and/or deceptive acts or practices in the conduct of trade and commerce within the meaning of Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, *et seq*. and some or all of which were a substantial factor in causing the Plaintiff's injuries and damages.

81.    The conduct of the Defendants alleged herein constitutes a violation of CUTPA in that said conduct violates established concepts of fairness and public policy, including in particular that Defendants misled Plaintiff about the nature and existence of his healthcare coverage, accepted COBRA payments from him when they knew or should have known the Plan

was on administrative hold or would not be funded by Auerbach, and allowed the Plaintiff to

proceed with expensive medical treatments when they knew or should have known they had

decided to cease funding the Plan.

82.     The conduct of the Defendants alleged herein constitutes a violation of CUTPA in

that said conduct constitutes unfair and deceptive practices and/or practices which are immoral,

unethical, oppressive and/or unscrupulous.

83.     Plaintiff has suffered an ascertainable loss as a result of the Defendants conduct

as alleged herein.

84.      A copy of this Amended complaint has been forwarded to the Attorney General

of the State of Connecticut and to the Commissioner of Consumer Protection.

85.     As a result, the Defendants are liable to the Plaintiff William Scovin.

### VIII.  EIGHTH CAUSE OF ACTION

### (Common Law Deceit and Fraud Against All Defendants Under State Law

86.     Paragraphs 1 through 85 are replead as if fully set forth herein

87.     The aforesaid conduct, omissions, and unfair and deceptive trade practices were

undertaken by Defendants Great West, Health One, Auerbach, Regan, Yorke, Cohen and Drake

recklessly, deliberately, and/or willfully and mislead the Plaintiff into believing that his benefits

under the Plan were intact and financially sound, that he was a covered person under the Plan,

and that his multiple medical expenses would be paid in that at the time, he was without steady employment.

88.     Plaintiff had no reasonable way to determine that the Defendants were withholding information from him concerning the Plan and its viability, that they were accepting his payments and using them for their own financial purposes, that the Plan was on administrative hold and/or not paying any of his claims, or any other information regarding his available medical benefits there under, or that he needed other medical insurance to cover his treatment, expenses, and family.

89.     By reason of the foregoing extreme conduct, the Plaintiff has suffered damages and Defendants are liable to the Plaintiff under the common law doctrine of fraudulent omission, fraud, and deceit for the monetary damages sustained.

## IX.  NINTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress Against All Defendants )

90.     Paragraphs 1 through 89 are replead as if fully set forth herein.

91.     As a result of the negligent, careless, and / or reckless, representations and omissions of the Defendants Great West, Health One, Auerbach, Regan, Yorke, Cohen and Drake, William Scovin's financial status and that of his family has been severely compromised.

92.     As a further result, William Scovin has experienced mental anguish and distress

as a result of the Defendants' acts and omissions as set forth herein.

## X.  TENTH CAUSE OF ACTION

### (Breach of ERISA Fiduciary Duty Against Regan, Yorke, Cohen and Drake)

93.    Paragraphs 1 through 92 are replead as if fully set forth herein.

94.    Defendants Regan, Yorke, Cohen and Drake, controlled the funding of the Plan and the decision not replace the named administrator of the Plan when she resigned in late June or early July 2001.

95.    Plaintiff reasonably relied to his detriment on the Defendants Regan, Yorke, Cohen and Drake, acting as Plan fiduciaries, and the conduct of their agents, servants, and representatives in pre-approving his proposed treatment and their omissions about and representations that he was covered under the Plan before he sought medical treatment and after.

96.    Defendants Regan, Yorke, Cohen and Drake, as fiduciaries of the Plan and/or in concert with Auerbach, had a duty to inform Plaintiff of the status of the Plan and the conditions under which his coverage could end so that he could conduct his personal/medical affairs and act accordingly.  By allowing the Plan and Great West to pre-approve his treatment, by accepting his payments, by failing to inform him that the Plan was on administrative hold, that it was not being funded, that it was otherwise at risk, or that his coverage could end or lapse under the

circumstances, these Defendants breached their fiduciary duty to the Plan and it beneficiaries and as a result Mr. Scovin proceeded with medical treatment to his detriment and/or was deprived of the opportunity to apply immediately for alternative medical benefits and/or seek replacement coverage.

## XI.   ELEVENTH CAUSE OF ACTION

### (Piercing the Corporate Veil as to Regan, Yorke, Cohen and Drake)

97.     Paragraphs 1 through 96 are replead as if fully set forth herein.

98.     Defendants Regan, Yorke, Cohen, and Drake completely dominated and controlled the activities of Defendant Auerbach with regards to all of its operations and including, in particular, the financial position and status of the company which included, among other things, employee benefits, the funding and operation of the Plan, the financial payments made by Plaintiff, and the provision of healthcare benefits to the Plan beneficiaries including the Plaintiff.

99.     At the times relevant to Plaintiff's claims and before his pre-approvals and subsequent surgery, Auerbach was experiencing financial problems and capital shortfalls, was not adequately capitalized, and these facts and others were known to Defendants Regan, Yorke, Cohen, and Drake.

100.    At the times relevant to Plaintiff's claims and as a result of the conduct of Defendants Regan, Yorke, Cohen and Drake, Auerbach, its agents and servants failed to follow appropriate corporate formalities including the making and keeping of appropriate corporate records, appropriate filings, and/or the making and keeping of records of the meetings and decisions of its officers and board of directors.

101.    Defendants Regan, Yorke, Cohen and Drake chose to close down the operations of Auerbach without conducting an appropriate liquidation or wind down of Auerbach's assets and operations.

102.    Defendants Regan, Yorke, Cohen and Drake chose to close down the operations of Auerbach without terminating the Plan or notifying beneficiaries that the Plan was in jeopardy, and / or that Defendants Regan, Yorke, Cohen and Drake had decided to cease funding the Plan.

103.    At all times relevant here to Auerbach was run as the alter ego of Regan, Yorke, Cohen, and Drake.

104.    Defendants Regan, Yorke, Cohen and Drake are liable for all of the conduct of Auerbach alleged in this action and are jointly and severally liable for Auerbach's conduct that has damaged the Plaintiff.

## XII.   TWELVTH CAUSE OF ACTION

**(Breach of Contract as to Auerbach, Regan, Yorke, Cohen and Drake)**

105.    Paragraphs 1-49 are replead as if fully set forth herein.

106.    The Defendants had the obligation and duty of good faith and fair dealing with respect to the employment relationship with William Scovin and were obligated to comply with their agreement to provide COBRA and with the terms of COBRA and the Plan.

107.    The aforesaid conduct, including their acceptance of his COBRA payment(s) was undertaken by the Defendant without providing the reciprocal expected benefit.

108.    The Defendants accepted and negotiated Plaintiff's check payments after June 2001 and failed to make any payments to fund the Plan but used Plaintiff' payments elsewhere.

109.    As a result, the Defendants have breached their contractual obligations and violated the covenant of good faith and fair dealing.

## **CLAIM FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court :

1.     Assume Jurisdiction over this matter;

2.     Enjoin the Defendants from denying Plaintiff's claims and enjoin the Defendants to fund the Plan fully and have the Plan pay all of the outstanding medical claims previously presented to the Plan by beneficiaries, including the medical costs incurred by the Plaintiff;

3.     Enjoin the Defendants to settle or pay each of Plaintiff's outstanding medical bills which such bills should have been paid by the Plan;

4.     Award Plaintiff the medical expenses and coverage owed him under the Plan, plus prejudgment interest, and any other remedies available under ERISA;

5.     Award Plaintiff attorneys fees and costs, under ERISA;

6.     Award monetary damages under state law;

7.     Award punitive damages under the common law or under CUTPA;

8.     Award attorneys under CUTPA or the common law;

9.     Award such other legal or equitable relief to which the Plaintiff may be entitled.

**THE PLAINTIFF, WILLIAM SCOVIN**

By_____
Kevin M. Greco (ct 13195)
Peter M. Nolin (ct 06223)
**SANDAK HENNESSEY & GRECO LLP**
707 Summer Street
Stamford, CT 06901-1026
(203) 425-4200
FAX (203) 325-8608
kgreco@shglaw.com
pnolin@shglaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was mailed, postage prepaid to the following counsel and pro se parties on November 1, 2005:

Christopher G. Barnes, Esq.
Jeffrey L. Williams, Esq.
Jorden Burt
175 Powder Forest Drive, Suite 201
Simsbury, CT  06089

James M. Moriarty, Esq.
Mark S. Gregory, Esq.
Kelley Drye & Warren LLP
Two Stamford Plaza
281 Tresser Boulevard
Stamford, CT  06901

Robert G. Cushing, Esq.
Cushing Law Firm
420 East 54th Street
New York, NY  10178

Robert Drake
558 Lime Rock Road
Lakeville, CT  06039

_____
Kevin M. Greco