To the extent that there was any discretion with respect to the payment of invoices received from the Denver office, it lay with Benvenuto.

The purely ministerial act of issuing a company check or signing a banking authorization to pay an invoice received from a health insurance company, without more, cannot cloak an individual with fiduciary status under ERISA. This is especially true in light of the fact that Cohen simply paid the invoices received from Great-West in the same manner that he did with any other invoice issued to APR and that he did so at the direction of Benvenuto. See LoPresti v. Terwilliger, 126 F.3d 34, 40-41 (2d Cir. 1997) (finding that 49% owner of corporation who had check signing authority was not a fiduciary because "he was 'primarily' a 'production' person with 'no responsibility for determining which of the company's creditors would be paid or in what order.'") (internal citations omitted). Cohen simply had no authority, discretionary or otherwise, over the Plan or its assets and the fact that Spahn sent him memoranda noting that Plan premiums were past due does not alter this conclusion. See 29 U.S.C. §1002(21)(A). Indeed, to hold him liable as an ERISA fiduciary would be unfair and would not further the intent of Congress in enacting ERISA:

> If ERISA did not limit the definition of fiduciaries to those with knowledge of their authority and discretion, then persons or entities could become subject to fiduciary liability without notice. Such a result would not only be unfair, but it would also disserve a core purpose of ERISA, which is to create a system whereby accountable fiduciaries are motivated by their accountability to protect the interests of participants in ERISA plans.

Herman v. NationsBank Trust Co., 126 F.3d 1354, 1366 (11th Cir. 1997); In re Luna, 406 F.3d 1192, 1208 (10th Cir. 2005). There is no genuine issue of material fact necessitating a trial on

the Second and Tenth Causes of Action with respect to Cohen and he is entitled to judgment as a matter of law on those Counts.

**D.** **Yorke Did Not Exercise Any Discretionary Authority Or Control Over The Plan**

Yorke was a member of APR's Board of Directors. There is simply no evidence that Yorke personally had anything to do with the Plan, let alone exercised any discretionary authority or control over it or its assets. Moreover, the APR Board did not appoint Spahn as the Plan Administrator nor did it make any other decisions with respect to the administration of the Plan and/or the decision to transfer all APR employees to the Great-West plan. Once again, this conclusion is not altered by the fact that Spahn copied him on a memorandum noting, among other things, that Plan premiums were past due. See 29 U.S.C. § 1002(21)(A); 29 CFR §2509.75-8. There is no genuine issue of material fact necessitating a trial on the Second and Tenth Causes of Action with respect to Yorke and he is entitled to judgment as a matter of law on those Counts.

## II.
## SCOVIN'S STATE LAW CLAIMS RELATE TO AN ERISA PLAN AND ARE PREEMPTED

ERISA preempts any and all state laws to the extent they relate to an employee benefit plan. 29 U.S.C. §1144(a). State laws are defined as "all laws, decisions, rules, regulations, or other State action having the effect of law." Id., at §1144(9)(c). ERISA's preemption clause is "conspicuous for its breadth." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987) ("The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the

federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.").

A state law relates to an ERISA plan "if it has a connection with or reference to such a plan." New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995). ERISA preemption applies to both statutory and common law causes of action. See California Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc., 519 U.S. 316, 324-25 (1997) (citing cases). The general rule developed by the Supreme Court in evaluating whether a common law claim is preempted by ERISA was recently summarized by the United States Court of Appeals for the Ninth Circuit:

> In evaluating whether a common law claim has "reference to" a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival. If so, a sufficient "reference" exists to support preemption.

Providence Health Plan v. McDowell, 385 F.3d 1168, 1172 (9th Cir. 2004) (citing California Div. of Labor Standards Enforcement, 519 U.S. at 324-25). State law causes of action that provide an alternative mechanism for the enforcement of rights or benefits under an ERISA plan are also preempted. Glynn v. Bankers Life and Cas. Co., 297 F. Supp. 2d 424, 427 (D. Conn. 2003).

**A.  Scovin's CUTPA Claim Provides An Alternative Enforcement Mechanism And Is Preempted By ERISA**

The Seventh Cause of Action purports to assert a cause of action against the Individual Defendants, among others, for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). The CUTPA claim provides an alternative enforcement mechanism for the recovery of benefits allegedly due to Scovin under the Plan and is preempted by ERISA.

-14-

Glynn, 297 F. Supp. 2d 424, at 428 ("[T]he court concludes that, although CUTPA does not specifically refer to ERISA, the CUTPA cause of action is preempted as it has a clear connection with a plan in that it provides an alternative enforcement mechanism."). In Case v. Hosp. of St. Raphael, 38 F. Supp. 2d 207 (D. Conn. 1999), the plaintiff brought an action against her former employer and the insurer that provided the employer's long-term disability insurance coverage to obtain benefits which were allegedly withheld from the plaintiff. Id., at 208. The plaintiff brought causes of action under ERISA and state law causes of action for violation of CUTPA, breach of contract and intentional infliction of emotional distress. Id. The defendants moved to dismiss the state law claims on the grounds that they were preempted by ERISA. Id. In granting the defendants' motion to dismiss, the court first noted that "[c]ourts have consistently held that ERISA preempts state common law and statutory claims such as breach of contract or CUTPA." Id. The court then held that the CUTPA claim, among others, was preempted:

> In the instant case, Plaintiff's state law claims of contract, emotional distress and CUTPA are preempted by ERISA. The viability of these claims relates directly to the administration of the ERISA plan, and the liability of the parties is dependent upon the existence of the ERISA plan and rights conferred by it. Additionally, CUTPA provides an alternative mechanism for enforcing the rights protected by ERISA's civil enforcement scheme. . . .

Id., at 209.

Like the plaintiff in Case, Scovin's CUTPA claim not only provides an alternative mechanism for recovery, but is also wholly dependent upon the existence of the ERISA plan and the rights conferred by it. (See Moriarty Decl., Ex. 1, at ¶81). Since

Scovin's CUTPA claim is preempted by ERISA, the Individual Defendants are entitled to judgment as a matter of law on the Seventh Cause of Action.

**B.    Scovin's State Common Law Causes Of Action Relate To And Are Dependent Upon The Plan And Are Preempted**

Scovin asserts numerous state common law causes of action, including Negligent Misrepresentation (Fifth Cause of Action), Fraud and Deceit (Eighth Cause of Action), Negligent Infliction of Emotional Distress (Ninth Cause of Action), and Breach of Contract (Twelfth Cause of Action). All of these causes of action are premised upon the single fact that Scovin's medical bills were not paid by the Plan. As such, these claims are all wholly dependent upon the existence of the Plan and preempted. See e.g., Case, 38 F. Supp. 2d at 209 (breach of contract and intentional infliction of emotional distress claims preempted by ERISA); Callahan v. Unisource Worldwide, Inc., 2003 WL 1714369, *6 (D. Conn. March 27, 2003) (plaintiff's state law causes of action for, among other things, breach of contract, negligent misrepresentation and violation of CUTPA are "precisely the type that Congress sought to preempt through ERISA."); Owen v. Georgia-Pacific Corp., 389 F. Supp. 2d 382, 388-89 (D. Conn. 2005) (summary judgment granted on plaintiff's state law claims for breach of oral contract and promissory estoppel as both causes of action related to an ERISA plan and were preempted).

In a telling example of Scovin's desperate litigation strategy, he purports to assert a cause of action against the Individual Defendants, among others, under state law for Negligent Management of the Plan (Sixth Cause of Action). Research did not reveal any such cause of action and based on the breadth of ERISA preemption it is difficult to fathom how such a cause of action could exist. Indeed, one is hard pressed to imagine a cause of

-16-

action that would relate to an ERISA plan more directly than a cause of action for Negligent Management of the Plan. Thus, to the extent such a cause of action did exist, which it clearly does not, it would be preempted. The Individual Defendants are entitled to judgment as a matter of law on the Sixth Cause of Action.

### III.
### NEITHER REGAN, COHEN NOR YORKE MADE ANY REPRESENTATIONS TO SCOVIN REGARDING THE PLAN OR ANYTHING ELSE

**A.    A Misrepresentation Claim Fails As A Matter Of Law When The Defendants Have Not Made Any Representations Upon Which The Plaintiff Relied**

The Fifth Cause of Action in the Amended Complaint purports to assert a cause of action against the Individual Defendants, among others, for Negligent Misrepresentation while the Eighth Cause of Action purports to state a cause of action for Common Law Deceit and Fraud. Even if these claims were not preempted by ERISA, which they are, Scovin could not prevail on either of them. To prevail, Scovin would have to prove, among other things, that Regan made a misrepresentation that he relied upon, Cohen made a misrepresentation that he relied upon and Yorke made a misrepresentation that he relied upon. See, e.g., Daley v. Aetna Life & Cas. Co., 249 Conn. 766, 791-94, 734 A.2d 112, 127-29 (1999) (to prevail on a claim for negligent misrepresentation, the plaintiff must prove: 1) the defendant supplied false information, 2) the defendant failed to exercise reasonable care in obtaining or communicating the information; 3) the defendant supplied the information to induce the plaintiff to act on it, and 4) the plaintiff justifiably relied on the information to his injury); Leonard v. Comm'r of Revenue Serv.'s, 264 Conn. 286, 296, 823 A.2d 1184, 1191 (2003) (in order to prevail on a fraud claim the plaintiff must prove: 1) a false representation

was made to him as a statement of fact, 2) the representation was untrue and known to be untrue, 3) the representation was made to induce him to act upon it, and 4) he did act upon it to his injury).

Scovin cannot meet his burden on any of these elements. Indeed, Scovin never even spoke to Regan, Cohen or Yorke about the Plan:

> Q. Okay. Now all of the communications between either yourself or your spouse and APR regarding the APR Health Plan were with Ms. Spahn; correct?
>
> A. Correct.
>
> Q. Okay. And there was no communication with Messrs. Regan, Cohen and Yorke - -
>
> A. Correct.
>
> Q. - - regarding the health care plan.
>
> A. Correct.

(DSUF ¶39). Moreover, Scovin specifically admitted that neither Regan, Cohen nor Yorke made any representations to him regarding the status of the Plan and whether his procedure would be covered. (Id. ¶¶64-66). The Individual Defendants are entitled to judgment as a matter of law on the Negligent Misrepresentation and Fraud claims.

## IV.
## SCOVIN HAS NOT SUFFERED COMPENSABLE EMOTIONAL DISTRESS

The Ninth Cause of Action in the Amended Complaint purports to state a cause of action against the Individual Defendants, among others, for Negligent Infliction of Emotional Distress. This cause of action is preempted by ERISA. Even if it were not

preempted, the Individual Defendants would still be entitled to judgment as a matter of law since Scovin cannot meet his burden on any of the necessary elements.

In order to prevail on this claim Scovin must prove: "1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress, 2) the plaintiff's distress was foreseeable, 3) the emotional distress was severe enough that it might result in illness or bodily harm, and 4) the defendant's conduct was the cause of the plaintiff's distress." Carrol v. Allstate Ins. Co., 262 Conn. 433, 444, 815 A.2d 119, 127 (2003). First, the Individual Defendants did not engage in any conduct that caused an unreasonable risk of emotional distress to Scovin. Next, Scovin's alleged distress was not foreseeable to the Individual Defendants as they did not know that Scovin was to undergo a surgical procedure in reliance on Great-West's pre-certification. Moreover, Scovin's alleged emotional distress was not severe. Scovin testified that his emotional distress manifested itself in a loss of sleep and a general level of stress (DSUF ¶71). Scovin further testified that he had one (1) visit with his doctor for this alleged emotional distress and was prescribed the medication Lexipro which he took for a short period (Id. ¶¶72-73). Scovin did not seek any other treatment for his alleged emotional distress (Id. ¶73). This manifestation of emotional distress is distinctly different from that suffered by the Plaintiff in Carrol.

In Carrol, the plaintiff brought suit against his property insurance company after the insurer refused to pay certain claims related to a fire at the plaintiff's house. The insurer refused to pay on the grounds that its investigation revealed that the fire had been intentionally set by the plaintiff. Id., 262 Conn. 433, 436-37, 815 A.2d 119, 122-23. At trial, the plaintiff called an expert witness who established that the fire was accidental and that a

-19-

complete and through investigation by the insurer would have revealed that fact. Id., at 438-41, 815 A.2d at 123-25. As a result of the insurer's accusation that plaintiff had committed arson, plaintiff testified that he could not sleep, had nightmares, suffered a loss of appetite, became extremely depressed, had marital problems and was scorned by his neighbors. Id., at 445-46, 815 A.2d at 127-28. These manifestations of emotional distress go far beyond those allegedly suffered by Scovin. Indeed, Scovin's alleged emotional distress does not even come close to satisfying the severity requirement within the third element of the cause of action.

Even if Scovin could satisfy the first three elements of this claim, which he cannot, the claim still fails for lack of causation. Great-West was aware of the problems at APR and confirmed as of July 2, 2001, some ten (10) days before Scovin's surgery, that APR had shut down (DSUF ¶52). Despite having knowledge that APR had shutdown, Great-West sent a medical benefits fax to Scovin or his medical providers on July 9, 2001, setting forth the benefits available under the Plan. The medical benefits fax makes no mention of the fact that APR has shut down or that Great-West had placed APR claims on hold (Id., ¶54). Lastly, on July 13, 2001, after receiving notice from Spahn that her employment with APR was terminating, and with knowledge that APR had shutdown, Great-West approved Scovin for five days of acute therapy at Danbury Hospital (Id., ¶57).

Great-West pre-approved all of Scovin's procedures. If Scovin relied on anything in going forward with his procedure it was Great-West's approval. In light of these facts, it is implausible to infer that Scovin's purported emotional distress, which allegedly resulted from the non-payment of his medical bills, was caused by anyone other than Great-West. Since Scovin cannot satisfy the necessary elements to prevail on his emotional

distress claim, the Individual Defendants are entitled to judgment as a matter of law on the Ninth Cause of Action.

## V.
## THE COURT SHOULD NOT IGNORE THE CORPORATE EXISTENCE OF APR

The Eleventh Cause of Action in the Amended Complaint seeks to pierce APR's corporate veil and to hold the Individual Defendants and Drake liable for the debts of APR. It is well settled that "the corporate veil is pierced only under exceptional circumstances...." Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc., 187 Conn. 544, 557, 447 A.2d 406, 412 (1982)(citations omitted). No such exceptional circumstances are present in this case.

"[T]he key factor in any decision to disregard the separate corporate entity is the element of control or influence exercised by the individual sought to be held liable over corporate affairs." Angelo Tomasso, Inc., 187 Conn. at 556-57, 447 A.2d at 412 (citations omitted). Connecticut's courts have developed two tests to be utilized in analyzing whether the extreme control necessary to pierce the corporate veil is present. The first of these tests is known as the instrumentality rule:

> The instrumentality rule requires, in any case but an express agency, proof of three elements: "(1) [c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice *in respect to the transaction attacked* so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's rights; *and* (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

-21-

Angelo Tomasso, Inc., 187 Conn. at 553, 447 A.2d at 410 (citations omitted, emphasis in original).

The second test, known as the identity rule, is generally applicable when a plaintiff seeks to hold a corporation liable for the acts of another corporation:

> If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

Id., at 554, 447 A.2d at 411 (internal citations omitted). Since Scovin seeks to hold the Individual Defendants liable for the obligations of APR the appropriate analysis is performed under the instrumentality rule.

Regan was the president of APR. That fact alone is insufficient to hold him personally liable for the obligations of APR. There is simply no evidence that Regan dominated the finances, policies and business of APR. Moreover, under the instrumentality rule, the complete domination must have been exercised with respect to the transaction attacked, in this case APR's inability to fund the Plan. There is simply no evidence that Regan dominated APR with respect to the Plan or with respect to any other transaction. Bold allegations are insufficient.

Neither Cohen nor Yorke had any control over APR, let alone complete domination. Scovin can not point to a scintilla of evidence to support this frivolous claim against either of them. All of the Individual Defendants are entitled to judgment as a matter of law on the Eleventh Cause of Action.

## VI.
## THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE BREACH OF CONTRACT CLAIM AS NO CONTRACT EXISTS

The Twelfth Cause of Action in the Amended Complaint purports to state a cause of action against the Individual Defendants, among others, for breach of contract. As set forth above, this claim is preempted by ERISA. Even if it is not, however, it fails as a matter of law. It is axiomatic that a breach of contract claim cannot lie in the absence of a contract. Scovin did not and does not have a contract with any of the Individual Defendants. Scovin stated a breach of contract claim in his initial complaint against Regan and then specifically admitted during his deposition that he did not have a contract with Regan (DSUF ¶70). Instead of withdrawing this claim, Scovin amended his complaint and added the breach of contract claim against Cohen and Yorke, even though Scovin does not have a contract with either of them. The Individual Defendants are entitled to judgment as a matter of law on the breach of contract claim.

## CONCLUSION

For all the foregoing reasons, the Individual Defendants are entitled to summary judgment on each and every cause of action asserted against them in the Amended Complaint.

THE DEFENDANTS
LEWIS COHEN, HUGH REGAN AND
A. JONES YORKE

By: /s/ James M. Moriarty
James M. Moriarty (ct 21876)
Kelley Drye & Warren LLP
Their Attorneys
Two Stamford Plaza
281 Tresser Boulevard
Stamford, Connecticut 06901-3229
Telephone: (203) 324-1400
Facsimile: (203) 327-2669
E-mail: jmoriarty@kelleydrye.com

and

Richard G. Cushing (ct15997)
Cushing Law Firm, P.C.
420 East 54th Street
New York, New York 10022
Telephone: (212) 371-8880
Facsimile: (212) 704-6288
E-mail: richard.cushing@trautman.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via overnight mail 12th day of January, 2006 on all counsel of record as follows:

Kevin M. Greco, Esq.
Stephanie A. McLaughlin, Esq.
Peter M. Nolin, Esq.
Sandak Hennessey & Greco
707 Summer Street
Stamford, Connecticut 06901
(203) 425-4200
(203) 325-8608 (facsimile)
**Attorneys for William Scovin**

Christopher G. Barnes, Esq.
Jeffrey L. Williams, Esq.
Jorden Burt
175 Powder Forest Drive,
Suite 201
Simsbury, Connecticut 06089
(860) 392-5018
(860) 392-5058 (facsimile)
**Attorneys for Great-West Life & Annuity Insurance. Co. and One Health Plan, Inc.**

Mr. Robert Drake
558 Lime Rock Road
Lakeville, Connecticut 06039
**(Pro se)**

_____
James M. Moriarty