**Exhibit F**

| Report of Interview | U. S. DEPARTMENT OF LABOR |
|---|---|
| | Pension and Welfare Benefits Administration |

Date of Interview: July 25, 2002

███████████████████████████ NASD was interviewed telephonically the writer on the above date. The writer advised ███████ that he was conducting an official investigation for the Pension and Welfare Benefits Administration, U.S. Department of Labor pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

███████████ was further advised that the writer was requesting ███ voluntary cooperation and that any information obtained during their official investigation which may involve violation of other laws, will be referred to the appropriate agency for consideration.

In response to questioning, ██████████ provided the following information:



███ is the ██████████ for the NASD ████ District Office, located at ████████

███ represented the NASD in its case with Auerbach Pollak & Richardson. Auerbach Pollak & Richardson was a securities dealer that failed because it encountered a serious financial problem and as a result was required by NASD to cease operations. No fines were levied by the NASD against Auerbach Pollak & Richardson because the firm was not involved in any frauds. Most customer complaints in the case were against individual broker representatives and not against the firm itself. The case lasted for the better part of a year and is now in the NASD's closed inventory files.

Auerbach Pollak & Richardson was caught up in a merger with a Colorado firm named Frontier. Auerbach Pollak & Richardson inherited problem brokers from Frontier and arbitration decisions mounted against Auerbach Pollak & Richardson.

Auerbach Pollak & Richardson was initially successful in an arbitration against a clearing firm. The result was an award large enough to eliminate Auerbach Pollak & Richardson's overall debt of $1 million. A court overthrew the award on appeal and Auerbach Pollak & Richardson became insolvent as a result.

Burdened by debts in the area of $1 million, Auerbach Pollak & Richardson was unable to meet the mandatory capitalization requirements set forth in Federal regulation 15c3-1. The NASD told Auerbach Pollak & Richardson that it must either come up with more capital or close down. HUGH REGAN the President of Auerbach Pollak & Richardson personally added capital to the firm but it was not enough to save the it.

| By: Senior Investigator George Maul | Date Written: |
|---|---|
| At: New York Regional Office | Date Typed: July 25, 2002 |
| | File No.: 30-099836 |

This document is the property of the Pension and Welfare Benefits Administration. Its contents are not to be disclosed to unauthorized persons.

1195

In the fall of 2001 Auerbach Pollak & Richardson filed a Broker Dealer Withdrwal (BDW) form with NASD and the the SEC which signified that the firm was ceasing to participate in the securites industry and was formerly out of business.

Auerbach Pollak & Richardson's attorney in these proceedings was RICHARD CUSHING, telephone number (212) 704-6259.

LUCY CORKERY the SEC Division of Inspections Branch Chief for Boston is familiar with the case. Her boss, ED RYAN, is likewise familiar with the case.

████████ will provide publically available documents on the case to PWBA. If PWBA wants additional documentsa subpoena will be necessary.

| Report of Interview | U. S. DEPARTMENT OF LABOR |
|---|---|
| | Pension and Welfare Benefits Administration |

Date of Interview: September 17, 2002

███████ was interviewed telephonically the writer on the above date. The writer advised ███████ that he was conducting an official investigation for the Pension and Welfare Benefits Administration, U.S. Department of Labor pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

███████ was further advised that the writer was requesting ██ voluntary cooperation and that any information obtained during their official investigation which may involve violation of other laws, will be referred to the appropriate agency for consideration.

In response to questioning, ███████ provided the following information:

1. ███████ stated that ██ served as the ███████████████████████ of Auerbach Pollak & Richardson from ██████ until the late ███████. During the period from ██ to June 2001, at which time Auerbach ceased most operations, Auerbach compensated ██ fo██ services. During the period from ██████ until the late ███████ at which time Auerbach ceased to function altogether, ██ was not paid by Auerbach for ██ services.

2. ███████ stated that ██ was hired by HUGH REGAN, President and owner of Auerbach Pollak & Richardson and reported to REGAN. ███████ primary duty as ███████ was to oversee regulatory reporting required in the securities industry. ██ was assisted in ██ the performance of ██ duties by Michael Benvenuto, another Auerbach executive.

3. Auerbach Pollak & Richardson ceased operating in June of 2001. By that time a company called eVision owned 40% Auerbach Pollak & Richardson and a company called Softbank owned 30% of Auerbach Pollak & Richardson.

4. ███████ stated that Auerbach Pollak & Richardson sponsored a 401(k) Plan and a Health Plan which ██ believes was also called the Auerbach Pollak & Richardson Premium Payment Plan.

5. ███████ stated that ██ was not a fiduciary of either Plan because ██ only connection with the Auerbach Pollak & Richardson 401(k) Plan and the Auerbach Pollak & Richardson Health Plan was that ██ drew up the checks Auerbach Pollak & Richardson used to make various payments for these plans.

| | |
|---|---|
| By: Senior Investigator George Maul _/s/ Geo Maul_ | Date Written: September 19, 2002 |
| At: New York Regional Office | Date Typed: September 19, 2002 |
| | File No.: 30-099836 |

This document is the property of the Pension and Welfare Benefits Administration. Its contents are not to be disclosed to unauthorized persons.

1197

6. ▮▮▮ stated that contributions to the Auerbach Pollak & Richardson 401(k) Plan was funded solely by employee contributions. Auerbach Pollak & Richardson did not contribute to the Plan. Contribution amounts were withheld from employee's pay by Auerbach Pollak & Richardson and deposited in one of several an accounts maintained by Auerbach Pollak & Richardson at the Fleet Bank in Stamford, Connecticut. ▮▮▮ cannot recall any particulars about this account. ▮▮▮ then wrote out a Auerbach Pollak & Richardson check to ADP for the total amount withheld for all employees and sent the check to ADP along with a report itemizing the payment. ADP then allocated the payment to the individual accounts of the participants. ▮▮▮ was the person who prepared the checks sent to ADP. ▮▮▮ based the amount of the check on payroll information supplied by ADP itself and later by Auerbach Pollak & Richardson's Denver office. ▮▮▮ stated that it was REGAN who authorized ▮▮▮ to write out these checks to ADP.

7. ▮▮▮ stated that the Auerbach Pollak & Richardson Premium Health Plan was a health insurance benefit plan for employees of Auerbach Pollak & Richardson that was funded by both employer and employee contributions. The plan was insured by Oxford until Auerbach Pollak & Richardson combined with eVision/Frontier and by Great West Insurance afterwards. Employee contributions to the Plan were deducted from their paychecks and deposited in a special ERISA account maintained by Auerbach Pollak & Richardson at the Fleet Bank in Stamford, Connecticut. ▮▮▮ cannot recall any particulars about this account except that employee contributions to the Auerbach Health Plan were placed in it. Money was transferred from this account to an account maintained by Great West from which participant medical claims were directly paid.

8. ▮▮▮ stated that ▮▮▮ wrote out Auerbach Pollak & Richardson checks to Great West Life Insurance to pay premiums for health insurance and to fund the payment of claims. The checks were drawn on the special ERISA account maintained by Auerbach at the Fleet Bank in Stamford. ▮▮▮ stated that Regan authorized ▮▮▮ to write out Auerbach checks to Great-West Life Insurance to pay premiums for health insurance and to fund the payment of claims. ▮▮▮ also stated that in some cases Regan specifically ordered ▮▮▮ wrote out certain checks to Great-West to fund benefit payments under the Auerbach Health Plan. ▮▮▮ stated that in some cases ▮▮▮ made the decision on ▮▮▮ own to issue certain of the checks using the general discretionary authorized to ▮▮▮ by REGAN.

9. ▮▮▮ also stated that the checks ▮▮▮ wrote out to Great West at REGAN's contained both employer and employee contributions to the Health Plan.

10. ▮▮▮ stated that ▮▮▮ wrote and signed checks from the Auerbach ERISA plan account to ADP for contributions to the Auerbach 401(k) Plan and to Great Western to fund Auerbach Health Plan benefits up until the end of April 2001. The checks represented employee contributions deducted from their salaries prior to May 1 2001 by Auerbach and premium payments received by Auerbach from COBRA enrollees under the Health Plan for coverage until end of April 2001. ▮▮▮ stated that ▮▮▮ stopped writing the checks after April 2001 because there was not enough money in Auerbach Pollak & Richardson accounts thereafter to cover the checks.

11. ▓▓▓ stated that employees made contributions to both Auerbach 401(k) and Health Plans for the period from May 1, 2001 to mid June 2001 that Auerbach collected from their salaries. ▓▓▓ also stated that COBRA enrollees continued to be received by Auerbach after May 1, 2001. ▓▓▓ stated that ▓ believes that these contributions and premium payments must somehow have been transmitted to ADP and Great West respectively. ▓▓▓ declined to explain how the contributions could have been so remitted to ADP and Great West if ▓ did not write the transmittal checks.

1199

Report of Interview

**U.S. DEPARTMENT OF LABOR**
Pension and Welfare Benefits Administration

Date of Interview: January 10, 2002

▓▓▓▓▓▓ was interviewed telephonically the writer on the above date. The writer advised ▓▓▓▓ that he was conducting an official investigation for the Pension and Welfare Benefits Administration, U.S. Department of Labor pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

▓▓▓▓ was further advised that the writer was requesting ▓▓ voluntary cooperation and that any information obtained during their official investigation which may involve violation of other laws, will be referred to the appropriate agency for consideration.

In response to questioning, ▓▓▓▓ provided the following information:

The home office of Auerbach Pollock & Richardson was in Stamford, Connecticut. This office is now closed but ▓▓▓▓ is acting as a representative of HUGH REGAN, the President of Auerbach Pollock & Richardson, who can be reached at the following telephone number: (212) 463-5546. ▓▓▓▓ is not being paid to represent REGAN and is using a rent-free office provided out of courtesy by another firm.

▓▓▓▓ is not knowledgeable regarding Auerbach Pollock & Richardson company records and advises that all questions concerning them should be addressed to HUGH REGAN in New York. ▓▓▓▓ does know that customer and registration records of the firm of Auerbach Pollock & Richardson are stored in the borrowed space ▓▓▓▓ is currently using. ▓▓ believes that payroll and personnel records were maintained in Denver, Colorado but may now be with REGAN in New York City.

*[handwritten margin note: "Was I/ filed?"]*

By: Senior Investigator George Maul
At: New York Regional Office

Date Written:
Date Typed: January 10, 2002
File No.: 30-099836

This document is the property of the Pension and Welfare Benefits Administration. Its contents are not to be disclosed to unauthorized persons.

1200

**Report of Interview**

**U. S. DEPARTMENT OF LABOR**
**Pension and Welfare Benefits Administration**

Date of Interview: July 25, 2002

███████████████████████████ NASD ███ District Office, was interviewed telephonically the writer on the above date. The writer advised ███ that he was conducting an official investigation for the Pension and Welfare Benefits Administration, U.S. Department of Labor pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

███████████ was further advised that the writer was requesting ███ voluntary cooperation and that any information obtained during their official investigation which may involve violation of other laws, will be referred to the appropriate agency for consideration.

In response to questioning, ███████████████ provided the following information:

He is the ████████████ NASD ███ District Office, located at ?█████████████████
███████████████████████

The contact person and Financial Principal for Auerbach Pollak & Richardson in its dealings with the NASD was LOUIS COHEN. COHEN was the preparer of Auerbach Pollak & Richardson's accounting books and records. COHEN is currently serving as the financial principal for the firm of Cuttone & Co., 111 Broadwy, NY, telephone number (212) 374-9797.

Auerbach Pollak & Richardson effectively stopped doing business as a security firm in May, 2001 due to a lack of capital and was suspended by the NASD on 10/9/01 for failure to file an audited annual report for the year ending 6/30/01. On 11/9/01 Auerbach Pollak & Richardson filed a BWD form with the NASD withdrawing its status as a broker dealer. The firm's membership in NASD was officially cancelled on 12/14/01 for failure to pay membership fees.

By: Senior Investigator George Maul
At: New York Regional Office

Date Written:
Date Typed: July 25, 2002
File No.: 30-099836

This document is the property of the Pension and Welfare Benefits Administration. Its contents are not to be disclosed to unauthorized persons.

1201

Page 1 of 1

**Report of Interview**

**U. S. DEPARTMENT OF LABOR**
**Pension and Welfare Benefits Administration**

Date of Interview: May 21, 2002

[REDACTED] was interviewed by the writer on the above date in the law offices of Stein, Russo, Mantel, LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174. The writer advised [REDACTED] that he was conducting an official investigation for the Pension and Welfare Benefits Administration, U.S. Department of Labor pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Dennis Stein, Esq., representing [REDACTED] and Auerbach Pollak & Richardson, was present at the interview.

[REDACTED] was further advised that the writer was requesting [REDACTED] voluntary cooperation and that any information obtained during their official investigation which may involve violation of other laws, will be referred to the appropriate agency for consideration.

In response to questioning, [REDACTED] provided the following information:

1. [REDACTED] stated that [REDACTED] is continuing to conduct business out of an office located at [REDACTED] Auerbach Pollak & Richardson has ceased to operate and does not conduct business from this or any other location. [REDACTED] office telephone number is [REDACTED].

2. [REDACTED] stated that [REDACTED] resides at [REDACTED] and his home telephone number is [REDACTED].

3. [REDACTED] stated that his Social Security Number is [REDACTED].

4. [REDACTED] stated that [REDACTED] founded Auerbach Pollak & Richardson as a broker-dealer securities firm in 1991 and served continuously as the company's [REDACTED] from that date until the firm ceased all operations fall of 2001. The firm was registered as a broker-dealer and securities agent with the SEC and NASDAC but has withdrawn those registrations and become inactive.

5. Auerbach Pollak & Richardson was based in Stamford, Connecticut and opened an office at 450 Park Avenue in New York City in late 1997. The back office operations of Auerbach Pollak & Richardson were handled at the office located in Stamford, Connecticut whereas financial operations were conducted out of New York. Dennis Stein represented the firm as attorney and Kaufman & Company served as the firm's accountants. The Stamford, Connecticut branch of Fleet Bank provided banking services to the firm.

By: Senior Investigator George Maul  */s/ George Maul/*
At: New York Regional Office

Date Written: May 21, 2002
Date Typed: May 21, 2002
File No.: 30-099836

This document is the property of the Pension and Welfare Benefits Administration. Its contents are not to be disclosed to unauthorized persons.

6. ███ described ███ as an investment banker and research analyst qualified under Securities Industry Series 24/27 requirements. ███ does not consider ███ to an administrative type person.

7. ███ stated that in the late 1990's Auerbach Pollak & Richardson quadrupled in size, going from 40 to 140 employees.

8. ███ stated that in December, 2000 a Denver-based company named eVision USA.com purchased a 40% stake in Auerbach Pollak & Richardson. eVision paid for its stake in Auerbach Pollak & Richardson with assets consisting mostly of customer accounts. No eVision liabilities were assumed by Auerbach Pollak & Richardson. eVision was owned by a foreign company called Dazo.

9. According to ███ eVision had a subsidiary called Frontier, which operated independently of eVision.

10. ███ stated that on December 20, 2000, the NASD approved a mass transfer of eVision 100 stockbrokers over to Auerbach Pollak & Richardson and supplied a fully staffed back office in Denver, Colorado.

11. ███ stated that prior to combining with eVision Auerbach Pollak & Richardson used ADP to handle payroll but afterwards used Ceridian. All administrative and processing work on payroll was done at Auerbach Pollak & Richardson's Denver office, including sending out paychecks. LEWIS COHEN and MICHAEL BENVENUTO, however, were the Auerbach Pollak & Richardson executives ultimately responsible for managing payroll matters, including deduction of payments for benefits from employee wages. Both worked out of Auerbach Pollak & Richardson's New York City office. ███ appointed both COHEN and BENVENUTO to their executive positions with Auerbach Pollak & Richardson

12. ███ stated that eVision continued to pay for the benefits of its own employees. GARY L. COOK and ROBERT TRAPP were principles of eVision, TRAPP being the company's President and CEO.

13. ███ stated that after the deal with eVision was completed numerous problems arose which ultimately caused Auerbach Pollak & Richardson to collapse. eVision had failed to inform Auerbach Pollak & Richardson about equity put into eVision by other parties. Auerbach Pollak & Richardson inherited some problem brokers in the deal resulting in numerous arbitration decisions unfavorable to Auerbach Pollak & Richardson. These decisions were costly for Auerbach Pollak & Richardson and the firm began to have capitalization problems, becoming about $1 million in debt. One major arbitration case involved a dispute between Auerbach Pollak & Richardson and a clearing firm. Initially successful, Auerbach Pollak & Richardson won an award large enough to resolve Auerbach Pollak & Richardson's capitalization problem. The decision was appealed to New York State Court where the judge unexpectedly overthrew the award. Auerbach Pollak & Richardson became insolvent as a result the appellate decision.

1203

14. ███ stated that Auerbach Pollak & Richardson ceased to be able to fulfill meet the mandatory capitalization requirements of Federal regulation 15c3-1 and took a voluntary cease under SEC Rule 15.3. On May 29, 2001, the firm withdrew as broker dealer participating in the securities industry by filing a form with the NASD and the SEC. Customer accounts which were domiciled at a clearing house were transferred to other dealers  Auerbach Pollak & Richardson's last Payroll was on June 15, 2001. In the fall of 2001 Auerbach Pollak & Richardson ceased all operations and went out of business. Auerbach Pollak & Richardson still exists as a corporation. It entered into liquidating transactions but has not filed for bankruptcy.

15. ███ stated that Auerbach Pollak & Richardson sponsored a 401(k) Plan and a medical insurance health plan.

16. ███ stated that ███ knows nothing about the structure, administration or operation of either the Auerbach Pollak & Richardson Health Plan or the Auerbach Pollak & Richardson 401(k) Plan. ███ was a participant in the Auerbach Pollak & Richardson Health Plan but not in the Auerbach Pollak & Richardson 401(k) Plan.

17. ███ stated that ALEXANDER (AKA "SANDY") BALDWIN served as Auerbach Pollak & Richardson's Senior Vice President for Administration for years and kept that position after Auerbach Pollak & Richardson combined with eVision. BALDWIN was also responsible for managing the Auerbach Pollak & Richardson Health Plan and the Auerbach Pollak & Richardson 401(k) Plan both before and after Auerbach Pollak & Richardson combined with eVision. ███ said that ███ appointed BALDWIN to be Auerbach Pollak & Richardson's Senior Vice President for Administration and made him responsible for the management of the two Plans. BALDWIN's telephone number is ███.

18. ███ stated that after Auerbach Pollak & Richardson combined with eVision, TERRI SPAHN handled the day-to-day operations of the Plan out of Denver.

19. ███ stated that prior to the spring of 2001 employees of Auerbach Pollak & Richardson were covered by the Oxford health Plan. BALDWIN dealt wit Oxford for Auerbach Pollak & Richardson. On April 4, 2001, TERRI SPAHN switched the Auerbach Pollak & Richardson employees into the eVision Plan, which was insured by Great West Life Insurance. ███ does not know why SPAHN made this switch. ███ does not recall who terminated Auerbach Pollak & Richardson's agreement with Oxford and does not recall who decided to have Great West Life Insurance cover Auerbach Pollak & Richardson employees for health insurance.

20. ███ stated that ███ did not terminate either the Auerbach Pollak & Richardson Health Plan or the Auerbach Pollak & Richardson 401(k) Plan. ███ did not order or authorize any one else to terminate the Auerbach Pollak & Richardson 401(k) Plan or the Auerbach Pollak & Richardson Health Plan . ███ is not sure what has happened to the plans in light of Auerbach Pollak & Richardson's collapse. ███ believes that the Auerbach Pollak & Richardson 401(k) Plan continues to exist and has assets but does not know who is managing the plan.

21. ▮▮▮ stated that records for both the Auerbach Pollak & Richardson Health Plan and the Auerbach Pollak & Richardson 401(k) Plan were maintained by TERRI SPAHN in the Colorado office of Auerbach Pollak & Richardson and eVision from early in 2001 to June 2001. ▮▮▮ believes that SPAHN shipped the plan records to Auerbach Pollak & Richardson's New York City office in June, 2001. ▮▮▮ does not know what became of the records after they were received in New York and does not know where the records of the Auerbach Pollak & Richardson Health Plan or the Auerbach Pollak & Richardson 401(k) Plan are now.

22. ▮▮▮ stated that eVision/American Frontier sponsored its own 401(k) Plan. ▮▮▮ believes that after eVision bought into Auerbach Pollak & Richardson, brokers transferred from eVision to Auerbach Pollak & Richardson remained in the eVision Plan. All matters relating to eVision benefits were handled by SPAHN in Colorado and ▮▮▮ knows nothing about them.

1205

**Report of Interview**      **U. S. DEPARTMENT OF LABOR**
                             **Pension and Welfare Benefits Administration**

Date of Interview: December 12, 2001

███████ was interviewed telephonically the writer on the above date. The writer advised ███████ that he was conducting an official investigation for the Pension and Welfare Benefits Administration, U.S. Department of Labor pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

███████ was further advised that the writer was requesting ███ voluntary cooperation and that any information obtained during their official investigation which may involve violation of other laws, will be referred to the appropriate agency for consideration.

In response to questioning, ███████ provided the following information: ███ is the ███████ of the firm of Auerbach Pollak & Richardson. Although now inactive, the firm was a broker-dealer registered as a securities agent under the SEC and NASDAC.

On May 29, 2001 Auerbach Pollak & Richardson took a voluntary cease under SEC Rule 15.3. This was as a result of an arbitration ruling against a private broker who had left Auerbach Pollak & Richardson prior to the date of the ruling. The firm went into a "tailspin" and several months later customer accounts which were domiciled at a clearing house were transferred to other dealers. Auerbach Pollak & Richardson ceased to be a broker-dealer last fall.

Auerbach Pollak & Richardson's last Payroll was on June 15, 2001.

The company's attorney handled the company's settlement matters.

During the final period of company operations the home office of Auerbach Pollak & Richardson remained in Stamford, Connecticut. The controller of Auerbach Pollak & Richardson was in Denver, Colorado and financial operations were out of New York.

Auerbach Pollak & Richardson still exists as a corporation. It is not filing for bankruptcy but is entering into liquidating transactions.

Auerbach Pollak & Richardson sponsored a 401(k) Plan and a medical insurance health plan. American Frontier, a Denver-based company with which combined operations in 2001, also sponsored a 401(k) Plan. The Denver office handled matters relating to all of these health insurance and retirement plans and ███████ claims that ███ knows nothing about the plans. An individual named SANDY BALDWIN was responsible for the plans. ███████ is not sure about

By: Senior Investigator George Maul       Date Written: December 12, 2001
At: New York Regional Office              Date Typed:   December 12, 2001
                                          File No.:     30-099836

This document is the property of the Pension and Welfare Benefits Administration. Its contents are not to be disclosed to unauthorized persons.

1206

Page 1 of 2

what happened to the plans. ▊ does not know where the plan records are but believes they were shipped back to Auerbach Pollak & Richardson's New York City office from Denver in June, 2001. ▊ does not know what became of the records after they were received in New York, because by that time the company in the process of ending operations and things were very chaotic.

Auerbach Pollak & Richardson does not maintain an office in Connecticut anymore. BOB Drake is doing consulting work in a building where the home office of Auerbach Pollak & Richardson used to be in Stamford, Connecticut. The office space he is using is being loaned to to him for his consulting work and is not owned or rented by Auerbach Pollak & Richardson. DRAKE is not being paid by Auerbach Pollak & Richardson.

▊ is working out of an office loaned to ▊ by another party. The address of ▊ office is: ▊ telephone number is ▊ FAX number is ▊. ▊ devotes time to working on matters relating to Auerbach Pollak & Richardson out of this office.

▊ stated that ▊ is represented by counsel. ▊ lawyer is ▊

1207