**Report of Interview**

**U. S. DEPARTMENT OF LABOR**
**Pension and Welfare Benefits Administration**

Date of Interview: September 13, 2002

█████████████████████████ was interviewed telephonically ~~by~~ the writer on the above date. The writer advised BALDWIN that he was conducting an official investigation for the Pension and Welfare Benefits Administration, U.S. Department of Labor pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

████ was further advised that the writer was requesting ███ voluntary cooperation and that any information obtained during their official investigation which may involve violation of other laws, will be referred to the appropriate agency for consideration.

In response to questioning, ████████ provided the following information:

 1. ████ stated that ██ resides ██ ████████████████████ ██████ and that ██ telephone number is ████████.

 2. ████ stated that ██ worked for Auerbach Pollak & Richardson from ████ until ████ when the company became defunct. ██ acted as the ████ of the back office of Auerbach Pollak & Richardson located in Stamford, Connecticut, where ██ performed administrative work for the company. ████ stated that ██ did not recall ██ exact job title at Auerbach Pollak & Richardson and that this information is not important because ██ exercised no real management authority within the company despite whatever titles ██ may have had. ██ was hired for this job by HUGH REGAN, President and owner of Auerbach Pollak & Richardson and reported to REGAN.

 3. Several years ago (████ cannot be more specific) REGAN told ████ that he (REGAN) had appointed ██ to be th████████ of the Auerbach Pollak & Richardson 401(k) Plan and the Auerbach Pollak & Richardson Health Plan.

 4. ████ stated that the Auerbach Pollak & Richardson 401(k) Plan was a retirement Plan open to all employees of Auerbach Pollak & Richardson. The Plan was funded solely by employee contributions. All contributions to the Auerbach Pollak & Richardson 401(k) Plan were deducted from employee's salary payments and Auerbach Pollak & Richardson contributed nothing to the Plan.

By: Senior Investigator George Maul  *[signature]*
At: New York Regional Office

Date Written: September 16, 2002
Date Typed: September 16, 2002
File No.: 30-099836

This document is the property of the Pension and Welfare Benefits Administration. Its contents are not to be disclosed to unauthorized persons.

1217

5. ▇▇▇▇ stated that ▇▇ own duties regarding the Auerbach Pollak & Richardson 401(k) Plan consisted of reviewing account statements prepared on the Plan by ADP and calling ADP if ▇▇ noticed any problems. ▇▇ also helped participants to deal with ADP. ▇▇ had no control over Plan assets and in no way managed the Plan. ▇▇ signed Employee Benefit Plan Annual Report Form 5500s for the Auerbach Pollak & Richardson 401(k) Plan as the Plan Administrator.

6. ▇▇▇▇ stated that ▇▇ is not a trustee of either the Auerbach Pollak & Richardson 401(k) Plan or the Auerbach Pollak & Richardson Health Plan and does not of anybody else being a trustee for these Plans. HUGH REGAN, the President and owner of Auerbach Pollak & Richardson had final say on any issues involving the Plan. ▇▇▇▇ recalls that a problem once arose concerning the allocation of contributions or earnings on contributions among the Plan accounts. The problem was brought to REGAN who decided as to how Plan monies would be used in that case.

7. ▇▇▇▇ stated that LEWIS COHEN, the Chief Financial Officer of Auerbach Pollak & Richardson, oversaw the deduction of employee contributions from payroll and transmitted them to ADP in Roseland, New Jersey, which maintained the participant accounts for the Auerbach Pollak & Richardson 401(k) Plan. MICHAEL BENVENUTO also had authority over payroll issues. Both COHEN and BENVENUTO worked out of Auerbach Pollak & Richardson's New York office. COHEN also wrote out checks to pay insurers premiums for the Health Plan.

8. ▇▇▇▇ stated that during the spring of 2001 ▇▇ noticed that ADP account statements or the Auerbach Pollak & Richardson 401(k) Plan were not reflecting contributions that ▇▇ knew were being deducted from employee's wages. ▇▇▇▇ went to REGAN and told him about this. ▇▇▇▇ does not recall how REGAN reacted to this information but believes that REGAN did not act to correct the problem. ▇▇▇▇ wrote a letter on ▇▇ own to the Boston RO of PWBA reporting the failure by Auerbach Pollak & Richardson to transfer employee contributions to the Auerbach Pollak & Richardson 401(k) Plan.

9. ▇▇▇▇ stated that when Auerbach Pollak & Richardson collapsed in June of 2001 ▇▇ talked to ADP about terminating the Auerbach Pollak & Richardson 401(k) Plan and making a distribution to the Plan participants. ADP refused to do this because Auerbach Pollak & Richardson did not have the money to pay for the costs involved. As far as ▇▇▇▇ knows the assts of the Auerbach Pollak & Richardson to transfer employee contributions to the Auerbach Pollak & Richardson 401(k) Plan still reside with ADP in New Jersey.

10. ▇▇▇▇ stated that the Auerbach Pollak & Richardson Health Plan was a health insurance benefit Plan open to all employees of Auerbach Pollak & Richardson. The Plan was funded by employer and employee contributions. Employee contributions to the Plan were deducted from employee's salary payments. The Plan was originally insured by Oxford and later, after the merger with eVision/Frontier, by Great West Insurance. ▇▇▇▇ believes that REGAN arranged for these insurers to cover the Plan. ▇▇▇▇ does not know if the Plan was ever formerly terminated but believes it simply went out of existence along with Auerbach Pollak & Richardson in June, 2001.

1218

11. ███████ stated that ███ duties regarding the Auerbach Pollak & Richardson Premium Payment Plan consisted of reviewing insurance statements and helping participants with questions about their benefits. ███ had no control over Plan assets and in no way managed the Plan. ███ signed Employee Benefit Plan Annual Report Form 5500s for the Auerbach Pollak & Richardson Premium Payment Plan as t███████

| Report of Interview | U. S. DEPARTMENT OF LABOR |
|---|---|
| | Employee Benefits Services Administration |

Date of Interview: July 17, 2003

▇▇▇ was interviewed telephonically the writer on the above date. The writer advised ▇▇▇ that he was conducting an official investigation for the Employee Benefits Services Administration, U.S. Department of Labor pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

▇▇▇ was further advised that the writer was requesting ▇▇ voluntary cooperation and that any information obtained during their official investigation which may involve violation of other laws, will be referred to the appropriate agency for consideration.

In response to questioning, ▇▇▇ provided the following information:

1. ▇▇▇ said she is most easily reached at the following personal telephone number: ▇▇▇ She is currently works in the human resources department for a company named ▇▇▇ ▇▇▇ telephone number ▇▇▇

2. ▇▇▇ stated that the COBRA continuation of benefits notices that she prepared in July 2001 were never mailed her or by anyone else to participants in the Auerbach Pollak & Richardson Health Plan.

3. ▇▇▇ stated that when ▇▇ prepared COBRA continuation of benefits notices in July 2001 the Auerbach Pollak & Richardson Health Plan was still active. ▇▇▇ prepared the notices on her own initiative despite the Plan remaining active because she believed that the Plan was in jeopardy of being canceled by Auerbach President Hugh Regan.

4. ▇▇▇ stated that on July 15, 2001 ▇▇ shipped a full set of the COBRA continuation of benefits notices that she prepared directly to COBRA Serve and to the New York office of Auerbach Pollak & Richardson. ▇▇▇ did not send the notices directly to participants herself because the Plan had in fact not been terminated and because ▇▇ did not have the authorization from Regan to send the notices to participants. ▇▇ knew that the Plan remained active because Regan specifically told her that he would not terminate the Plan. ▇▇ no longer worked for Auerbach when she shipped the notices to Auerbach's New York office and CobraServe and therefore was not in a position to make sure that the notices were actually mailed to individual

By: Senior Investigator George Maul  
At: New York Regional Office

Date Written: July 17, 2003  
Date Typed: July 17, 2003  
File No.: 30-099836

This document is the property of the Pension and Welfare Benefits Administration. Its contents are not to be disclosed to unauthorized persons.

participants by those parties. I███'s opinion Officers of Auerbach who continued working for Auerbach after June 15, 2001 had the authority to either mail out the notices themselves or to see to it that CobraServe mailed them.

5. ███ stated that Hugh Regan Lewis Cohen were both Officers of Auerbach who continued working for company after June 15, 2001, when payroll ceased.

6. ███ stated that ███ ever made any decisions regarding the disposition of disputed claims for benefits under the Plan. ███ stated that she never had the authority to make decisions on disputed claims despite the fact that she was named as the plan Administrator in Auerbach Pollak & Richardson Health Plan documents. According to ███ was the Plan Administrator in a purely clerical sense. The Plan Administrator in the fiduciary sense was Auerbach Pollak & Richardson, the company sponsoring the Plan. The authority to make final decisions on disputed claims rested with the senior management of Auerbach Pollak & Richardson, specifically with President Hugh Regan and Chief Financial Officer Lewis Cohen.

7. ███ stated that she did not make the decision to switch coverage for participants in the Auerbach Pollak & Richardson Health Plan, including COBRA enrollees, from Oxford into a self-insured arrangement with Great West as the TPA. ███ was told to make the change by Mike Benvenuto who said that Regan had ordered it.

8. ███ stated that the Auerbach Pollak & Richardson Health Plan was funded by both employer and employee contributions. Individuals employed as sales representatives by Auerbach Pollak & Richardson paid the full contribution due the Plan. Individuals employed as other than sales representatives paid one half of the premium with the company paying the other half. All employee contributions to the Plan were deducted from the participant's salary by the company and were supposed to have been used to pay for Plan health benefits.

9. ███ stated that the Auerbach Pollak & Richardson utilized the services of a benefits consultant named Rob Houghton, who worked for a firm named Creative Benefits Planning. That was located in Stamford. Connecticut. Houghton's telephone number was (203) 356-0051.

1221

| Report of Interview | U. S. DEPARTMENT OF LABOR |
|---|---|
| | Pension and Welfare Benefits Administration |

Date of Interview: June 27, 2002

▮▮▮▮ was interviewed telephonically the writer on the above date. The writer advised ▮▮▮▮ that he was conducting an official investigation for the Pension and Welfare Benefits Administration, U.S. Department of Labor pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

▮▮▮▮ was further advised that the writer was requesting ▮▮ voluntary cooperation and that any information obtained during their official investigation which may involve violation of other laws, will be referred to the appropriate agency for consideration.

In response to questioning, ▮▮▮▮ provided the following information:

▮▮▮▮ stated that her home telephone number is ▮▮▮▮▮▮ and ▮▮ business telephone number is ▮▮▮▮▮▮.

The person responsible for running the eVision 401k Plan is GARY COOK, telephone number 303-894-7971. The CEO of eVision is ROBERT TRAPP. The plan was for employees of eVision and has always been located in Colorado. Some of the employees of American Frontier/eVision who were transferred over to Auerbach Pollak & Richardson in early 2001 continued to be covered by the eVision 401k Plan and not the Auerbach Pollak & Richardson 401(K) Plan. The third party administrator and asset manager for the eVision 401k Plan was the John Hancock insurance company. Another company took over as administrator but the funds continued top be invested with John Hancock until the eVision 401k Plan was terminated after July, 2001 and all assets distributed to participants.

Both the employer and employees contributed to the eVision 401k Plan. Employee contributions to the eVision 401k Plan were deducted from employee pay, first by eVision and after January, 2001 by Auerbach Pollak & Richardson. ▮▮▮▮ believes that some of the contributions deducted from the pay of the former eVision employees by Auerbach Pollak & Richardson were not sent to John Hancock or the successor TPA. The payroll for Auerbach Pollak & Richardson employees was prepared in the Denver office from January 1, 2001 until June 15, 2002., and employee contribution deductions for the eVision 401k Plan were made there and a report was generated listing the deductions. The report was sent to Auerbach Pollak & Richardson in New York which then wire transferred the amount called for in the report to John Hancock.

By: Senior Investigator George Maul
At: New York Regional Office

Date Written:
Date Typed: December 12, 2001
File No.: 30-099836

This document is the property of the Pension and Welfare Benefits Administration. Its contents are not to be disclosed to unauthorized persons.

1222

Page 1 of 3

Prior to joining with American Frontier/eVision Auerbach Pollak & Richardson sponsored a 401k plan for its employees. After the companies combined in January 2001 Auerbach Pollak & Richardson continued to operate the Auerbach Pollak & Richardson 401(K) Plan for the employees originally covered by it before the merger. After the merger the eVision 401k Plan and the Auerbach Pollak & Richardson 401(K) Plan were supposed to be combined but Auerbach Pollak & Richardson collapsed and went out of business before this idea ever got off the ground.

The trustee for the Auerbach Pollak & Richardson 401(K) Plan was SANDY BALDWIN, who worked at the Stamford office. All decisions regarding the management of the Auerbach Pollak & Richardson 401(K) Plan were made by HUGH REGAN, President of Auerbach Pollak & Richardson, MIKE BENVENUTO, Chief Financial Officer of Auerbach Pollak & Richardson and LEW COHEN the Controller Auerbach Pollak & Richardson, all of whom worked in the company's New York office.

█████ office had nothing to do with the Auerbach Pollak & Richardson 401(K) Plan.

Contributions to the Auerbach Pollak & Richardson health Plan were deducted from employees pay by the Denver payroll. All payroll information was sent to Auerbach Pollak & Richardson's New York office.

Every month Great West provided █████ with a billing statement summarizing the premiums that Auerbach Pollak & Richardson had to pay and indicating what had been withdrawn from Auerbach Pollak & Richardson's account. █████ reconciled Great West's bill and forwarded the reconciliation to Auerbach Pollak & Richardson's New York office where it was balanced with the company's journals. Premiums from Auerbach Pollak & Richardson's account were wire transferred to Great West on the 17th of every month. Although BENVENUTO approved the transfers, Great West had the right to automatically have the amount owed to it withdrawn by wire. This process went smoothly for the months of January and February 2001.

The payment to Great West for March 2001 was not made because the insurer's attempt to wire out the money due in effect "bounced". Payment was made for the April bill without the March bill ever having been paid. Auerbach Pollak & Richardson did not premium payments to Great West for May or June 2001 or for any subsequent periods.

The monthly premium amount that Auerbach Pollak & Richardson was supposed to pay to Great West included both employer and employee contributions to the health plan.

COBRA enrollees sent their premium checks directly to █████ made copies for the individuals Cobra file which she maintained. █████ then sent the original checks to LEWIS COHEN in Auerbach Pollak & Richardson's New York office. COHEN deposited the checks in Auerbach Pollak & Richardson's bank account. The amount due for each Cobra enrollee was included in the Great West bill reconciled by █████ and the premium payment for these people was included in the single monthly wire payment to Great West.

▓▓▓▓▓ never made any premium payments to Great West.

COBRA-Serve started providing enrollment forms and receiving premium payments from Auerbach Pollak & Richardson's enrollees in the spring of 2001. COBRA-Serve deposited the payments in one of its accounts and made one a single monthly summary payment to Auerbach Pollak & Richardson.

▓▓▓▓▓ recalls that she mailed Cobra continuation of benefit notices to individual Auerbach Pollak & Richardson Cobra enrollees in June 2001. ▓▓▓▓▓ did this of her own volition and was never authorized or directed to do so by any officer of Auerbach Pollak & Richardson. She sent copies of the notices to the New York office of Auerbach Pollak & Richardson.

▓▓▓▓▓ described the Auerbach Pollak & Richardson health plan as being a 'hybrid' partially insured partially self-funded medical plan. The premium payments made to Great West were for health insurance. Stop loss coverage for the plan was based on company claims experience.