UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM SCOVIN | CIVIL ACTION NO.: 02CV01161(AWT) |
| Plaintiff, | |
| v. | |
| GREAT-WEST LIFE & ANNUITY INS. CO., ONE HEATH PLAN, INC., AUERBACH, POLLAK & RICHARDSON, INC., HUGH REGAN, LEWIS COHEN, ROBERT DRAKE and A. JONES YORKE, | |
| Defendants. | MARCH 6, 2006 |

## DEFENDANTS HUGH REGAN'S, LEWIS COHEN'S AND A. JONES YORKE'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

Pursuant to Fed.R.Civ.P. 37 and D.Conn.L.Civ.R. 7(a) and 37, Defendants Hugh Regan ("Regan"), Lewis Cohen ("Cohen") and A. Jones Yorke ("Yorke") (collectively, "the Individual Defendants") respectfully submit this Memorandum in Opposition to Plaintiff William Scovin's ("Scovin") Motion for Sanctions.

### I.
### PRELIMINARY STATEMENT

Scovin commenced this action in July 2002 against numerous parties to recover unpaid medical expenses totaling approximately $85,000. Prior to incurring those expenses, Scovin apparently sought and obtained authorization for the medical procedure he needed from the insurance company, defendant Great-West Life & Annuity Insurance

**ORAL ARGUMENT IS REQUESTED**

Company ("Great West"), that administered the health plan pursuant to which Scovin seeks benefits. After his surgery, Great-West refused to pay Scovin's medical bills. He sued the carriers and APR. In addition, Scovin chose the litigation tactic of including the Individual Defendants in the suit on the apparent notion, for which there is no evidence, that as former directors, officers or employees of APR, they owed some sort of heightened responsibility to him.

The Individual Defendants' retained their present counsel in or about late April 2005. Since that time, they have appeared for depositions and produced documents. The document productions were supplemented in October and November, 2005 and January, 2006.

The Individual Defendants filed a well supported and appropriate Motion for Summary Judgment on January 12, 2006. Scovin thereafter filed two motions with the Court: a Motion for Extension of Time to respond to the Summary Judgment Motion and the instant Motion for Sanctions. With each motion, rather than address the merits of the litigation, Scovin went to great lengths to attack the Individual Defendants and their counsel. These attacks are entirely misplaced and seem designed to serve the sole purpose of diverting attention from his need to somehow respond to the fact that the Individual Defendants are entitled to judgment as a matter of law. The sanctions motion represents a new vehicle to engage in continued abusive litigation tactics; the apparent design is to cause the Individual Defendants to grow tired of this game and agree to pay Scovin rather than continuing to litigate the bogus claims.

Scovin's motivations for these recent filings aside, the natural reaction to the over-the-top, false and misleading accusations and statements contained within them is to respond with a venomous, vitriolic tirade. That, of course, would be neither productive nor helpful to the Court. Accordingly, the Individual Defendants will bite their respective tongues and let the facts demonstrate why Scovin's Motion for Sanctions must be denied in all respects and that the costs of this exercise charged against Scovin.

## II.
## THE FACTS

The Individual Defendants retained their current counsel in mid to late April, 2005. Prior to that time, very little progress had been made to advance the litigation. In May, 2005 the parties participated in a settlement conference with Magistrate Judge Donna F. Martinez. During that conference, it became clear that a settlement between Scovin and the Individual Defendants was unlikely. Although the case had been pending for nearly three (3) years at the time of the settlement conference, no depositions had been taken. Current counsel cannot attribute the lack of discovery to a particular cause. What cannot be debated, however, is that between July 15, 2005 and October 15, 2005, six (6) depositions were conducted; the Individual Defendants' depositions were all completed by September 1, 2005 and they produced documents.

On June 10, 2005, Scovin served notices of deposition on the Individual Defendants scheduling depositions for June 29 and 30. Included within those notices were requests for production which called for each deponent to produce various categories of

documents at his deposition. Since Messrs. Regan and Yorke were not available on the dates noticed for their respective depositions, they requested that the depositions be rescheduled. Scovin's counsel agreed to that request.

Cohen's deposition was scheduled to go forward on the afternoon of June 30. Rather than serve written responses and objections to the document requests by hand at the deposition, the written responses were faxed to Scovin's counsel that morning. The written responses and objections were sent in letter form and specifically stated: "Subject to and without waving the foregoing objections, to the extent any of the Individual Defendants have responsive, non-privileged documents which are relevant to the allegations in the Complaint, in their possession, custody or control, they will produced at their respective depositions." (See June 30, 2005 letter from Mark Gregory, Esq. to Kevin Greco, Esq. and Peter Nolin, Esq., attached hereto as Exhibit A).

After receiving the written responses, Scovin's counsel decided to postpone the deposition because they thought Cohen had certain unproduced documents, despite being told that he did not. This decision was made even though the Individual Defendants' counsel suggested that the deposition be taken and inquiry be made as to whether Cohen had any documents responsive to the requests for production. The Individual Defendants' counsel indicated that if, in fact, Cohen testified that he had responsive documents, other than his personal income tax returns, he would appear voluntarily for a second deposition after such documents were produced. Scovin's counsel rejected the offer and instead filed a Motion to Compel.

In early August, 2005, prior to the Individual Defendants' depositions, they produced 163 pages of documents. None of those documents came from Cohen. On August 16, 2005, with the motion to compel still pending, Scovin decided to take the depositions of Messrs. Regan and Yorke.[1] Scovin did not request that these depositions be postponed until the Court ruled on the Motion to Compel, notwithstanding that one of the pending requests called for the production of the Individual Defendants' respective income tax returns, which Scovin contended he needed to demonstrate that they were paying themselves instead of funding the Auerbach, Pollack & Richardson, Inc. ("APR") health care plan.

Cohen was scheduled to appear for his deposition on August 17, 2005. Counsel for the Individual Defendants contacted Scovin's counsel prior to that date and requested a postponement of the deposition because Cohen had a business-related conflict. Scovin's counsel was adamant that the deposition would not be postponed unless Cohen provided an alternative date within a short time period. Once again, Scovin insisted on taking Cohen's deposition even though the Motion to Compel was then pending.

Also in August, 2005, the parties took the deposition of a representative of Defendants Great-West and One Health Plan, Inc. (the "Insurer Defendants"), and discussed scheduling the depositions of Scovin and former APR employee Terri Spahn. The Individual Defendants noticed Scovin's deposition for August 18, 2005, but it was postponed at the request of Scovin's counsel. With both Cohen's and Scovin's depositions outstanding, counsel for the Individual Defendants suggested that, for convenience, the parties conduct

---

[1]  In paragraph 7 of the Motion, Scovin incorrectly states that Yorke was the Chief Financial Officer of APR.

both on the same day.  (See August 12, 2005 email from James Moriarty, Esq. to Kevin

Greco, Esq. attached hereto as Exhibit B).  In a further effort to cooperate with Scovin on

discovery, the Individual Defendants agreed to conduct Ms. Spahn's deposition by telephone

so Scovin would not have to seek leave of Court to take a telephonic deposition.  (See Id.).

Scovin took Cohen's deposition on September 1, 2005; Scovin did not appear for his own

deposition until October 12, 2005, only after several requests for a firm date for his deposition

were made.  (See September 16, 2005 letter from James Moriarty, Esq. to Kevin Greco, Esq.,

attached hereto as Exhibit C).  As of the present date passed, some six (6) months after the

August 31, 2005 discovery cut-off date, Ms. Spahn's deposition has not been taken by

Scovin.[2]

On September 13, 2005, the parties argued Scovin's Motion to Compel before

Magistrate Martinez.  During oral argument, counsel for Scovin complained for the first time

that certain documents had been produced in redacted form and with two sets of Bates

numbers.  He also complained that there were pages missing from the Individual Defendants

recent production.

At the hearing, counsel for the Individual Defendants explained the reasons

why certain documents were redacted and or withheld from production and why the

documents contained two sets of Bates numbers.  What happened is that the Individual

Defendants had provided documents to their prior counsel.  Those documents were Bates

---

[2]  The fact that the Individual Defendants agreed to conduct Ms. Spahn's deposition by telephone in August,
2005, prior to the discovery cut-off-date, should not be construed as an agreement to conduct Ms. Spahn's
deposition, either telephonically or otherwise, some six (6) months after the discovery cut off date.

stamped with the prefix "APR" and, for reasons unknown to present counsel, appear to have been produced to the Insurer Defendants but not to Scovin.[3]  The Individual Defendants provided these same documents, with Bates stamps already affixed, to their present counsel. Since the origin of the APR prefixed Bates stamp was not clear and it was on the documents when counsel received them, the documents were affixed with a second Bates number.

The documents received by the Individual Defendants' counsel in August 2005 bearing the APR Bates prefix consisted of, among other things, documents containing personal identifying information, such as social security numbers, of individuals who are not parties to the pending litigation.  Exercising appropriate caution, counsel for the Individual Defendants redacted personal information related to individuals who are not parties and also withheld certain documents that contained nothing more than personal information about them.  In August 2005, prior to the depositions of the Individual Defendants, the documents bearing the APR prefixed Bates number were produced to Scovin, with the above discussed redactions and with the dual Bates numbers

Prior to the Individual Defendants' depositions, Scovin's counsel apparently obtained the complete set of the documents that had been produced to the Insurer Defendants by the Individual Defendants' prior counsel.  As a result, Scovin's counsel was fully aware of exactly what information had been redacted and what documents had been withheld from production, prior to the depositions and well in advance of the oral argument.  If Scovin

---

[3]  Scovin has repeatedly sought to affix the alleged failings of the Individual Defendants' prior counsel to their current counsel.  Present counsel has gone to great lengths to make sure that the Individual Defendants' discovery obligations have been fully met.

needed further clarification, the issue could have been resolved outside of Court, prior to the argument on the Motion to Compel. Scovin did not acknowledge at the oral argument that he already had the documents he was arguing he needed to obtain.

During the argument on the Motion to Compel, counsel for the Individual Defendants explained the reasons for the redaction and/or withholding of certain documents and the dual Bates numbers on certain documents and agreed, in open court, to produce the documents that had been withheld and/or redacted in *toto*. These documents were produced within three (3) days of the oral argument. Full versions of documents were Bates stamped with the same Bates number as the previously produced redacted version so it would be easy for Scovin's Counsel to match up the documents. (See Exhibit C).

On September 16, 2005, Magistrate Martinez issued a Ruling on Scovin's Motion to Compel, granting it in part and denying it in part (the "Ruling"). The Ruling directed the Individual Defendants to produce responsive documents within their custody, possession or control, including their respective income tax returns for the years 2000 and 2001, and to submit declarations to Scovin detailing the efforts they undertook to locate responsive documents. Cohen and Yorke produced their respective tax returns and declarations on October 12, 2005. Regan produced his personal tax returns for the years 2000 and 2001 on October 24, 2005 and his declaration on February 15, 2006.

At some point, presumably in the Fall of 2001, Scovin filed a complaint with respect to his unpaid medical bills with the United States Department of Labor ("DOL"). On August 5, 2005, counsel for the Individual Defendants submitted a Freedom of Information

Request ("FOIA") to the DOL seeking documents related to that complaint (a true and correct copy of the FOIA request is attached hereto as Exhibit D). On or about September 15, 2005, counsel for the Individual Defendants spoke with George Maul of the DOL. Mr. Maul indicated that the FOIA request would be denied because of the breadth of the documents contained within the DOL files but invited a more narrow FOIA request. On September 16, 2005 counsel for the Individual Defendants received a letter from the DOL indicating that the August 5, 2005 FOIA request had been denied and that a modified request would be processed upon receipt. (See September 16, 2005 letter from DOL to James Moriarty, Esq., attached hereto as Exhibit E). On September 20, 2005, counsel for the Individual Defendants submitted a modified FOIA request to the DOL. (See September 20, 2005 letter from James Moriarty, Esq. to the DOL, attached hereto as Exhibit F). The DOL responded to the modified FOIA request by producing a set of documents on or about October 20, 2005. (See October 20, 2005 letter from the DOL to James Moriarty, Esq., attached hereto as Exhibit G).

Within two (2) weeks of receiving the documents from the DOL, the Individual Defendants produced the vast majority of them to Scovin. A limited number of the documents were not produced because they were viewed as not responsive to Scovin's requests for production. In reviewing the DOL documents for responsiveness, counsel for the Individual Defendants focused on documents related to the APR health care plan that were created by or for: 1) APR, its employees and agents, 2) the Insurer Defendants, its employees and agents, and 3) Scovin and his agents. The documents that were withheld as non-responsive included not only the DOL work product which Scovin has attached to the Motion,

but also a 56 page HIPPA Manual, a 118 page COBRA Manual (it is not clear who created these documents but they appear to have come from the Insurer Defendants), documents printed from Westlaw and duplicate copies of documents produced as part of the initial production.

After completing the depositions he wanted to take (Scovin took 34 minutes to depose Yorke and barely more than one hour to depose Cohen), Scovin filed a motion for leave to amend his complaint on or about November 1, 2005. Although the amended complaint asserted numerous new causes of action against the Individual Defendants, they did not object to Scovin's motion for leave and it was granted on or about November 30, 2005. In November and December 2005, counsel for Scovin and counsel for the Individual Defendants had several discussions regarding the potential for settlement of this matter and on December 14, 2005, the Individual Defendants moved for an extension of time to respond to the Amended Complaint. It is not appropriate to describe the competing settlement positions in this memorandum. It suffices to state that the Individual Defendants focused on an evaluative settlement approach and that it became clear the sides were far apart. As a result, the Individual Defendants began preparing a Summary Judgment Motion in response to the Amended Complaint.

In connection with preparation of the Summary Judgment Motion, the documents obtained from the DOL, along with numerous other things, including Scovin's requests for production, were once again analyzed. That analysis indicated that the DOL documents that previously had been withheld were arguably within the scope of Scovin's

request No. 1, which sought "the witness' entire file relating to this litigation." Even though the DOL documents were not contained in any files possessed by the Individual Defendants, either before or during the litigation, in an abundance of caution and to avoid the possibility of Scovin claiming that the Individual Defendants were not fully complying with their discovery obligations, all of the DOL documents that had been previously withheld, including duplicate copies of documents that had already been produced, were provided to Scovin. (See January 9, 2006 letter from James Moriarty, Esq. to Kevin Greco, Esq., attached hereto as Exhibit H).

On January 12, 2006, counsel for Scovin sent a memorandum to counsel for the Individual Defendants concerning the Individual Defendants' January 9, 2006 supplemental production. (See January 12, 2006 Memorandum from Kevin Greco, Esq. to Mark Gregory, Esq. attached hereto as Exhibit I). The memorandum clearly demonstrated that counsel for Scovin had not reviewed the November 3, 2005 production in any detail before January 2006. For example, the January 12 memorandum complains that a certain document authored by Terri Spahn and copied to Richard Cushing, Esq. which Scovin believes demonstrates Cushing's intimate knowledge of the day-to-day operations of APR had not previously been produced. In fact, that memorandum, along with other documents that Scovin's counsel complained had not been produced, had been produced on November 3. (See January 12, 2006 letter from James Moriarty, Esq. to Kevin Greco, Esq., attached hereto as Exhibit J).

On January 12, 2006, three (3) days *after* the supplemental production was made to Scovin, the Individual Defendants filed their Motion for Summary Judgment.

Thereafter, counsel for Scovin contacted counsel for the Individual Defendants to ascertain whether the Individual Defendants would consent to an extension of time for Scovin to respond to the Summary Judgment Motion because counsel had trials scheduled when the opposition would otherwise have been due. The Individual Defendants readily consented to the extension and told Scovin's counsel to take whatever time he needed.

Based on this background, it is shocking that Scovin has made the instant motion. The Individual Defendants have complied with the Ruling in all respects. Each of them appeared for a deposition, each of them produced whatever responsive documents were within his custody, possession and control and each submitted a declaration detailing his respective efforts to search for responsive documents. Moreover, Scovin has received nearly 1200 pages of documents that the Individual Defendants obtained from the DOL via a FOIA request, documents that were equally available to Scovin at all times. Based on all of the facts, the sanctions sought by Scovin are neither warranted nor necessary. It is hard to believe that Scovin can seriously question the good faith of the Individual Defendants in respect of discovery when they made the extra effort to obtain documents they did not have -- <u>and then produced them to Scovin</u>.

### III.
### <u>ARGUMENT</u>

Scovin purports to bring the Motion under D.Conn.L.Civ.R. 37. Based upon the supposed basis for the motion, <u>i.e.</u>, the Individual Defendants' failure to comply with the Ruling and produce all documents, the Individual Defendants respond to the motion as if it

were brought under Fed.R.Civ.P. 37(b).  The sanctions provided for in Federal Rule of Civil

Procedure 37 are intended to serve three purposes:

> Disciplinary sanctions under Rule 37 should serve three
> functions.  First, sanctions should ensure that a party will not
> benefit from its own failure to comply with the discovery rules.
> . . . Second, sanctions constitute specific deterrents and seek to
> obtain compliance with either court orders or the ordinary
> standards of care appropriate for parties and their attorneys. . . .
> Third, sanctions should serve as a general deterrent in the case
> at hand and in other litigation, provided that the party against
> whom they are imposed was in some sense at fault.

Messier v. Southbury Training School, 1998 WL 841641, *4 (D. Conn., Dec. 2, 1998).  Rule

37(b) provides for the imposition of sanctions for failure to comply with a Court's discovery

order.  To ensure that Rule 37 sanctions serve their intended purposes and are not utilized

strategically to gain an advantage in litigation, courts are afforded broad discretion to

determine whether sanctions should be assessed and if so, what sanctions are appropriate.  See

Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 142 (S.D.N.Y.

1997) ("It is well settled that the Court has broad discretion to determine the type of sanction,

if any, to impose upon a party, based on all of the facts of the case.") (citations omitted).

Based on all of the facts of this case, sanctions are not appropriate and would serve none of

Rule 37's intended functions.

**A.      Scovin's Motion Must Be Denied For Failure To Comply With
          The Meet And Confer Requirements Of D.Conn.L.Civ.R.37(b)**

Prior to filing a Rule 37 motion, the movant is required to meet and confer

with the non-movant in an effort to resolve the parties differences.  D.Conn.L.Civ.R. 37(a)(2).

The movant is further required to submit an affidavit with the motion certifying that the meet and confer has occurred and whether it has been successful, either in whole or in part. Id. The Ruling specifically reminds the parties of these meet and confer obligations:

> The parties are reminded of their meet and confer obligations under both the federal and local rules of procedure to resolve any differences and present to the court only those issues of discovery that are necessary for the full weight of judicial authority.

(Ruling, at pg. 5, attached to the Motion as Exhibit B). Scovin failed to comply with the requirements of Rule 37. This failure alone provides a sufficient basis for denying the motion.

**B.**    **Scovin's Motion For Sanctions Also Fails On The Merits**

      1.    The Red Herrings

Even if the Motion complied with the requirements of Rule 37, it would still fail as a matter of law. Scovin peppers his motion with red herrings posing as purported discovery abuses that occurred prior to the issuance of the Ruling. For example, Scovin contends that there was something abusive about the Individual Defendants serving written responses to document requests on the morning of Cohen's June 30, 2005 deposition. Scovin served the Individual Defendants with a single notice of deposition on June 10, 2005. The notice of deposition included requests for production and called for the documents to be produced at the Individual Defendants' respective depositions.

Fed.R.Civ.P. 30(b)(5) provides that a notice of deposition may be accompanied by a request for the production of documents made in accordance with Fed.R.Civ.P. 34.

Under Rule 34(b), written objections and responses to document requests shall be served within thirty (30) days of the date of service of the request. Accordingly, not only was the service of written responses to the document requests by the Individual Defendants on the morning of Cohen's deposition appropriate, they were actually served ten (10) days earlier than required by Rule 34. Moreover, the written responses did not, as has been portrayed, assert blanket objections and refuse to produce any documents. (See Exhibit A). The service of written responses to the document requests on the morning of Cohen's deposition was entirely appropriate and in accordance with Fed.R.Civ.P. 30 and 34.

Scovin asserts that on September 16, 2005 the Individual Defendants "produced what appeared to be unredacted and missing pages from prior discovery, along with additional documents bearing Bates Stamp #0164.1-0217." (Motion at ¶9). As discussed in detail above, the completely innocuous reasons for, among other things, redacting and withholding certain documents from production in August 2005 were completely disclosed during oral argument on the Motion to Compel. In any event, counsel for the Individual Defendants produced all of the documents that had been previously redacted and withheld from production within three (3) days of the oral argument. Scovin is well aware that the production made on September 16 consisted of previously redacted and withheld documents. In addition, and significantly, it appears that Scovin obtained a complete set of these documents from the Insurer Defendants prior to the Individual Defendants' respective depositions. In any event, these documents were withheld or redacted

solely out of an abundance of caution, not to keep them from Scovin and *they were produced.*[4]

2.     The Declarations

Once the red herrings are identified for what they are, Scovin's motion boils down to two (2) issues.  First, Scovin claims that the Declarations submitted by the Individual Defendants are insufficient because they fail to state whether the Individual Defendants inquired as to whether Richard Cushing, Esq. and/or Marc Koplik, Esq. had any documents responsive to Scovin's requests for production.  Mr. Cushing is counsel of record for the Individual Defendants in this matter.  Scovin does not identify his professed basis for requiring the Individual Defendants to identify communications they have had with their trial counsel regarding document production, or any other matter.

Marc Koplik is an attorney who apparently served as the Secretary of APR. There is no dispute that APR ceased conducting business in or around June 2001.  Scovin fails to demonstrate how each of the Individual Defendants have control over Koplik nearly five (5) years after APR ceased conducting business, assuming that they ever had such control in the first instance.  Scovin also fails to demonstrate how each of the Individual Defendants have a legal right to require Koplik to provide them with any materials that he may have.  See 7 MOORE'S FEDERAL PRACTICE §34.14(2)(b) ("The burden on establishing control over the documents sought is on the party seeking production.").  Indeed, there is no burden on the

---

[4] Scovin also claims that the Individual Defendants produced two different sets of documents with the same Bates numbers.  To the extent that Bates numbers were duplicated, it was as a result of a clerical error and not an intentional attempt to "create confusion in discovery."  He has never indicated any actual confusion related to the numbering of the documents.

party from whom production is sought to demonstrate a lack of control until such time as the party seeking production "demonstrates that its adversary has a legal right to obtain the requested documents." Id. Such a showing would need to be made with respect to each of the Individual Defendants.

The Individual Defendants have complied with the Ruling. They served Declarations detailing the efforts they undertook to locate responsive documents and the responsive documents that were located, have been produced. The fact that Scovin is not satisfied with the fruits of the Individual Defendants' search does not lead to the conclusion that the Individual Defendants have disregarded the Ruling. Scovin's quest to have the Individual Defendants turn over every rock to locate documents should not be permitted. See e.g., Fed.R.Civ.P. 26(b(2); Tolliver v. Fed. Rep. of Nigeria, 265 F. Supp. 2d 873, 880 (W.D. Mich. 2003) ("the mere hope that additional discovery may give rise to winning evidence does not warrant the authorization of wide-ranging fishing expeditions") (citations omitted).

Lastly, and significantly, the purported shortcomings in the Declarations represent the exact type of issue that the parties are required to discuss prior to the filing of a Rule 37 motion. If Scovin truly believed the Declarations were insufficient, he should have requested a meet and confer and set forth the purported deficiencies along with his reasoning as to why the Individual Defendants were required to do more. Had that occurred, the Parties might have been able to resolve these issues without the Court's intervention.

3.    The DOL Documents

The second issue that Scovin points to is the *production* of documents obtained from the DOL pursuant to a FOIA request.  The chronology of events surrounding the FOIA request and subsequent production of documents obtained pursuant to that request are set forth in detail above.  There are, however, certain statements and contentions made by Scovin which cannot go unrebutted.  First, it is highly arguable as to whether the Individual Defendants were required to produce *any* of the documents obtained from the DOL.  These quasi public documents were equally available to Scovin and he could have easily obtained them on his own via a FOIA request.  It is difficult to fathom why he chose not to do so inasmuch as he apparently was the impetus behind the DOL investigation.  That said, the Individual Defendants *did produce all* of the documents obtained from the DOL.

Scovin implies that the DOL documents were purposefully produced after his Motion to Amend the Complaint was filed.  This utterly baseless contention is simply not true.  Scovin commenced this action in July, 2002 and completed the Individual Defendants' depositions on September 1, 2005, only four (4) months after the appearance of the Individual Defendants current counsel.  Scovin then waited an additional two (2) months from the date the Individual Defendants' depositions were completed to file his Amended Complaint.  The timing of the DOL production on November 3 was dictated solely by the fact that the

documents were not received until October 20, not because the Individual Defendants were waiting for an Amended Complaint that could have come at any time, or not at all.[5]

Scovin also contends that the Individual Defendants described the November 3 production as the "complete" set of documents that the Individual Defendants had received from the DOL but that it was not. There is absolutely nothing in the cover letter accompanying the November 3 production that could be read to even imply that the production consisted of the "complete" set of documents received from the DOL. Any suggestion to the contrary is false. (See November 3, 2005 letter from James Moriarty, Esq. to Kevin Greco, Esq. attached hereto as Exhibit K).

Scovin also contends that the Individual Defendants withheld certain documents from the November 3 production in an effort to somehow prejudice Scovin in responding to their so called "11[th] hour" Summary Judgment Motion. First, the Individual Defendants have not filed an "11[th] hour" Summary Judgment Motion. The Summary Judgment Motion was timely filed in response to Scovin's Amended Complaint. There is simply nothing unscrupulous about defending a litigation and filing a summary judgment motion in response to an amended complaint.

In any event, the contention that these documents were withheld to prejudice Scovin is flat out wrong. All of the documents withheld from the original DOL production were withheld either because they were not viewed as responsive to any of Sovin's requests

---

[5] If the Individual Defendants approached this litigation the same way Scovin has, they would have served Rule 11 motions in response to the Amended Complaint.

for production or because they were duplicative. There were simply no "calculated omissions" intended to prejudice Scovin, and none did.

Scovin's argument that the DOL documents were withheld to prejudice him in responding to the Summary Judgment Motion is also belied by the fact that all of the DOL documents were produced *prior to* the filing of the Summary Judgment Motion and, the Individual Defendants readily agreed to Scovin's request to extend his time to respond to that motion. Assuming Scovin's Motion for Extension of Time is granted, he will have had the documents that he so loudly complains about for over two (2) months before filing his response. Contrary to Scovin's contention, these documents were not withheld from him to prejudice his case or because the Individual Defendants view them as hurtful to their case. If that was in fact true, they would not have produced at all, let alone *before* they filed the Summary Judgment Motion.

Scovin contends that the January 9, 2006 supplemental production contained internal APR memos from Terri Spahn, some of which were purportedly copied to APR's counsel, Richard Cushing. (See Exhibit E to the Motion). It is certainly true that the January supplemental production contained certain internal APR memos. What Sovin fails to point out, however, is that these documents were duplicative of documents that had been produced in November, 2005 as part of the initial DOL production. (Compare Exhibit E of Scovin's Motion with Exhibit L attached hereto and see Exhibit J.). Counsel for the Individual Defendants specifically informed Scovin's counsel that these documents had been previously produced and even pointed counsel to the pertinent Bates numbers in the prior production (see

exhibit J).  It is obvious that Scovin never reviewed the November 2005 production in any detail.  Thus, Scovin's suggestion to the Court that the Individual Defendants did not produce these internal APR documents until January, 2006, when he fully knows that they were produced in November, demonstrates the flawed and strained effort this motion represents. See Peterson v. City College, 32 F. Supp. 2d 675, 690 (S.D.N.Y. 1999) (rejecting plaintiff's efforts to have summary judgment motion denied as sanction for discovery abuses and stating "[n]ot only have defendants provided proof that they have complied with [plaintiff's] production requests in this case, again it appears that [plaintiff] has not even examined all of the documents that were made available to her by defendants.").

        Scovin questions the Individual Defendants' candor toward the tribunal in a footnote at the end of the Motion.  The basis for this gratuitous comment is that the Individual Defendants did not include the DOL internal investigatory materials and conclusions with their Summary Judgment filing.  First, Rule 56 does not require a summary judgment movant to submit every item of evidence that exists in support of a summary judgment motion.  This is especially true where, as here, the movant does not bear the burden of proof.  If Scovin believes that the DOL work product could potentially create a genuine issue of material fact with respect to one or more of the Individual Defendants, he can proffer that evidence with his summary judgment response if he can find an evidentiary predicate for doing so.  Inasmuch as the documents do not constitute admissible evidence, it would have been improper for the Individual Defendants to rely on the documents.

## IV.
## CONCLUSION

The Individual Defendants have complied with the Ruling and with their

discovery obligations.  Scovin's Motion for Sanctions must be denied in all respects.

<div style="margin-left:40%">

THE DEFENDANTS
LEWIS COHEN, HUGH REGAN AND
A. JONES YORKE

By: _____
   Mark S. Gregory (ct01252)
   James M. Moriarty (ct 21876)
   Kelley Drye & Warren LLP
     Their Attorneys
   Two Stamford Plaza
   281 Tresser Boulevard
   Stamford, Connecticut 06901-3229
   Telephone:  (203) 324-1400
   Facsimile:  (203) 327-2669
   E-mail:  mgregory@kelleydrye.com
           jmoriarty@kelleydrye.com

   and

   Richard G. Cushing (ct15997)
   Cushing Law Firm, P.C.
   420 East 54th Street
   New York, New York 10022
   Telephone: (212) 371-8880
   Facsimile:  (212) 704-6288
   E-mail:  richard.cushing@trautman.com.

</div>

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via overnight mail, postage prepaid, this 6th day of March, 2006 on all counsel of record as follows:

Kevin M. Greco, Esq.
Stephanie A. McLaughlin, Esq.
Peter M. Nolin, Esq.
Sandak Hennessey & Greco
707 Summer Street
Stamford, Connecticut 06901
(203) 425-4200
(203) 325-8608 (facsimile)
*Attorneys for William Scovin*

Christopher G. Barnes, Esq.
Jeffrey L. Williams, Esq.
Jorden Burt
175 Powder Forest Drive,
Suite 201
Simsbury, Connecticut 06089
(860) 392-5018
(860) 392-5058 (facsimile)
*Attorneys for Great West Life & Annuity Insurance. Co. and One Health Plan, Inc.*

Mr. Robert Drake
558 Lime Rock Road
Lakeville, Connecticut 06039
*(Pro se)*

James M. Moriarty