IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM SCOVIN, <br><br> Plaintiff, <br><br> v. <br><br> GREAT-WEST LIFE & ANNUITY INS. CO., ONE HEATH PLAN, INC., AUERBACH, POLLAK & RICHARDSON, INC., HUGH REGAN, LEWIS COHEN, ROBERT DRAKE and A. JONES YORKE, <br><br> Defendants. | CIVIL ACTION NO. 3:02CV01161(AWT) <br><br><br><br><br><br><br><br><br><br> APRIL 20, 2006 |

**DEFENDANT HUGH REAGAN'S, LEWIS COHEN'S AND A. JONES YORKE'S REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR <u>SUMMARY JUDGMENT</u>**

Mark S. Gregory (ct 01252)
James M. Moriarty(ct 21876)
KELLEY DRYE & WARREN LLP
281 Tresser Boulevard
Stamford, Connecticut 06901
Telephone: (203) 324-1400
Facsimile: (203) 327-2669
mgregory@kelleydrye.com
jmoriarty@kelleydrye.com

Richard G. Cushing (ct15997)
CUSHING LAW FIRM, P.C.
420 East 54th Street
New York, New York 10022
Telephone: (212) 371-8880
Facsimile: (212) 704-6288

## **PRELIMINARY STATEMENT**

Pursuant to Federal Rule of Civil Procedure 56 and D.Conn.L.Civ.R. 7(d), Defendants Hugh Regan ("Regan"), Lewis Cohen ("Cohen") and A. Jones Yorke ("Yorke") (collectively, the "Individual Defendants") respectfully submit this Reply Memorandum in Further Support of their Motion for Summary Judgment dismissing the claims asserted by plaintiff William Scovin ("Scovin").

For the past year, Scovin's litigation strategy has demonstrated two primary themes: (1) the Court's sympathy for him is so great that he can do and say whatever he wants without ramification and (2) he is entitled to recover against the Individual Defendants because he has made allegations against them. These dual themes are omnipresent in Scovin's recent pleadings and in particular in Scovin's summary judgment response where he argues, as one example, that, if his common law claims were preempted by controlling federal law, it "would leave Scovin an ERISA beneficiary without relief against a party he alleges was a principal in depriving him of healthcare coverage...."[1]

Allegations are not evidence and cannot defeat a properly supported motion for summary judgment. The evidentiary groundings for the vast majority of Scovin's causes of action is sparse to non-existent, and certainly insufficient to create an issue of fact. Rather than withdraw his specious claims and accept that his decision to assert broad causes of action against the Individual Defendants failed to produce a quick settlement, Scovin, in a desperate attempt to avoid summary judgment, proffers inadmissible evidence, makes statements in his Opposition that are unsupported by the cited evidence and, in some cases, makes statements without citation

---

[1] Scovin's Memorandum in Opposition to Defendants Regan, Cohen and Yorke's Motion for Summary Judgment (hereinafter "Opposition") at p. 30 (emphasis added)).

to any evidence, undoubtedly, because the evidence that does exist specifically refutes his position. The concept of limited liability seems lost on Scovin; yet, allowing his claims to proceed any further would violate historic propositions that individuals are generally not liable for the debts of a corporation.

The Individual Defendants understand that Mr. Scovin presents as a sympathetic plaintiff. That said, sympathy alone does not create a cause of action. As a matter of law, he does not have valid claims; therefore, they should be dismissed.

Lastly, Scovin continues to accuse the Individual Defendants of certain wrongdoing with respect to discovery. These accusations are made on the basis of numerous misstatements and fabrications. Scovin's continued attempts to distract attention away from the merits of his case serve only to reinforce the Individual Defendants' entitlement to summary judgment. The Individual Defendants went out of their way to get materials to Scovin that he should have obtained on his own. Allowing Scovin to avoid summary judgment so that he can now belatedly seek evidence from non-parties would be a perverse result.

## ARGUMENT

### I.
### THE INDIVIDUAL DEFENDANTS' RULE 56(A)(1) STATEMENTS OF MATERIAL FACT SHOULD BE TAKEN AS TRUE BASED ON SCOVIN'S FAILURE TO ADHERE TO THE REQUIREMENTS OF RULE 56(A)(2)

A party opposing a summary judgment motion must admit or deny the statements of fact set forth in the movant's Rule 56(a)(1) statement. D.Conn.Civ.R. 56(a)(2). Scovin failed to comply with that simple requirement. Instead, Scovin both admits and denies nearly every one of the statements the Individual Defendants proffered in a way that makes it nearly impossible to determine whether he concedes that no genuine issue exists with respect to a

particular Statement of Fact. (See Scovin's Local Rule 56(a)(2) Statement at paragraphs 2, 7-12, 15-30, 34-54, 56-61, 63 and 71-75). Accordingly, all of the Individual Defendants statements of undisputed facts should be deemed admitted.

## II.
## THE COURT MAY ONLY CONSIDER ADMISSIBLE EVIDENCE

It is axiomatic that the a Court may only consider admissible evidence in deciding a motion for summary judgment. See e.g., Fed.R.Civ.P. 56(e); Wright, Miller & Kane FEDERAL PRACTICE AND PROCEDURE: Civil 3d §2721 (West 1998). Scovin violates this proposition repeatedly. For example, the key documents Scovin proffers were created by a United States Department of Labor ("DOL") Investigator (see Declaration of Kevin M. Greco, at exhibits 2, 34 and 35) that do not satisfy any requirement for admission. Those documents, obtained from the DOL by the Individual Defendants via a Freedom of Information Request, appear to be notes of interviews conducted by the DOL investigator. The notes are heavily redacted and more importantly represent classic hearsay and double hearsay from various unidentified individuals. These interview notes are inadmissible, should be stricken from the record and should not be considered by the Court. See e.g., Gillin v. Fed. Paper Board Co., Inc., 479 F.2d 97 (2d Cir. 1973) (affirming preclusion of EEOC investigator's report into evidence). The DOL letters supposedly sent to Regan and Cohen likewise represent examples of classic inadmissible hearsay that bear no indicia of reliability. The letters are dated July 11, 2003 and set forth what the Investigator labels preliminary findings. The DOL took no further action even though Scovin essentially begged the DOL to do so. (Supplemental Declaration of James M. Moriarty, dated April 20, 2006, at Exhibit 1). The DOL preliminary findings letters are inadmissible, should be stricken from the record and not considered.

3

### III.
### THE ERISA CLAIMS

Scovin argues that Regan, Cohen and Yorke are ERISA fiduciaries because they exercised control over the Auerbach, Pollak and Richardson, Inc. ("APR") health care plan (the "Plan") (Opposition at 18-24). What Scovin confuses is that the authority to direct aspects of a plan sponsor's business does not equate to <u>discretionary</u> control over the administration or assets of the plan at issue, which is necessary for an individual to be considered an ERISA fiduciary. 29 U.S.C. §1002(21)(A) (emphasis added). Were the rule otherwise, every officer or director of a plan sponsor would automatically become an ERISA fiduciary. <u>In re Worldcom ERISA Litig.</u>, 263 F.Supp.2d 745, 760 (S.D.N.Y. 2003) ("[a] corporation and its board may wear two 'hats' -- that of an employer and of an ERISA fiduciary. ERISA liabilities arise only from actions taken or duties breached in the performance of ERISA obligations.").

Scovin's primary argument for why Yorke is an ERISA fiduciary is that he acted as an advisor to Regan. Yorke was a member of APR's Board of Directors, a position which by definition requires him to advise APR's officers. As a matter of law, Yorke is not an ERISA fiduciary solely based on his status as a member of APR's Board. Scovin seeks to save his doomed ERISA claims against Yorke by pointing to a June 29, 2001 memorandum copied to Yorke by non-party Terri Spahn ("Spahn"). Scovin asserts that Spahn, the named administrator of the Plan, copied the memo to Yorke because "she believed that Yorke had the authority and capacity to make the necessary decisions" [concerning human resources issues] (Opposition at 23). Scovin does not cite to any evidence for this statement. This lack of citation is telling and intentional because Spahn's testimony cannot be reconciled with the assertion. Spahn specifically testified that she did not remember why she had copied Yorke on this memorandum.

4

(See March 17, 2006 deposition of Terri Spahn ("Spahn Dep."), at 51(2-23), attached to the Moriarty Decl. as Ex. 2). Spahn did not even know what Yorke's title or function was with APR and stated that she did not deal with him on a regular basis. (Id.). There is no evidence that Yorke exercised any discretionary authority over the Plan.

As for Cohen, Scovin attempts to salvage his ERISA claims by peppering his opposition with numerous statements and documents unrelated to the Plan. Scovin claims that Cohen had discretionary authority with respect to the Plan because he sent out memoranda: (1) notifying employees that APR was suspending its 401K match contributions and (2) notifying registered representatives of certain restrictions on trading activity (Opposition at 20). Neither of these memoranda concern the Plan. Cohen did not have discretion with respect to the Plan's assets. Cohen had no discretion with respect to what bills were paid; he took all of his direction from others. See Rule 56(a)(1) at ¶10. There is no admissible evidence to the contrary.

Scovin also seeks to create an issue of fact by asserting that Cohen had "authority to make final decisions on disputed claims under the plan." (Opposition at 20). As authority for this statement, Scovin points to the inadmissible DOL investigator's notes and Spahn's deposition testimony. Spahn was named as the Plan Administrator pursuant to the Summary Plan Description.[2] Moreover, Spahn testified at her deposition that: (1) the only thing done in New York- where Regan, Cohen and Yorke were located- with respect to the Plan was to write a check or transfer funds into an account; (2) with respect to general communications with Great-West she was APR's chief contact; (3) Cohen never told her that she did not have the authority to make final decisions on disputed claims under the Plan; and (4) she was not aware of Cohen *ever*

---

[2] The Summary Plan Description is attached to the January 12, 2006 Declaration of James M. Moriarty, as Exhibit 10. The relevant language appointing Spahn as Plan Administrator and setting forth her duties thereunder is contained at pgs. 23, and 5 respectively.

5

making decisions with respect to disputed claims under the Plan. (Moriarty Decl., Ex. 2, 112(20)-113(7); 141(4-6); and 166(10-16)). In short, there is simply no evidence that Cohen exercised any discretionary authority, or any authority at all, with respect to the administration or assets of the Plan. When the record is examined *in toto*, it is clear, as a matter of law, that Cohen cannot be considered a fiduciary under the Plan.

## IV.
## SCOVIN'S COMMON LAW CLAIMS ARE PREEMPTED BY ERISA

Scovin contends that common law claims are only preempted by ERISA when the party against whom the common law claims are pursued is an ERISA fiduciary. (Opposition at 24-30). Scovin cites Gerosa v. Savasta & Co., Inc., 329 F.3d 317 (2d Cir. 2003) as a watershed event with respect to ERISA preemption in this Circuit. Scovin's reading of Gerosa is unjustifiably overbroad. By its very terms, the Gerosa holding does not apply to a case, such as this one, where a beneficiary sues to recover benefits under an ERISA plan:

> We . . . join a chorus of the Courts of Appeals in ruling that ERISA does not preempt "run-of-the-mill" state-law professional negligence claims against non-fiduciaries.

Id., at 323. (Emphasis added). Scovin's claims are not professional negligence claims against an actuary who performs services for an ERISA plan. He seeks to recover the very benefits which Scovin contends he was entitled to under the Plan. As the Gerosa Court noted, "state laws . . . affecting the means of securing unpaid benefits- have typically been found to be preempted." Id., at 324. This rule of law was not touched upon by the Gerosa Court and remains a truism.

The fact that the Individual Defendants are not ERISA fiduciaries does not change the relief sought by Scovin's common law claims or the fact that those claims would not exist but for the Plan. Scovin could still potentially recover under ERISA if he brought suit against

6

the correct party(ies). Taking Scovin's argument that preemption only applies to non-fiduciaries to its logical conclusion would result in the creation of two distinct bodies of law that could be pursued by plan beneficiaries seeking to recover benefits under an ERISA plan. Congress enacted ERISA with sweepingly broad preemption language and exclusive remedies. 29 U.S.C. §§ 1144(a) & 1132. The creation of the two distinct bodies of law advocated for by Scovin is irreconcilable with ERISA's very purpose and cannot possibly be the law. Scovin's state law claims are preempted regardless of whether the Individual Defendants are, or are not, ERISA fiduciaries. See Jones v. LMR International, Inc., 367 F. Supp.2d 1346, 1351 (M.D. Al. 2005)(beneficiary's common law claims against plan administrator were preempted regardless of whether administrator was a fiduciary).

## V.
## THE COMMON LAW CLAIMS ALSO FAIL ON THE MERITS

Even if the common law claims were not preempted, they fail on their merits. Scovin's breach of contract claim fails because there is no evidence that he was ever in privity of contract with any of the Individual Defendants. (Opposition at 36-7). The only contract that may have existed was between APR and Scovin. It was certainly not a contract by which the Individual Defendants promised to use their personal assets to pay Scovin's medical expenses.

Scovin's fraud and negligent misrepresentation claims also fail. Scovin concedes that the Individual Defendants never made any affirmative misrepresentations to him, but contends that they could still be liable under a fraudulent omission theory (Opposition at 32-3). A defendant cannot be liable under a fraudulent omission theory unless there is some duty requiring him to speak. See, e.g., Duksa v. City of Middletown, 173 Conn. 124, 127, 376 A.2d 1099, 1100-01 (1977). Scovin essentially argues that the duty to speak arose because of the

Individual Defendant's respective positions within APR and their knowledge that APR was in financial distress. If a duty to speak arose simply as a result of these circumstances, every officer and director of every financially troubled company offering benefit plans to its employees would have to ensure that every beneficiary, both actual and potential, was fully aware of every aspect of the sponsor's financial status and how that status could effect each benefit plan, or run the risk of being sued by a plan beneficiary under a fraudulent omission theory. Such a scenario would have a chilling effect on the offering of benefits plans and is not the law.

The Individual Defendants are also entitled judgment as a matter of law on Scovin's causes of action alleging negligent infliction of emotional distress and piercing the corporate veil.[3] With respect to the piercing the corporate veil claim, Scovin cites no authority and makes no attempt to distinguish the authority set forth at length by the Individual Defendants in their initial moving papers. Scovin points to no evidence raising an issue of fact as to whether APR was an alter ego of any of the Individual Defendants with respect to the Plan.

The Individual Defendants did not completely dominate the finances, policies and business practices of APR or utilize it for some dishonest or unjust purpose. See Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc., 187 Conn. 544, 553, 447 A.2d 407, 410 (1982). The fact that Regan injected a substantial amount of money into APR is starkly inconsistent with the notion that he used the corporate shell for payment of personal expenses. Scovin's gratuitous comment that "after the trading ban was imposed, Cohen, Regan and Yorke continued to run Auerbach with some hope they could rejuvenate it for their own benefit after they had terminated payroll and forced most if not all low level employees to resign" (Opposition at 31), which is not

---

[3] Scovin has refused to execute a medical release sent to him in October, 2005 to enable the Individual Defendants to obtain medical records relating to the emotional distress claims, most assuredly because these records would further underscore the claims total lack of merit.

8

supported by any citation to evidence, does not alter this fact. Indeed, there is absolutely no good faith basis for even making this statement.

Scovin also claims that the Individual Defendants ran APR with a complete lack of corporate formality. First, the Individual Defendants did not run APR. It had a Board of Directors and numerous officers who discharged specific responsibilities based on the stringent requirements of the various organizations that regulated its business. Moreover, contrary to Scovin's contention, Spahn did not testify that employee 401(k) contributions were utilized for other purposes. (Opposition at 31). Spahn testified that payroll deductions were made for 401(k) contributions and the contributions were not made, but she <u>did not know</u> for what purpose the money was used (Ex. 2, 57(8-23)). She also testified that APR simply ran out of money. <u>Id.</u>, 144(10-16). APR failed as a business. There is simply no evidence that the Individual Defendants orchestrated this failure for their own benefit or that they benefited in any way from the failure. They did not. The piercing the corporate veil claim fails as a matter of law.

A.  **Scovin Is Not Entitled To Additional Discovery**

Scovin spends several pages of his Memorandum regurgitating the claims set forth in his recent Motion for Sanctions. The Individual Defendants responded to these frivolous claims at length in their Response to the Motion for Sanctions. Scovin now offers a new false accusation: Scovin states at footnote 8 on page 41 that he noticed the deposition of Richard Cushing, one of the Individual Defendants' counsel of record, and that "Defendant's counsel verbally objected and simply did not appear."

Upon receipt of the deposition notice, Connecticut counsel to the Individual Defendants informed Scovin's counsel that they did not represent attorney Cushing but that they would pass the notice on to him. Scovin was told to contact attorney Cushing directly and,

during the course of several conversations, Scovin was told that Attorney Cushing would not appear for a deposition since, because he is not a party, he could not be compelled by notice to do so. Scovin never served a subpoena. To suggest that the Individual Defendants simply failed to appear, when they had no obligation to appear for any deposition other than their own, creates a completely false impression and further exemplifies Scovin's belief that he can litigate this case with some blanket immunity.[4]

## CONCLUSION

For all of the foregoing reasons, as well as the reasons set forth in the Individual Defendants' Memorandum in Support of their Motion for Summary Judgment and D.Conn.L.Civ.R. 56(a)(1) Statement of Undisputed Facts, the Individual Defendants' Motion for Summary Judgment should be granted.

Richard G. Cushing (ct15997)
Cushing Law Firm, P.C.
420 East 54th Street
New York, New York 10022
Telephone: (212) 371-8880
Facsimile: (212) 704-6288
richard.cushing@trautman.com

THE DEFENDANTS HUGH REGAN,
LEWIS COHEN AND A. JONES YORKE

By: /s/ James J. Moriarty
Mark S. Gregory (ct 01252)
James M. Moriarty (ct 21876)
KELLEY DRYE & WARREN LLP
281 Tresser Boulevard
Stamford, Connecticut 06901
Telephone: (203) 324-1400
Facsimile: (203) 327-2669
mgregory@kelleydrye.com
jmoriarty@kelleydrye.com

---

[4] Scovin also claims that he has been prejudiced because he did not receive the DOL investigator's notes until January and will need additional time to obtain unredacted copies of those notes. First, the DOL investigation was commenced at Scovin's behest and the fact that his counsel did not request their files borders on malpractice. Second, Scovin has had these documents for over four (4) months. If unredacted copies are so vital, why has he not already made efforts to obtain them?

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via first class mail, postage prepaid this 20th day of April, 2006 on all counsel of record as follows:

>Kevin M. Greco, Esq.
>Stephanie A. McLaughlin, Esq.
>Peter M. Nolin, Esq.
>Sandak Hennessey & Greco
>707 Summer Street
>Stamford, Connecticut 06901
>(203) 425-4200
>(203) 325-8608 (facsimile)
>***Attorneys for William Scovin***
>
>Christopher G. Barnes, Esq.
>Jeffrey L. Williams, Esq.
>Jorden Burt
>175 Powder Forest Drive,
>Suite 201
>Simsbury, Connecticut 06089
>(860) 392-5018
>(860) 392-5058 (facsimile)
>***Attorneys for Great West Life & Annuity Insurance. Co.***
>***and One Health Plan, Inc.***
>
>Mr. Robert Drake
>558 Lime Rock Road
>Lakeville, Connecticut 06039
>***(Pro se)***

/s/ James M. Moriarty
James M. Moriarty

CT01/MORIJA/226888.1

11