# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| WILLIAM SCOVIN<br><br>Plaintiff,<br><br>v.<br><br>GREAT-WEST LIFE & ANNUITY INS. CO., ONE HEATH PLAN, INC., AUERBACH, POLLAK & RICHARDSON, INC., HUGH REGAN, LEWIS COHEN, ROBERT DRAKE and A. JONES YORKE,<br><br>Defendants. | CIVIL ACTION NO.: 02CV01161(AWT)<br><br><br><br><br><br><br><br><br><br>OCTOBER 30, 2006 |

## DECLARATION OF LEWIS COHEN

Lewis Cohen declares as follows:

1.      I am a defendant in the above captioned action and submit this Declaration in accordance with Magistrate Martinez' September 29, 2006 Ruling on Plaintiff's Motion for Sanctions (the "Ruling").

2.      Pursuant to the Ruling, I was required to "produce to the Plaintiff any responsive documents in Attorney [Richard] Cushing's files….." On or about October 10, 2006, within ten (10) days of the Ruling, Attorney Cushing submitted a detailed declaration to Plaintiff's counsel in compliance with the Ruling.



3.      The Ruling also requires me to "obtain and produce to Plaintiff all responsive documents in [Marc] Koplik's possession" and to "submit to the Plaintiff an affidavit detailing [my] efforts in this regard...."

4.      I instructed my counsel to contact Mr. Koplik to determine what, if any, responsive documents he may have. By letter dated October 20, 2006, my counsel followed up on prior oral contacts between Mr. Koplik and Mr. Cushing and Mr. Koplik and my co-defendants. In that letter, my counsel requested that Mr. Koplik provide any responsive documents in his possession, custody and control and provided him with copies of the Amended Complaint and the Ruling in order to put the requests for production in context. A true and correct copy of the October 20, 2006 letter to Mr. Koplik is attached hereto as Exhibit A.

5.      I have been informed that Mr. Koplik provided responsive documents in his possession, custody and control to Richard Cushing and that these documents are being produced to the Plaintiff's counsel.

6.      It is my understanding that Mr. Koplik has provided Mr. Cushing with all of the responsive documents in his possession, custody and control.

I declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 30th day of October 2006 at New York, New York.

_Lewis Cohen_
Lewis Cohen

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via hand delivery this 30th day of October, 2006 on the following counsel of record:

Kevin M. Greco, Esq.
Stephanie A. McLaughlin, Esq.
Peter M. Nolin, Esq.
Sandak Hennessey & Greco
707 Summer Street
Stamford, Connecticut 06901
(203) 425-4200
(203) 325-8608 (facsimile)
*Attorneys for William Scovin*

and via first class mail, postage prepaid on the following *pro se* party:

Mr. Robert Drake
558 Lime Rock Road
Lakeville, Connecticut 06039
*(Pro se)*

James M. Moriarty

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**TWO STAMFORD PLAZA**
**281 TRESSER BOULEVARD**
**STAMFORD, CONNECTICUT 06901-3229**

(203) 324-1400

NEW YORK, NY
WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(203) 327-2669
www.kelleydrye.com

DIRECT LINE: (203) 351-8034
EMAIL: jmoriarty@kelleydrye.com

October 20, 2006

**VIA FACSIMILE and EMAIL**
Marc S. Koplik, Esq.
Henderson & Koplik
420 Lexington Avenue, Suite 2831
New York, New York 10170

> Re: Scovin v. Great-West Life & Annuity Ins. Co., et al.
>     United States District Court for the District of Connecticut
>     Civil Action No.: 02CV1161

Dear Mr. Koplik:

We assume that you have already been contacted about the subject of this letter but wanted to make sure that you had all of the necessary details regarding the inquiry. We are counsel, along with Richard Cushing, to Hugh Regan, A. Jones Yorke and Lewis Cohen (collectively the "Individual Defendants") in the above-referenced civil action pending in federal court in Connecticut. The plaintiff is a former Auerbach, Pollack & Richardson, Inc. employee named William Scovin who has sued the Individual Defendants, among others, to recover certain unpaid medical expenses. To give you a broader understanding of the issues raised by the lawsuit, I attach a copy of the Amended Complaint. In September 2005, the Court granted plaintiff's Motion to Compel and ordered the Individual Defendants to produce all documents in their possession, custody and control responsive to plaintiff's requests for production and to submit affidavits detailing their efforts to locate responsive documents. In February 2006, plaintiff moved for sanctions on the grounds that, among other things, the affidavits submitted in compliance with the Order on the Motion to Compel were insufficient because the Individual Defendants did not affirm that they had made inquiry of you for responsive documents.

On September 29, 2006, the Court granted in part plaintiff's Motion for Sanctions and Ordered the Individual Defendants to obtain and produce all responsive documents in your custody, possession or control inasmuch as the Court deemed you to be under their control. A copy of that Order is attached. The plaintiff's requests for production, as enumerated in the Court's September 29, 2006 Order are as follows:

**KELLEY DRYE & WARREN LLP**

Marc S. Koplik, Esq.
October 20, 2006
Page Two

      1.     The witness' entire file relating to this litigation;

      2.     All documents relied upon by the witness in developing any opinions the witness intends to testify to in this litigation;

      3.     All drafts of any documents relating to this litigation;

      4.     All documents and/or communications between the witness, the Defendant(s) and any party to this litigation;

      5.     Any and all manuals, procedures, protocols or documents outlining the administration and handling of claims in the Auerbach health care plan from January 1, 2000 to date;

      6.     All documents reflecting all payments the witness has received from Auerbach from 1999 to date;

      7.     Personal tax returns from 1999 to date;

      8.     All communications to or from Auerbach from 1999 to date;

      9.     all documents reflecting any ownership share the deponent has or had in Auerbach from 1999 to date;

      10.    All documents relating to any health care plan provided to Auerbach employees from 1999 to date;

      11.    All documents listing officers, directors and shareholders of Auerbach from January 1, 2000 to date;

      12.    All documents the defendants intend to rely upon in defense of this matter;

      13.    All minutes of Auerbach Board of Directors Meetings from 1999 to date;

      14.    All financial records of Auerbach's health care plan for its employees from 1999 to date;

      15.    All documents related to any COBRA payments Auerbach received from William Scovin; and

      16.    Any resignation documents the deponent has provided to Auerbach.

**KELLEY DRYE & WARREN** LLP

Marc S. Koplik, Esq.
October 20, 2006
Page Three

I realize that many of these document requests are specific to the Individual Defendants; I have included all of them for completeness.

The Individual Defendants are required to obtain and produce any documents in your possession, custody or control and provide plaintiff with affidavits detailing their efforts to obtain and produce such documents by October 30, 2006. I realize that you are likely busy with other matters and appreciate that you may not have time to go through files to search for documents. That said, the Individual Defendants have been Ordered to produce any documents in your possession, custody and control and cannot comply with the Court's Order without your assistance. Accordingly, please let me or Richard Cushing know by Tuesday, October 24, 2006 whether you have any responsive documents and if you are aware as to where responsive documents may be located.

Thank you for your prompt attention to this matter.

Sincerely,

James M. Moriarty

cc:    Mark S. Gregory, Esq.
       Richard G. Cushing, Esq.
       Mr. Hugh Regan
       Mr. A. Jones Yorke
       Mr. Robert Drake

CT01/MORIJA 233652.1

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM SCOVIN )<br><br>Plaintiff, )<br><br>v. )<br><br>GREAT-WEST LIFE & ANNUITY INS. CO., )<br>ONE HEALTH PLAN, INC., AUERBACH, POLLAK )<br>& RICHARDSON, INC., HUGH REGAN, )<br>LEWIS COHEN, ROBERT DRAKE, A. JONES )<br>YORKE )<br>Defendants. ) | CIVIL ACTION NO.<br><br>3:02CV01161 (AWT)<br><br><br><br><br><br>NOVEMBER 1, 2005 |

### AMENDED COMPLAINT

### INTRODUCTION

1.      Mr. William Scovin brings suit under the Employee Retirement Income Security

Act ("ERISA"), Sections 29 U.S.C. §§1001 et seq.; 29 U.S.C. §1132(a)(1)(B) et seq.; and §1140

et seq., for the defendants failure to pay medical benefits under their medical benefits plan, and

state law claims for breach of contract, negligent misrepresentation, negligent management,

breach of fiduciary obligations, fraud and deceit, Connecticut General Statutes Section 42-110, et

seq. (CUTPA), negligent infliction of emotional distress, piercing the corporate veil, and breach of contract / promissory estoppel.

### THE PARTIES

2.      Plaintiff, William Scovin, resides in Bridgewater, CT.

3.      Defendant Great-West Life & Annuity Ins. Co. ("Great West"), is an insurance company organized under the State of Colorado with its principal place of business in Colorado and does business throughout the United States including New York, New Jersey, and Connecticut.

4.      Defendant One Health Plan ("One Health") is an insurance company organized under the laws of the State of Colorado with its principal place of business located in Colorado and is a subsidiary of Defendant Great West.

5.      At all relevant times, the Defendant Great West was acting as the servant an agent of the Defendant Auerbach or was otherwise acting with the authority to handle, process, authorize, and accept claims on behalf of the Defendants.

6.      Defendant Auerbach, Pollak & Richardson, Inc. ("Auerbach") is or was a Connecticut corporation with its principal place of business located at 333 Ludlow Street, Stamford, CT.  Auerbach also had addresses in New York and New Jersey.

7.      Defendant Hugh Regan is or was the Chairman/President & CEO of Defendant

Auerbach with offices located in Stamford, CT.

8.    Defendant Robert Drake was the head of Operations at Defendant Auerbach with an office located in Stamford, CT.

9.    At all times relevant, Defendant Lewis Cohen was the controller of Defendant Auerbach with offices located in Stamford, CT.

10.    Defendant A. Jones Yorke is or was vice chairman of Defendant Auerbach and a member of Auerbach's Board of Directors with offices in Stamford, CT.

## JURISDICTION

11.    This court has jurisdiction of this action pursuant to 29 U.S.C. §1132(e) and 28 U.S.C. §1331. This court has venue of this action pursuant to 29 U.S.C. §1132(e)(2). Moreover, this Court has supplemental jurisdiction under 28 U.S.C. 1367 and the Plaintiff has exhausted all available remedies under his medical benefit plan supplied by his employer at the time, Defendant Auerbach.

## FACTS

12.    During approximately August of 1999, the Plaintiff, William Scovin began his employment with Defendant Auerbach and received, among other things, family medical and insurance benefits in the form of a Point of Service ("POS") or a Primary Care Provider ("PCP") Plan provided by Oxford Healthcare as part of his employment package with Auerbach.

13.     Subsequently, Auerbach acquired certain assets from eVision USA.COM and changed to or otherwise adopted eVision's healthcare plan which was a self funded plan administered and provided by Great West (the "Plan").

14.     Commencing approximately in April 2001, Auerbach provided health care coverage to Scovin under COBRA and enrolled Scovin and his family in the Great West health care plan, but at all relevant times, the Defendants did not provide William Scovin with a copy of the Summary Plan Description ("SPD") and provided no relevant information concerning the type or status of the Plan.

15.     Auerbach is the sponsor of the Plan and it is also a Plan fiduciary under ERISA.

16.     At all relevant times, Defendants Hugh Regan, ("Regan"), Louis Cohen, ("Cohen), Robert Drake ("Drake"), and A. Jones Yorke ("Yorke") were officers, directors, employees, and/or agents of Defendant Auerbach and controlled the funding and operation of Auerbach's healthcare Plan.

17.     As a result of the facts set forth herein and in furtherance of their acts, omissions, responsibilities, and conduct, Defendants Regan, Cohen, Drake, and Yorke are Plan fiduciaries under ERISA.

18.     Defendants Great West and Health One are, among other things, administrators of the Plan, fiduciaries under the Plan pursuant to ERISA, and were agents and servants of

Auerbach.

19.     At all times set forth herein, the Plaintiff, William Scovin and his family were participants under the Plan. As a result and at all times relevant, each of the Defendants had a fiduciary relationship, obligations, and/or contractual obligations with respect to the Plaintiff.

20.     At approximately the end of January 2001, the Plaintiff left his employment at Auerbach and Auerbach, acting through Regan, agreed to pay his family health care benefits for February and March of 2001 to the then provider, Oxford Health Service. Regan also confirmed and stated that, thereafter, Scovin could continue coverage under COBRA. Sometime during approximately April of 2001 and unbeknownst to the Plaintiff, Defendant Auerbach switched providers from Oxford to Defendants Great West and One Health.

21.     As the insurance providers, fiduciaries, and/or as acting on behalf of Defendant Auerbach, the Defendants are subject to and governed by ERISA and/or the common law.

22.     Commencing approximately in April of 2001, Plaintiff William Scovin was advised of the existence of the Great West Plan, continued to maintain his family medical benefit package/coverage and in consideration of Auerbach / Regan's statements, paid monthly premiums of $729.79 under COBRA through approximately August 2001 for healthcare coverage under the Plan provided by the Defendants, Auerbach, Great West, and One Health.

23.     The Defendants, their agents and/or servants, accepted each of the Plaintiff's

monthly premiums, cashed or negotiated the Plaintiff's COBRA payment checks during the pertinent time period(s), acted in concert with the Plan fiduciaries in failing to provide the benefit(s), and/or used the Plaintiff's payments for their own or Auerbach's purposes instead of their ERISA and/or contractual obligations and promises to the Plaintiff. In so doing, among other things, Defendants induced the Plaintiff into believing that he had insurance coverage and that it was in full force and effect, and into not obtaining alternative insurance..

24.    At no time did the Defendants, their agents or servants, return or otherwise reimburse the Plaintiff his COBRA payments which he paid to them to secure the benefits and cover his contribution towards the promised medical benefits which benefits he never received.

25.    At no time did the Defendants advise Scovin that, unlike the prior Oxford healthcare plan, the Great West healthcare plan with Auerbach was a "self funded plan" that was dependent upon Auerbach making periodic/monthly payments to Great West to fund the medical cost incurred by Auerbach's employees.

26.    In early 2001 and into June 2001, Auerbach experienced a significant capital short fall(s) and as a result stopped its day to day trading activity and/or sent out regulatory notices in connection therewith.

27.    In addition, Auerbach, its agents and servants, lost an arbitration litigation which also contributed towards the capital shortfall or otherwise caused an adverse affect on the

company and its capitalization status.

28.     During approximately June and into July 2001, Auerbach stopped paying many of its employees, and began laying off its employees.

29.     As a result of these financial problems and during that time, Auerbach at the direction of and/or with the knowledge or consent of Defendants Regan, Yorke, Cohen and Drake ceased funding the Plan.

30.     During the early part of 2001 including June/July, the Plan administrator advised and otherwise warned the Defendants, including Regan, of the financial concerns and adverse status of the Plan and what needed to be done as a result thereof.

31.     In late June or early July 2001, the Plan administrator appointed by Auerbach resigned, but the Defendants Auerbach, Regan, Yorke, Cohen and Drake failed to appoint a replacement Plan administrator or otherwise address the funding problems with the Plan.

32.     On or about July 12, 2001, Plaintiff William Scovin underwent a medically necessary surgical procedure involving a bilateral hip replacement at the Danbury Hospital.

33.     As a result of the medical treatment, therapy, and hospitalization, Plaintiff's medical bills and expenses exceeded $90,000.00.

34.     In accordance with the procedures set forth in the Plan, the Plaintiff William Scovin before incurring the aforesaid medical care and hospitalization, sought express approval

for his course of treatment.

35.    Defendants Great West and One Health at all relevant times were authorized under the Plan and/or held themselves out to have the authority to pre-approve/ pre-certify the subject medical treatments set forth herein.

36.    As a result, prior to the aforesaid surgery and related medical treatment(s), the Danbury Hospital, the other medical providers, and/or Plaintiff William Scovin received pre-approval/pre-certification for the treatments and surgery from the Defendants Great West and One Health.

37.    Throughout the relevant time period, the Defendants, their agents and representatives, omitted telling Plaintiff the true status of the Plan, and repeatedly represented to and assured William Scovin that his medical benefits were continuing, that the Plan was in effect, and that his procedures were approved and that therefore his bills would be paid.

38.    The Plaintiff relied upon the above representations, omissions, and conduct of the Defendants, their agents and servants to his financial detriment.

39.    At times during this time period, the Defendants, including Regan, Yorke, Cohen, and/or Drake met and discussed that Auerbach was financially failing and should be wound up; knew or should have known of Auerbach's adverse financial status, knew or should have known that its bills and expenses were not being paid, that the Plan was not being funded or adequately

funded, that the Plan or its benefits had been placed on hold, that the Plan was otherwise in jeopardy, and/or they were advised to fund the Plan or, in the alternative, to advise the beneficiaries under the Plan of the situation and that the coverage may not be available or would otherwise be on hold or cease.

40.    Prior to July 12, 2001 and despite their knowledge that Auerbach's finances were precarious and/or that Auerbach could not fund the Plan and that Defendants Regan, Yorke, Cohen and Drake had decided not to fund the Plan, the Defendants failed to advise the Plaintiff of these facts when they knew or should have known it was their obligation to inform him, and that it would be unreasonable not to do so.

41.    Notwithstanding a decision to stop funding the Plan, the defendants Auerbach, Regan, Yorke, Cohen and Drake took no steps to close down or terminate the Plan or to notify beneficiaries of the Plan, including COBRA beneficiaries like the Plaintiff, that the Plan could no longer meet all its financial obligations to pay for the medical costs incurred by such beneficiaries.

42.    The Defendants, their agents, servants, or representatives, failed to timely and/or properly notify the Plaintiff of any financial or funding concerns about the Plan, administrative holds, or other similar issues adversely affecting his benefits when they knew or should have known that it would be unreasonable not to do so and that such conduct would financially harm

William Scovin and would violate their fiduciary obligations to him.

43.    In approximately September 2001, well after the completion of the surgery, Plaintiff learned from Danbury Hospital and other providers that his medical bills remained unpaid and/or outstanding.

44.    Despite their pre-approval of his course of treatment, their representations, and their acceptance of his COBRA payments, the Defendants refused to pay and/or otherwise cover the medical bills and costs incurred by Plaintiff William Scovin claiming that the Plan was not being funded by Auerbach, but at no time did the Plan ever determine that Scovin's bills and costs were not eligible for payment under the Plan.

45.    William Scovin also learned that Defendant Auerbach has not and/or has refused to cover the outstanding medical expenses incurred by other beneficiaries of the Plan during the relevant time period(s) and upon information and belief, Plaintiff has learned that the Plan was on administrative hold by Great West during part of the relevant time period of his treatment and subsequently Great West terminated its relationship with Auerbach as a result of Auerbach's failure to fund the Plan.

46.    At this time, Plaintiff's medical expenses and bills remain outstanding and he has been placed into collections by his medical providers thereby causing him damages.

47.    As a result of, among other things, the Defendants' delay, their acceptance of his

monthly payments, their representations, pre-approvals and conduct, their failure to inform him

of the status of his coverage or of the status of the Plan, and the Defendants' retroactive refusal to

pay for pre-approved medical treatments, the Plaintiff incurred medical expenses and costs to his

financial detriment and which he would not have otherwise incurred.

       48.     Additionally, the Defendants' failure to timely notify the Plaintiff William Scovin

of any concerns or other problems with the Plan or its funding precluded him from timely

obtaining alternative insurance coverage before undertaking the aforesaid medical treatment.

       49.     As a further result of the above, the Plaintiff has suffered mental anguish and

emotional distress.

### FIRST CAUSE OF ACTION

**(Denial of Benefits by Defendant s Great West and One Health under the Plan)**

50.     Paragraphs 1 through 49 are replead as if fully set forth herein.

       51.     The Defendants Great West and Health One have breached their contractual and

fiduciary obligations by failing to pay Plaintiff's medical expenses and benefits to which he is

entitled.

       52.     29 U.S.C. §§1001 et seq. entitles Plaintiff to enforce his rights to benefits under

the Plan.

## II. SECOND CAUSE OF ACTION

### (Denial of Benefits by Defendants Auerbach, Regan, Yorke, Cohen, and Drake

### Under the Plan)

53.    Paragraphs 1 through 49 are replead as if fully set forth herein.

54.    The Defendants Auerbach, Regan, Yorke, Cohen, and Drake have breached their contractual and fiduciary obligations under the Plan by failing to pay Plaintiff's medical expenses and benefits to which he is entitled.

55.    29 U.S.C. §§1001 et seq. entitles Plaintiff to enforce his rights to benefits under the Plan.

## III.  THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty Against Great West and One Health)

56.    Paragraphs 1 through 55 are replead as if fully set forth herein.

57.    Plaintiff reasonably relied to his detriment on the Defendants Great West and One Health's pre-approval of his treatment as well as the Defendants' omissions and representations set forth herein as well as the fact that he was covered under the Plan both before and after seeking medical treatment.

58.    Defendants Great West and One Health had a duty to inform Plaintiff of the status

of the Plan, that it was on administrative hold, and the conditions under which his coverage existed at the time and that it could end so that he could act accordingly.

59.     By pre-approving his care and treatment, by failing to inform him that the Plan was on administrative hold, that it was not being funded, that it was otherwise at risk, or that his coverage could end or lapse under the circumstances, Defendants Great West and One Health breached their fiduciary duty and as a result Mr. Scovin proceeded with medical treatment to his detriment and/or was deprived of the opportunity to apply for alternative medical benefits and/or seek replacement coverage.

60.     In addition, Defendants' failure to provide plaintiff a copy of the Plan deprived plaintiff of his right to know the extent of his coverage and any rights or appeals relating thereto.

61.     As a result, Plaintiff has suffered economic and consequential losses and Defendants should be estopped from now denying coverage.


## IV.  FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty Against Auerbach)

62.     Paragraphs 1 through 61 are replead as if fully set forth herein.

63.     Plaintiff reasonably relied to his detriment on the Defendant Auerbach, its agents, servants, and representatives' pre-approval of his treatment and Defendants' omissions and

representations that he was covered under the Plan before seeking medical treatment and after.

64.    Defendant Auerbach, its agents servants, and representatives, had a duty to inform Plaintiff of the status of the Plan and the conditions under which his coverage could end so that he could conduct his personal/medical affairs and act accordingly.  By pre-approving his treatment, by omitting or failing to inform him that the Plan was on administrative hold, that it was not being funded, or that it was otherwise at risk, or that his coverage could end or lapse under the circumstances, Defendant Auerbach breached its fiduciary duties and as a result Mr. Scovin proceeded with medical treatment to his detriment and/or was deprived of the opportunity to apply immediately for alternative medical benefits and/or seek replacement coverage.

65.    In addition, Defendant's failure to provide Plaintiff a copy of the Plan deprived plaintiff of his right to know the extent of his coverage and any rights or appeals relating thereto.

### V.  FIFTH CAUSE OF ACTION

#### (Negligent Misrepresentation Against All Defendants

66.    Paragraphs 1 through 656 are replead as if fully set forth herein.

67.    At all relevant times, the Defendants, Great West,  Health One, Auerbach, Regan, Yorke, Cohen and Drake their agents and servants, knew or should have known that the Plaintiff needed and believed that he had coverage, and/or would use it or otherwise rely upon it and/or that, in fact, he was scheduled for non-emergency medical treatment and surgery.

68.   At all relevant times, the Defendants, their agents or servants, had a duty to advice or otherwise inform William Scovin of the status of the Plan and in particular, that coverage was on hold or did not or might not exist.

69.   At all times relevant, the Defendants, and their agents, servants, and representatives, had a duty to disclose adverse information concerning the status of the Plan, including its financial status and if it was on administrative hold, whether it was being adequately funded, and/or similar concerns, as well as the status of Plaintiffs' coverage there under to the Plaintiff.

70.   At no time before William Scovin underwent the medical treatment and/or surgery as described herein did the Defendants, their agents or servants, orally or in writing advise him that the Plan was on administrative hold, or that problems and/or concerns existed with the financial status of the Plan.

71.   The Defendants, their agents or servants, negligently omitted telling William Scovin that the Plan was on administrative hold, or that problems and/or concerns existed with the financial status of the Plan.

72.   At all times relevant, the Defendants knew or should have known that William Scovin would rely upon the Plan's existence, their omissions and representations that he was to be covered under the Plan and that he was pre-approved for the aforesaid treatments.