73.    The Defendants, their agents or representatives, pre-approved medical treatment, failed to advise participants including William Scovin, and permitted the Plan to continue under the circumstances when they knew or should have known for some time that it was not being properly funded by Auerbach and/or otherwise was at financial risk and would possibly be terminated.

74.    The Defendants failed to disclose any information to the Plaintiff regarding his status or exposure under the Plan or that of the Plan itself under the circumstances, and pre-approved him despite their knowledge that the Plan was in financial jeopardy and/or that the Plaintiff was at risk of losing coverage.

75.    As a result of their negligent omissions, conduct, and/or representations, the Defendants are liable to the Plaintiff.

## VI.  SIXTH CAUSE OF ACTION

### (Negligent Management of the Plan By All Defendants Under State Law)

76.    Paragraphs 1 through 75 are replead as if fully set forth herein.

77.    At all times relevant, the Defendants, Great West, Health One, Auerbach, Regan, Yorke, Cohen and Drake their agents and servants, were required to exercise due care in connection with the handling of and the processing of claims, including William Scovin's, and in the management of the Plan.

78.     The Defendants omissions and acts concerning the handling and processing of William Scovin's claim, and/or permitting the Plan to continue under the circumstances, constitute mismanagement of the Plan.

## VII.     SEVENTH CAUSE OF ACTION

### (Violation of CUTPA Against All Defendants Under State Law)

79.     Paragraphs 1 through 78 are replead as if fully set forth herein.

80.     The aforesaid conduct, representations, and/or actions of the Defendants Great West, Health One, Auerbach, Regan, Yorke, Cohen and Drake constitute the engagement by the defendants of unlawful unfair methods of competition and/or deceptive acts or practices in the conduct of trade and commerce within the meaning of Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, *et seq.* and some or all of which were a substantial factor in causing the Plaintiff's injuries and damages.

81.     The conduct of the Defendants alleged herein constitutes a violation of CUTPA in that said conduct violates established concepts of fairness and public policy, including in particular that Defendants misled Plaintiff about the nature and existence of his healthcare coverage, accepted COBRA payments from him when they knew or should have known the Plan was on administrative hold or would not be funded by Auerbach, and allowed the Plaintiff to

proceed with expensive medical treatments when they knew or should have known they had decided to cease funding the Plan.

82.     The conduct of the Defendants alleged herein constitutes a violation of CUTPA in that said conduct constitutes unfair and deceptive practices and/or practices which are immoral, unethical, oppressive and/or unscrupulous.

83.     Plaintiff has suffered an ascertainable loss as a result of the Defendants conduct as alleged herein.

84.     A copy of this Amended complaint has been forwarded to the Attorney General of the State of Connecticut and to the Commissioner of Consumer Protection.

85.     As a result, the Defendants are liable to the Plaintiff William Scovin.

## VIII.  EIGHTH CAUSE OF ACTION

### (Common Law Deceit and Fraud Against All Defendants Under State Law

86.     Paragraphs 1 through 85 are replead as if fully set forth herein

87.     The aforesaid conduct, omissions, and unfair and deceptive trade practices were undertaken by Defendants Great West, Health One, Auerbach, Regan, Yorke, Cohen and Drake recklessly, deliberately, and/or willfully and mislead the Plaintiff into believing that his benefits under the Plan were intact and financially sound, that he was a covered person under the Plan, and that his multiple medical expenses would be paid in that at the time, he was without steady

employment.

88.     Plaintiff had no reasonable way to determine that the Defendants were withholding information from him concerning the Plan and its viability, that they were accepting his payments and using them for their own financial purposes, that the Plan was on administrative hold and/or not paying any of his claims, or any other information regarding his available medical benefits there under, or that he needed other medical insurance to cover his treatment, expenses, and family.

89.     By reason of the foregoing extreme conduct, the Plaintiff has suffered damages and Defendants are liable to the Plaintiff under the common law doctrine of fraudulent omission, fraud, and deceit for the monetary damages sustained.

## IX.  NINTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress Against All Defendants )

90.     Paragraphs 1 through 89 are replead as if fully set forth herein.

91.     As a result of the negligent, careless, and / or reckless, representations and omissions of the Defendants Great West, Health One, Auerbach, Regan, Yorke, Cohen and Drake, William Scovin's financial status and that of his family has been severely compromised.

92.     As a further result, William Scovin has experienced mental anguish and distress as a result of the Defendants' acts and omissions as set forth herein.

## X.  TENTH CAUSE OF ACTION

### (Breach of ERISA Fiduciary Duty Against Regan, Yorke, Cohen and Drake)

93.    Paragraphs 1 through 92 are replead as if fully set forth herein.

94.    Defendants Regan, Yorke, Cohen and Drake, controlled the funding of the Plan and the decision not replace the named administrator of the Plan when she resigned in late June or early July 2001.

95.    Plaintiff reasonably relied to his detriment on the Defendants Regan, Yorke, Cohen and Drake, acting as Plan fiduciaries, and the conduct of their agents, servants, and representatives in pre-approving his proposed treatment and their omissions about and representations that he was covered under the Plan before he sought medical treatment and after.

96.    Defendants Regan, Yorke, Cohen and Drake, as fiduciaries of the Plan and/or in concert with Auerbach, had a duty to inform Plaintiff of the status of the Plan and the conditions under which his coverage could end so that he could conduct his personal/medical affairs and act accordingly.  By allowing the Plan and Great West to pre-approve his treatment, by accepting his payments, by failing to inform him that the Plan was on administrative hold, that it was not being funded, that it was otherwise at risk, or that his coverage could end or lapse under the circumstances, these Defendants breached their fiduciary duty to the Plan and it beneficiaries and

as a result Mr. Scovin proceeded with medical treatment to his detriment and/or was deprived of the opportunity to apply immediately for alternative medical benefits and/or seek replacement coverage.

## XI.  ELEVENTH CAUSE OF ACTION

### (Piercing the Corporate Veil as to Regan, Yorke, Cohen and Drake)

97.    Paragraphs 1 through 96 are replead as if fully set forth herein.

98.    Defendants Regan, Yorke, Cohen, and Drake completely dominated and controlled the activities of Defendant Auerbach with regards to all of its operations and including, in particular, the financial position and status of the company which included, among other things, employee benefits, the funding and operation of the Plan, the financial payments made by Plaintiff, and the provision of healthcare benefits to the Plan beneficiaries including the Plaintiff.

99.    At the times relevant to Plaintiff's claims and before his pre-approvals and subsequent surgery, Auerbach was experiencing financial problems and capital shortfalls, was not adequately capitalized, and these facts and others were known to Defendants Regan, Yorke, Cohen, and Drake.

100.    At the times relevant to Plaintiff's claims and as a result of the conduct of

Defendants Regan, Yorke, Cohen and Drake, Auerbach, its agents and servants failed to follow appropriate corporate formalities including the making and keeping of appropriate corporate records, appropriate filings, and/or the making and keeping of records of the meetings and decisions of its officers and board of directors.

101.    Defendants Regan, Yorke, Cohen and Drake chose to close down the operations of Auerbach without conducting an appropriate liquidation or wind down of Auerbach's assets and operations.

102.    Defendants Regan, Yorke, Cohen and Drake chose to close down the operations of Auerbach without terminating the Plan or notifying beneficiaries that the Plan was in jeopardy, and / or that Defendants Regan, Yorke, Cohen and Drake had decided to cease funding the Plan.

103.    At all times relevant here to Auerbach was run as the alter ego of Regan, Yorke, Cohen, and Drake.

104.    Defendants Regan, Yorke, Cohen and Drake are liable for all of the conduct of Auerbach alleged in this action and are jointly and severally liable for Auerbach's conduct that has damaged the Plaintiff.

## XII.  TWELVTH CAUSE OF ACTION

### (Breach of Contract as to Auerbach, Regan, Yorke, Cohen and Drake)

105.    Paragraphs 1-49 are replead as if fully set forth herein.

106.    The Defendants had the obligation and duty of good faith and fair dealing with respect to the employment relationship with William Scovin and were obligated to comply with their agreement to provide COBRA and with the terms of COBRA and the Plan.

107.    The aforesaid conduct, including their acceptance of his COBRA payment(s) was undertaken by the Defendant without providing the reciprocal expected benefit.

108.    The Defendants accepted and negotiated Plaintiff's check payments after June 2001 and failed to make any payments to fund the Plan but used Plaintiff' payments elsewhere.

109.    As a result, the Defendants have breached their contractual obligations and violated the covenant of good faith and fair dealing.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff requests that this Court :

1.      Assume Jurisdiction over this matter;

2.      Enjoin the Defendants from denying Plaintiff's claims and enjoin the Defendants to fund the Plan fully and have the Plan pay all of the outstanding medical claims previously presented to the Plan by beneficiaries, including the medical costs incurred by the Plaintiff;

3.      Enjoin the Defendants to settle or pay each of Plaintiff's outstanding medical bills which such bills should have been paid by the Plan;

4.      Award Plaintiff the medical expenses and coverage owed him under the Plan, plus prejudgment interest, and any other remedies available under ERISA;

5.      Award Plaintiff attorneys fees and costs, under ERISA;

6.      Award monetary damages under state law;

7.      Award punitive damages under the common law or under CUTPA;

8.      Award attorneys under CUTPA or the common law;

9.      Award such other legal or equitable relief to which the Plaintiff may be entitled.

THE PLAINTIFF, WILLIAM SCOVIN

By_____

Kevin M. Greco (ct 13195)
Peter M. Nolin (ct 06223)
**SANDAK HENNESSEY & GRECO LLP**
707 Summer Street
Stamford, CT 06901-1026
(203) 425-4200
FAX (203) 325-8608
kgreco@shglaw.com
pnolin@shglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, postage prepaid to the following counsel and pro se parties on November 1, 2005:

Christopher G. Barnes, Esq.
Jeffrey L. Williams, Esq.
Jorden Burt
175 Powder Forest Drive, Suite 201
Simsbury, CT  06089

James M. Moriarty, Esq.
Mark S. Gregory, Esq.
Kelley Drye & Warren LLP
Two Stamford Plaza
281 Tresser Boulevard
Stamford, CT  06901

Robert G. Cushing, Esq.
Cushing Law Firm
420 East 54th Street
New York, NY  10178

Robert Drake
558 Lime Rock Road
Lakeville, CT  06039

Kevin M. Greco

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM SCOVIN,                          :
                                         :
        Plaintiff,                       :
                                         :
        v.                               :
                                         :     CASE NO. 3:02CV1161 (AWT)
GREAT WEST LIFE & ANNUITY                :
INS. CO,  et al.,                        :
                                         :
        Defendants.                      :
                                         :

RULING ON MOTION FOR SANCTIONS

        Pending before the court is the plaintiff's Motion for

Sanctions (doc. #156).  The court heard oral argument on this

motion on September 18, 2006.

A.    **Factual Background**

        The plaintiff's complaint alleges the following facts.

Plaintiff was formerly employed by the defendant Auerbach, Pollack

& Richardson ("Auerbach").  (Am. Compl., ¶ 12.)  The individual

defendants, Hugh Regan, Robert Drake, Lewis Cohen and A. Jones

Yorke were Auerbach employees or officers. (Id., ¶ 16.)  Regan was

the Chairman/President and Chief Executive Officer of Auerbach,

Cohen was its Controller and Yorke was its Vice Chairman and a

member of the Board of Directors. (Id, ¶ 7.)

        As part of his employee benefits, Auerbach provided the

plaintiff with medical insurance. (Id., ¶ 12, 14.)  Auerbach is a

plan sponsor. (Id., ¶ 15.)  Auerbach and the individual defendants

are plan fiduciaries under ERISA.[1] (Id., ¶ 19, 21.)

In January, 2001, plaintiff left his employment with Auerbach but was told by Auerbach, acting through Regan, that he would continue to have medical coverage. (Id., ¶ 20.)  Plaintiff paid COBRA premiums of $729.79 a month from April to August of 2001 to continue his health coverage. (Id., ¶ 20.)

On July 12, 2001, Scovin underwent a medically necessary hip replacement surgery.  (Id., ¶ 32.)  He obtained express approval for the surgery from Great West and One Health in advance. (Id., ¶¶ 34-36.) They repeatedly assured him that his procedure would be covered under his health insurance. (Id., ¶ 37.)

After the July 12, 2001 surgery, insurance coverage for his expenses was denied because Auerbach had not funded the health plan. (Id., ¶ 40-44.) His medical bills of over $90,000 were not paid.  (Id., ¶ 33, 46.) He brought this lawsuit alleging violations of ERISA, breach of contract, breach of fiduciary duties, and other claims.

**B.    Procedural Background**

In June, 2005, the plaintiff noticed the depositions of three of the individual defendants, Regan, Yorke and Cohen.  The deposition notices included a series of document production

---

[1]The plaintiff also alleges that Great West and One Health are administrators of the plan and fiduciaries under the Plan. However, the plaintiff has withdrawn his claims against these two defendants. (Id., ¶ 18.)

requests.  As to each of these defendants, the plaintiff sought

the following categories of documents:

    1. The witness' entire file relating to this litigation;

    2. All documents relied upon by the witness in
    developing any opinions the witness intends to testify
    to in this litigation;

    3. All drafts of any documents relating to this
    litigation;

    4. All documents and/or communications between the
    witness, the Defendant(s) and any party to this
    litigation;

    5. Any and all manuals, procedures, protocols or
    documents outlining the administration and handling of
    claims in the Auerbach health care plan from January 1,
    2000 to date;

    6. All documents reflecting all payments the witness has
    received from Auerbach, Pollack & Richardson, Inc.
    ("Auerbach") from 1999 to date;

    7. Personal tax returns from 1999 to date;

    8. All communications to or from Auerbach from 1999 to
    date;

    9. All documents reflecting any ownership share the
    deponent has or had in Auerbach from 1999 to date;

    10. All documents relating to any health care plan
    provided to Auerbach employees from 1999 to date;

    11. All documents listing officers, directors and
    shareholders of Auerbach from January 1, 2000 to date;

    12. All documents the defendants intend to rely upon in
    defense of this matter;

    13. All minutes of Auerbach Board of Directors Meetings
    from 1999 to date;

    14. All financial records of Auerbach's health care plan
    for its employees from 1999 to date;

15. All documents related to any COBRA payments Auerbach received from William Scovin; and

16. Any resignation documents the deponent has provided to Auerbach.

Pl's Motion to Compel, doc. #135, Ex. A. The defendants objected to these requests and refused to produce responsive documents.

The plaintiff filed a Motion to Compel (doc. #135). After hearing oral argument on the Motion to Compel on September 13, 2005, the court issued an order on September 16, 2005 (doc. #143) (the "9/16/05 Order") granting in part the Motion to Compel. The court ordered the defendants to respond to all but one of the plaintiff's document requests.[2] With regard to Requests for Production Nos. 1-3, the court granted the motion "with the exception of written communications between the defendants Regan, Cohen and A. Jones Yorke and their trial counsel after the commencement of this action, which documents are not sought by the plaintiff." (9/16/05 Order at 1.)

In the briefing and arguments on the motion to compel, the defendants argued that they had no obligation to respond to the production requests because the requested documents were no longer

---

[2]In some instances, the court narrowed the scope of the document requests somewhat. As to Requests for Production No. 6, 7, 9, 10, 13 and 14, the court narrowed the time period for which documents had to be produced. Request for Production No. 4 was granted "to the extent there exist any documents and/or communications among the defendants concerning the subject matter of this litigation." The court held that Request for Production No. 8 was overbroad and encouraged the parties to meet and confer in a good faith attempt to narrow the request.

in their possession.[3]  (<u>Id.</u> at 4.)  In the 9/16/05 Order, the
court noted that a party "may not object to a request to produce
on the ground that it does not possess the documents if the
documents remain in its 'control' such that the party has the
right, authority, or ability to obtain the documents upon demand."
(9/16/05 Order at 4, citing <u>Scott v. Arex, Inc.</u>, 124 F.R.D. 39, 41
(D.Conn. 1989).)

The defendants were therefore ordered "to produce responsive
documents within their possession, custody or control, or provide
plaintiff with an affidavit detailing precisely what attempts each
individual has made to obtain those documents, when those attempts
were made, and to whom those attempts were addressed."  (9/16/05
Order at 4.)

C.  **Motion for Sanctions**

Pending before the court is the plaintiff's Motion for
Sanctions.  Plaintiff alleges that the defendants failed to comply
in full with the court's 9/16/05 Order.  Although they produced
additional documentation after the court's 9/16/05 Order, and have
provided affidavits detailing their search efforts, the plaintiff
contends that their compliance was insufficient.  Specifically,
defendants did not seek documents from the former corporate

---

[3]There have been discussions regarding some twelve bankers'
boxes of Auerbach corporate documents that apparently went
"missing" in 2001.  (<u>See</u> Pl's Opp. to Defs' M. for Summary
Judgment, doc. # 170 at 38; <u>see also</u> Transcript of 9/18/06 oral
argument on Motion for Sanctions ("9/18/06 Tr.") at 67.)

5

secretary of Auerbach, Mark Koplik, or from Auerbach's corporate
counsel, Richard Cushing. In addition, plaintiff claims that the
defendants violated the 9/16/05 Order by delaying the production
of certain documents they received from the U.S. Department of
Labor.

Plaintiff first argues that the defendants' compliance was
insufficient because they did not seek records from Auerbach's
former corporate Secretary, Mark Koplik. As the company's
Secretary, Mr. Koplik likely was responsible for certain corporate
documents, such as minutes of board meetings. The defendants'
affidavits do not indicate that they have made any efforts to
obtain responsive documents from Mr. Koplik. The defendants
maintain that, before the plaintiff may seek sanctions for failure
to produce documents in Koplik's possession, the plaintiff has the
burden to prove that the defendants have control over the
documents sought. They also object that they do not in fact have
control over Koplik, because he has not worked for Auerbach in
five years and plaintiff has not shown that the defendants have a
legal right to require Koplik to provide the documents.

The defendants interpret the concept of control too narrowly.
As the 9/16/05 Order explained, a party has control of documents
if the party "has the right, authority, or *ability* to obtain the
documents upon demand." (9/16/05 Order at 4, citing <u>Scott v. Arex</u>,
124 F.R.D. 39, 41 (D. Conn. 1989))(emphasis added). "The concept

of "control" has been construed broadly.  If the producing party
has the legal right or the *practical ability* to obtain the
documents, then it is deemed to have 'control,' even if the
documents are actually in the possession of a non-party."  In re
Flag Telecom Holdings, Ltd. Sec. Litig., 236 F.R.D. 177, 180
(S.D.N.Y. 2006) (internal citations and quotation marks
omitted)(emphasis added).

The defendants apparently have not even asked Mr. Koplik,
their former corporate secretary, for the documents.  Plaintiff's
undisputed representation that Koplik is Auerbach's former
Secretary is sufficient to meet his burden of showing that the
defendants, as former corporate officers and/or directors, have
control over documents in Koplik's possession.  The defendants
have not fully complied with the court's order to produce all
responsive documents in their possession, custody or control.

They shall obtain and produce to plaintiff all responsive
documents in Koplik's possession within thirty days.  Each of the
defendants shall also submit to the plaintiff an affidavit
detailing his efforts in this regard within thirty days.

The plaintiff next argues that the defendants' compliance
with the court's 9/16/05 Order was insufficient because the
defendants failed to state in their affidavits whether they made
efforts to obtain any documents in the possession of Richard
Cushing, Esq.  Mr. Cushing is now counsel of record for defendants

Regan, Yorke and Cohen in this matter[1], but he was also Auerbach's corporate counsel in 2001, before this litigation commenced.  The defendants object that "Scovin does not identify his professed basis for requiring the Individual Defendants to identify communications that they have had with their trial counsel regarding document production." (Defs' Mem. At 16.)  Based on some of the documents that have been produced to date, the plaintiff believes that Mr. Cushing might have received copies of certain intra-company correspondence created prior to the commencement of this litigation.  (See Pl's Mem, Ex. E.)

The plaintiff has made it clear that he does not seek production of any privileged communications between the defendants and their attorney in this matter.  Rather, he seeks responsive, non-privileged documents which are not in the defendants' personal possession, but which are in the possession of Mr. Cushing.  The 9/16/05 Order expressly stated that the defendants were not required to produce "written communications between the defendants Regan, Cohen and A. Jones Yorke and their trial counsel after the commencement of this action, which documents are not sought by the plaintiff."

─────────────────────

[1] Mr. Cushing appeared on behalf of the defendants by a motion for *pro hac vice* admission filed on April 28, 2005, doc. #118. Mr. Cushing suggested at oral argument on this motion that he only represents defendants Yorke and Regan (9/18/06 Tr. at 52), but the motion for *pro hac vice* admission clearly sought his admission on behalf of Yorke, Regan and Cohen.  These three defendants are also represented by James Moriarty and other attorneys from Kelley, Drye & Warren LLP.

Documents that are in the possession of a party's attorney of
record are within the party's possession, custody and control for
discovery purposes. See Hanson v. Gartland Steamship Co., 34
F.R.D. 493, 496 (N.D. Ohio); M.L.C. v. N. American Philips Corp.,
109 F.R.D. 134, 136, 138 (S.D.N.Y. 1986).  The purpose of this
rule is, in part, to avoid the situation where an attorney must be
subpoenaed and deposed to obtain non-privileged documents, thereby
making him a witness in the case.  Hanson, 34 F.R.D. at 496
(noting that such depositions "contradict[] the general policy of
avoiding situations where an attorney becomes a witness").  The
court's 9/16/05 order therefore required the defendants to produce
any responsive documents in Mr. Cushing's file.

Within ten days after the date of this order, the defendants
shall produce to the plaintiff any responsive documents in
Attorney Cushing's files, as required by the 9/16/05 Order.

Finally, the plaintiff argues that the defendants failed to
comply with the 9/16/05 Order by failing to disclose promptly
certain documents from a United States Department of Labor
investigation into matters related to this case.  After the
Department of Labor investigation, the defendants filed a request
with that agency pursuant to the Freedom of Information Act
("FOIA"), 5 U.S.C. § 552.  The defendants apparently received
responsive FOIA documents in late October, 2005.  On November 3,
2005, the defendants produced to plaintiff approximately 1000
pages of documents received from the Department of Labor.

Defendants did not indicate that any Department of Labor documents
had been withheld, so plaintiff's counsel was left with the
impression that the production included all the documents the
defendants had received from the Department of Labor.  In reality
the defendants had withheld certain items they received from the
Department of Labor.  They explain that these items were withheld
because the defendants believed them to be "unresponsive" or
"duplicative."

On January 9, 2006, the defendants produced 432 pages of
Department of Labor documents that had previously been withheld,
accompanied by a cover letter alerting plaintiff of their intent
to file a motion for summary judgment.  Three days later, on
January 12, 2006, the defendants filed their Motion for Summary
Judgment.  The defendants say that, in preparing their motion for
summary judgment, they reviewed the FOIA production and decided to
err on the side of caution by producing the documents.

Included in the second production of Department of Labor
documents were Department of Labor notes of interviews that the
agency conducted during its investigation, as well as the agency's
letters, addressed to Regan and Cohen, setting forth the agency's
conclusion that Regan and Cohen were fiduciaries under ERISA.

There is no question that the issue of whether the defendants
were fiduciaries under ERISA is a central issue in this case.  The
defendants' motion for summary judgment is based on an argument
that Yorke, Regan and Cohen are not fiduciaries, and the

plaintiff's objection to that motion relies on the argument that
they were fiduciaries.  The Department of Labor documents,
produced to the plaintiff three days before that motion was filed,
indicate that the Department of Labor found that defendants Regan
and Cohen were in fact fiduciaries.[5]

There is also no question that the Department of Labor
documents are responsive to one or more of the defendants'
previous discovery requests.  Document Request #10, as narrowed by
the court in the 9/16/05 Order, seeks all documents relating to
any health care plan provided to Auerbach employees during 2000 or
2001.  According to the Department of Labor's letters, the
Department was involved in investigating "the Auerbach Pollack &
Richardson Health Plan . . . and the activities of the Plan's
fiduciaries" in relation to nonpayment of claims beginning in
January, 2001.  (Pl's Mem., Ex. J at 1.)  The Department of Labor
letters therefore relate to the health care plan provided to
Auerbach employees during 2000 or 2001.  Because these letters
were addressed to the defendants, they may also be responsive to
Production Request #1 as documents that were part of the

---

[5]The defendants dispute the significance or effect of the
letters that the Department of Labor sent to the defendants,
arguing that they were merely "preliminary" form letters rather
than the conclusions of an investigation.  The plaintiff disagrees.
The court does not express any opinion at this juncture on the
significance of the letters, but merely notes that they are
relevant to a key issue in the case and are responsive to the
plaintiff's discovery responses.

defendants' files.[6]  They are also "documents relating to this
litigation," as requested by Production Request #3, and they might
also be responsive to Production Requests #4 and 12.

The defendants claim that they had no duty to produce the
records to the plaintiff at all, because they were publicly
available documents that plaintiff could have obtained himself.
Defendants' argument, even if correct, is unpersuasive in light of
the defendants' decision to produce some of the documents without
informing plaintiff that they had withheld others.  At that point,
the plaintiff reasonably believed that he had all of the
Department of Labor documents and had no reason to expend time and
money duplicating the defendants' efforts.

The defendants also claim that there is no prejudice because
the Department of Labor documents are not admissible.  There has
been no ruling on the admissibility of the documents, but even if
the defendants are correct, the plaintiff was nonetheless entitled
to them.  Under the Federal Rules of Civil Procedure, parties are
entitled to discovery of relevant matters.  "Relevant information
need not be admissible at the trial if the information sought
appears reasonably calculated to lead to the discovery of
admissible evidence.'"  Fed. R. Civ. P. 26(b)(1).  "This obviously
broad rule is liberally construed."  Daval Steel Products, Div. of
Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir.

---

[6]The defendants admitted at oral argument that defendant
Regan, at least, did receive a letter from the Department of Labor
and cooperated with the Department. (9/18/06 Tr. at 53.)

1991).

The failure to disclose key Department of Labor documents until January, 2006, just days before the motion for summary judgment was filed, was a violation of the 9/16/05 Order.[7]

If a party fails to comply with a court's discovery orders, Rule 37(b) of the Federal Rules of Civil Procedure provide for the entry of such orders "as are just," including any of several sanctions enumerated in Rule 37(b). Among these are an order that designated facts shall be taken to be established for purposes of the action, see Rule 37(b)(2)(A); an order preventing the disobedient party from introducing certain documents, or supporting or opposing designated claims or defenses, see Rule 37(b)(2)(B); the entry of dismissal or default, see Rule 37(b)(2)(C); the striking of the pleadings of the offending party, see Rule 37(b)(2)(C); and the award of reasonable expenses, including attorney's fees, see Rule 37(b)(2). There is no indication in Rule 37 that this list of sanctions was intended to be exhaustive.

The plaintiff has requested an award of attorney's fees, the denial of the defendants' Motion for Summary Judgment, and that the defendants be compelled to produce all documents and

---

[7]The defendants argue that the plaintiff's motion for sanctions should be denied because he has failed to comply with the requirements of L. Civ. R. D. Conn. 37(a)(2). However, as to this failure of compliance, there was nothing about which counsel could confer. Plaintiff did not know that anything had been withheld until the day he received the full compliance, at which point there was nothing more to discuss with defense counsel.

13

affidavits as to their search efforts.

Plaintiff was granted an extension of time to object to the defendants' motion for summary judgment, so that he had time to review the defendants' Department of Labor documents before filing his objection. However, since learning that the defendants initially withheld Department of Labor documents, the plaintiff has filed his own FOIA request and has appealed to the Department of Labor for the release of additional items, but he cannot predict what he will receive and whether it too will lead to a need for additional discovery. The plaintiff has not, of course, ever seen any responsive documents that might be in the hands of Mr. Koplik or Mr. Cushing.

The defendants shall comply with the 9/16/05 Order as set forth herein. Plaintiff may make further inquiries into any issues arising out of: (1) the Department of Labor documents produced by the defendants, (2) any additional documents he receives directly from the Department of Labor, and (3) any additional documents produced by the defendants in compliance with this order. The defendants' motion for summary judgment should be denied without prejudice to refiling after the completion of discovery. Plaintiff is awarded the costs of this motion.

D. **Conclusion**

For the reasons set forth above, the plaintiff's motion for sanctions is granted in part and denied in part. The defendants' motion for summary judgment (doc. #153) should be denied without

14

prejudice to refiling at a future date.  The plaintiff is awarded
the reasonable costs of this motion.

SO ORDERED at Hartford, Connecticut this 29th day of
September, 2006.

_____
Donna F. Martinez
United States Magistrate Judge