UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM SCOVIN ) | |
| ) | |
| Plaintiff ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 3:02CV01161(AWT) |
| GREAT-WEST LIFE & ANNUITY INS. CO., ) | |
| ONE HEALTH PLAN, INC., AUERBACH, ) | |
| POLLAK & RICHARDSON, INC., HUGH ) | |
| REGAN, LEWIS COHEN, ROBERT DRAKE, ) | |
| A. JONES YORKE ) | |
| ) | |
| Defendants. ) | JUNE 28, 2007 |

**PLAINTIFF'S SUPPLEMENTAL LOCAL RULE 56(a)(2) STATEMENT**

Plaintiff, William A. Scovin ("Scovin"), submits this supplemental statement pursuant to Local Rule 56(a)(2) in Objection and Response to the Defendants' Notice of Reinstatement of Summary Judgment Motion dated June 8, 2007 and the Rule 56(a)(1) Statement of the Defendants Regan, Cohen and Yorke entitled Defendants' Local Rule 56(a)1 Statement dated January 12, 2006.

By way of background, Plaintiff previously filed a Local Rule 56(a) (2) Statement dated April 3, 2006 which replied to Defendants' Rule 56 (a)(1) Statement. In that Statement, Plaintiff responded to Defendants' allegations and also set forth in 117 separate paragraphs in the Section entitled: <u>Plaintiff's Statement of Issues of Material Facts for Which Plaintiff Contends There are Genuine Issues to be Tried.</u> In that the last paragraph in Plaintiff's April 3, 2006 Statement ("PS") ended with paragraph number 117, and for ease of numbering, Plaintiff

respectfully submits the following Supplemental Issues of Material Fact numbered sequentially beginning at paragraph 118 and going forward. In addition, Plaintiff's Declaration dated April 3, 2006 filed simultaneously with Plaintiff's Local Rule 56(a)(2) Statement contained Exhibits 1-40. As a result, Plaintiff's Supplemental Declaration will pick up at Exhibit 41 going forward.

**Plaintiff's Statement of Issues of Material Facts for Which Plaintiff Contends There are Genuine Issues to be Tried.**

118. As part of the Court's September 29, 2006 Order on Plaintiff's Motion for Sanctions, the Defendants produced a limited set of corporate records from Attorney Marc Koplik, Secretary of Auerbach Pollak & Richardson bearing Bates stamp MK000001-MK000067. In addition, Plaintiff received an unredacted copy of Defendant Regan's interview with the DOL bearing Bates stamp SCOV/DOL 0011-0014.

119. At a May 3, 2000 meeting of the Board of Directors of Auerbach, Pollak & Richardson, ("APR"), with all of the Directors being present, the individuals set forth on Schedule A attached to the minutes were upon motion made, seconded, and unanimously carried, appointed. These Officers included Defendant Lewis Cohen as FinOp, and Defendant Robert Drake as Sr. V.P. Compliance/Administration. (Exh. 41, Bates stamp MK000007-MK000008).

120. At a June 5, 2000 meeting of the Board of Directors of Auerbach, Pollak & Richardson, with all of the Directors being present and Defendant Hugh Regan acting as Secretary, Chairman John Sands' resignation was submitted and accepted. (Exh. 42, Bates stamp MK000009).

121. At that meeting of the Board, Defendant Hugh Regan's Employment Agreement was presented and approved. (Exh. 42, Bates stamp MK00009, MK000015-MK000023).

122. Defendant Regan's Employment Agreement outlined his positions as Chairman of the Board and Chief Executive Officer of the Company at an annual salary of $240,000.00 with various bonus provisions, severance benefits, and even personal counsel fees. (Exh. 42, Bates stamp MK000015-MK000019).

123. Defendant A. Jones Yorke's Employment Agreement as the Vice Chairman of the Board and Chief Administrative Officer of the Company was also unanimously approved. (Exh 42, Bates stamp MK000009-MK000014).

124. A review of Defendant Yorke's Employment Agreement reveals that it lacked the multiple bonuses and benefits of Defendant Regan's Agreement, but required him to, among other things, devote his full time and efforts during normal business hours to the business and affairs of his office at a base salary of $90,000.00. (Exh. 42, Bates stamp MK000011).

125. In September 2000, at a subsequent APR Board meeting, the Board was informed of a victory in the UBS Warburg arbitration and made, among others, the following RESOLUTIONS:

    a) that the Corporation congratulate Richard Cushing, Esq. and Parker Chapin for the achievement in the UBS Warburg arbitration,

    b) that the Corporation grant a first priority security interest in the award to in favor of the Senior Secured Promissory notes held by Hugh Regan and his family,

    c)  that the Corporation grant a security interest for its legal fees to Richard G. Cushing, as attorney, to secure the fees payable to him personally pursuant to his retainer agreement which included a right to a contingency success fee. (Exh. 43, Bates stamp MK000041).

  126. In other words, as Board members, Defendants Regan and Yorke were making financial decisions and granting security interests for attorney's fees and monies owed to Regan and his family. (Exh. 43, Bates stamp MK000041).

  127. In December 2000, with all Directors present, the APR Board held discussion and agreed to enter into a strategic alliance with eVisionUSA.com. (Exh. 44, Bates stamp MK000044).

  128. eVision purchased a 40% stake in APR and paid APR with assets coming primarily from customer accounts. (Exh. 45, Bates stamp SCOV/DOL 0012[1]; see also Exh. 50, Bates stamp MK000061-MK000066).

  129. Defendant Regan, as President of APR instructed Marc Koplik to cut APR Stock Certificates to eVision and signed and acknowledged the receipt of the Certificates. (Exh. 50, Bates stamp MK000061). Attorney Richard Cushing was repeatedly cc'd on all of these documents as they were executed and delivered. (Exh. 50, Bates stamp MK000058 - MK000067).

  130. Defendant Regan appointed Defendant Lewis Cohen and Michael Benvenuto to their respective positions. Cohen and Benvenuto[2] were ultimately responsible for managing

---

[1] Exhibit 44 of this document is the unredacted copy of PS, Exhibit 2, Bates stamp #1202-1205 by George Maul, investigator United States DOL (See PS dated April 3, 2006, Exh. 2).

payroll matters, including the deduction of payments for benefits from employee wages. (Exh. 45, Bates stamp SCOV/DOL 0012).

131.   Thus, after the combining of eVision with APR in December 2000 through APR's withdrawal as a Broker Dealer on May 29, 2001 and into its failure to make payroll in June 2001, Defendant Regan, as President opined that it was Defendant Cohen's responsibility to manage employee benefits and the deductions commensurate therewith, which, of course, necessarily included medical and COBRA payments. (Exh. 45, Bates stamp SCOV/DOL 0012-0013).

132.   In February 2001, again with all Directors present, discussion continued regarding the strategic alliance with e2Capital Group, Inc., and such was unanimously approved. (Exh. 46, Bates stamp MK000047). At that time, and as of February 14, 2001, Alexander T Baldwin, Jr. submitted his written resignation from APR and such was accepted. (Exh. 46, Bates stamp MK000048-MK000049).

133.   At this meeting, it was RESOLVED that the number of Directors of APR would be one, namely, Defendant Regan. (Exh. 46, Bates stamp MK000049).

134.   Also at the February 14, 2001 Board meeting, Defendant Regan was elected as President and Treasurer of APR and Marc S. Koplik was elected as Secretary. (Exh. 46, Bates stamp MK000049).

135.   From February 27, 2001 through March 2001, Defendant Regan executed documents/letters relating to APR's stock transfers and corresponded with eVision personnel in

---

[2] As noted in para. 25 of Plaintiff's April 3, 2006 Rule 56(a)(2) Statement, Benvenuto resigned and left APR before June of 2001.

5

connection with eVision's exercise of its options. (Exh. 50, Bates stamp MK000058-MK000067).

136. Clearly, as early as February 2001, with APR's mounting financial problems, Defendant Regan, as sole Director, President, and Treasurer, was aware of the dire financial situation. (Exh. 45, Bates stamp SCOV/DOL 0012, ¶13).

137. At the Annual Meeting of APR on February 26, 2001, Defendant Regan was elected as President and Treasurer, Attorney Koplik as Secretary, and by Unanimous Written Consent of Stockholders, Defendants Regan and Yorke, and Attorney /Secretary Koplik and John Sands were elected as Directors of APR. (Exh. 47, Bates stamp MK000050-MK000051).

138. At the Board Meeting on March 12, 2001, the Individuals set forth on Schedule A attached to the Minutes were appointed as Operating Officers. (Exh. 48, Bates stamp MK000052-MK000053).

139. On May 29, 2001, APR took a voluntary cease under the SEC Rules and withdrew as broker dealer participating in the securities industry by filing a form with the NASD and SEC because it could not fulfill its mandatory capitalization requirements. (Exh. 45, Bates stamp SCOV/DOL 0013, ¶14).

140. Customer accounts were transferred to other dealers. (Exh. 45, Bates stamp SCOV/DOL 0013 ¶14).

141. Beyond question, as of May 29, 2001, over 1 ½ months before Scovin's surgery, the Directors of APR, including Regan, Yorke and APR's FINOP defendant Cohen and

Compliance Manager Defendant Drake knew that by ceasing under SEC Rule 15.3, no income would be coming in to APR. (Exh. 45).

142. Despite this knowledge and their obligations to employees, Defendant Regan did nothing to advise the employees, provide notice, terminate or authorize others to terminate the Plan. (Exh. 45, Bates stamp SCOV/DOL 0013, ¶20).

143. On June 20, 2001, after the last payroll of APR of June 15, 2001, and well over 1 ½ months after APR ceased trading in May, the Board of Directors were still conducting business. (Exh. 49, Bates stamp MK000054-MK000055).

144. Defendant Regan, Defendant Yorke, and John Sands and Marc Koplik executed a Unanimous Written Consent of Directors which provided for and approved a settlement Agreement by and among Eileen Woodley, Auerbach Financial Group, Inc., and APR. (Exh. 49, Bates stamp MK000054-MK000055).

145. In addition, these APR Directors approved a certain Escrow Agreement made as of the 18th day of June 2001, among the parties to the litigation. (Exh. 49, Bates stamp MK000054-MK000055).

146. In other words, Defendants Regan and Yorke were still managing the financial posture of APR and agreeing to enter an Escrow and Settlement Agreement while disregarding their obligations and duties owed to their employees and their benefits despite having accepted,

for example, Scovin's COBRA payments during that time. (Exh. 49, Bates stamp MK000054-MK000055)[3].

147. As of June 20, 2001, counsel was advising Defendants on how to proceed. In the June 20, 2001 Minutes/resolution, under the advice of Richard C. Cushing counsel to the Corporation, Defendant Regan was authorized to execute and deliver any other agreements or documents relating to the Woodley Settlement. (Exh. 49, Bates stamp MK000055).

148. No references are made in any corporate minutes produced by APR's Secretary Koplik to any resignations by the named Defendants, to winding up the company/corporate entity, or to properly notifying employees and closing down the Pension and Medical Plans. (See Exhs. 41, 42, 43, 44, 46, 47, 48, 49).

149. Defendant Regan did not terminate either APR's Health Plan or the 401(k) Plan and did not order or authorize anyone else to. (Exh. 45, Bates stamp SCOV/DOL 0013, ¶20).

150. As of May 2002, Defendant Regan was aware that APR's records were shipped by Terri Spahn to his office in New York but does not know what became of the records or where they are. (Exh. 45, Bates stamp SCOV/DOL 0013, ¶21).

---

[3] For additional references to Scovin's forwarding of hisCOBRA payments and Defendants' acceptance, , see paragraphs 20, 90, 91-92 of Plaintiff's April 3, 2006 Rule 56(a)(2) Statement.

PLAINTIFF, WILLIAM A. SCOVIN

By_____/s/_____
   Kevin M. Greco (ct 13195)
   Peter M. Nolin (ct 06223)
   Sandak Hennessey & Greco LLP
   707 Summer Street
   Stamford, CT  06901
   (203) 425-4200
   (203) 325-8608 (fax)
   kgreco@shglaw.com

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was mailed, postage prepaid to the following counsel and pro se parties on this 28th day of June, 2007.

James M. Moriarty, Esq.
Mark S. Gregory, Esq.
Kelley Drye & Warren LLP
400 Atlantic Street
Stamford, CT  06901

Robert G. Cushing, Esq.
Cushing Law Firm
420 East 54th Street
New York, NY  10178

Robert Drake
558 Lime Rock Road
Lakeville, CT  06039

                                                            _____/s/_____
                                                             Kevin M. Greco