EXHIBIT 41

MINUTES OF MEETING OF DIRECTORS
OF
AUERBACH, POLLAK & RICHARSON, INC.

A meeting of the Board of Directors of the Corporation was held at the offices of Auerbach, Pollak & Richardson, Inc., a Connecticut corporation (the "Corporation") in Stamford, CT, on the date set forth below.

All of the Directors being present and waiving notice of the meeting, the meeting was called to order by the Chairman.

Upon motion duly made, seconded and unanimously carried, it was

RESOLVED, that the signing of these minutes by the Directors shall constitute full ratification thereof and waiver of notice of the meeting by the signatories.

The individuals set forth on Schedule A attached hereto were appointed as Operating Officers with the titles set forth thereon. Upon motion duly made, seconded and unanimously carried, it was

RESOLVED, that Schedule A is approved.

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the meeting was adjourned.

Dated: May 3, 2000

*Alexander T. Baldwin, Jr.* (signature)
Alexander T. Baldwin, Jr.

SCHEDULE A

## OPERATING OFFICERS PROPOSED
May 3, 2000

| | |
|---|---|
| Lewis Howard Cohen | FinOp |
| Michael Pierce Considine | Executive Vice President |
| Robert N. Drake | Sr. Vice President Compliance/Administration |
| Mark George | SROP |
| John Thomas McAleer, Jr. | Managing Director - Syndicate |
| Frank Rocco Monte | Retail Sales |
| Louis Rich | Managing Director - Trading |

EXHIBIT 43

MINUTES OF MEETING OF DIRECTORS
OF
AUERBACH, POLLAK & RICHARSON, INC.


A meeting of the Board of Directors of the Corporation was held at the offices of Auerbach, Pollak & Richardson, Inc., a Connecticut corporation (the "Corporation") in Stamford, CT, on the date set forth below.

All of the Directors being present and waiving notice of the meeting, the meeting was called to order by the Chairman. Hugh Regan was chosen to act as secretary of the meeting.

The Board was informed of the victory in the UBS Warburg (previously, Dillon Read) arbitration. Upon motion duly made, seconded and unanimously carried, it was

RESOLVED, that the Corporation congratulate Richard G. Cushing, Esq. and Parker Chapin for their achievement in the UBS Warburg arbitration; and further

RESOLVED, that the Corporation grant a first priority security interest in the award against UBS Warburg in favor of the Senior Secured Promissory notes held by Hugh Regan and his family; and further

RESOLVED, that the Corporation grant a security interest for its legal fees to Richard G. Cushing, as attorney, to secure the fees payable to him personally pursuant to his retainer agreement, which agreement includes a right to a contingency success fee; and further

RESOLVED, that the Corporation grant a security interest to Parker Chapin for its fees and expenses in connection with the UBS Warburg arbitration; and further

RESOLVED, that each and any director or officer is authorized to execute and deliver said Stockholder Agreement on behalf of the Corporation with such changes as said director or officer shall deem appropriate in his sole discretion.

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the meeting was adjourned.

Dated: September 15, 2000

_____
Hugh Regan, Secretary of the Meeting

*[signature: Cushing]*

MK000041

EXHIBIT 44

## MINUTES OF MEETING OF DIRECTORS
## OF
## AUERBACH, POLLAK & RICHARSON, INC.

A meeting of the Board of Directors of the Corporation was held at the offices of Auerbach, Pollak & Richardson, Inc., a Connecticut corporation (the "Corporation") in Stamford, CT, on the date set forth below.

All of the Directors being present and waiving notice of the meeting, the meeting was called to order by the Chairman.

Upon motion duly made, seconded and unanimously carried, it was

RESOLVED, that the signing of these minutes by the Directors shall constitute full ratification thereof and waiver of notice of the meeting by the signatories.

Discussion was held regarding entering a strategic alliance involving a sale of stock to eVisionUSA.com. Upon motion duly made, seconded and unanimously carried, it was

RESOLVED, that the Corporation should undertake to enter into a strategic alliance involving a sale of stock to eVisionUSA.com.

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the meeting was adjourned.

Dated: December 22, 2000

_____
Alexander T. Baldwin, Jr.

EXHIBIT 45

| Report of Interview | U. S. DEPARTMENT OF LABOR |
|---|---|
| | Pension and Welfare Benefits Administration |

Date of Interview: May 21, 2002

HUGH REGAN was interviewed by the writer on the above date in the law offices of Stein, Russo, Mantel, LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174. The writer advised REGAN that he was conducting an official investigation for the Pension and Welfare Benefits Administration, U.S. Department of Labor pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Dennis Stein, Esq., representing REGAN and Auerbach Pollak & Richardson, was present at the interview.

REGAN was further advised that the writer was requesting his voluntary cooperation and that any information obtained during their official investigation which may involve violation of other laws, will be referred to the appropriate agency for consideration.

In response to questioning, REGAN provided the following information:

1. REGAN stated that he is continuing to conduct business out of an office located at First Union, 110 Wall Street, 13th Fl, New York, NY 10005. Auerbach Pollak & Richardson has ceased to operate and does not conduct business from this or any other location. His office telephone number is (212) 463-5546.

2. REGAN stated that he resides at .      ７c          ７c         , and his home telephone number is       ７c

3. REGAN stated that his Social Security Number is    ７c

4. REGAN stated that he founded Auerbach Pollak & Richardson as a broker-dealer securities firm in 1991 and served continuously as the company's President and CEO from that date until the firm ceased all operations fall of 2001. The firm was registered as a broker-dealer and securities agent with the SEC and NASDAC but has withdrawn those registrations and become inactive.

5. Auerbach Pollak & Richardson was based in Stamford, Connecticut and opened an office at 450 Park Avenue in New York City in late 1997. The back office operations of Auerbach Pollak & Richardson were handled at the office located in Stamford, Connecticut whereas financial operations were conducted out of New York. Dennis Stein represented the firm as attorney and Kaufman & Company served as the firm's accountants. The Stamford, Connecticut branch of Fleet Bank provided banking services to the firm.

| | |
|---|---|
| By: Senior Investigator George Maul  *George Maul* | Date Written:  May 21, 2002 |
| At: <u>New York Regional Office</u> | Date Typed:  May 21, 2002 |
| | File No.:  30-099836 |

This document is the property of the Pension and Welfare Benefits Administration. Its contents are not to be disclosed to unauthorized persons.

Page 1 of 4

SCOV/DOL0011

6. REGAN described himself as an investment banker and research analyst qualified under Securities Industry Series 24/27 requirements. He does not consider himself to an administrative type person.

7. REGAN stated that in the late 1990's Auerbach Pollak & Richardson quadrupled in size, going from 40 to 140 employees.

8. REGAN stated that in December, 2000 a Denver-based company named eVision USA.com purchased a 40% stake in Auerbach Pollak & Richardson. eVision paid for its stake in Auerbach Pollak & Richardson with assets consisting mostly of customer accounts. No eVision liabilities were assumed by Auerbach Pollak & Richardson. eVision was owned by a foreign company called Dazo.

9. According to REGAN eVision had a subsidiary called Frontier, which operated independently of eVision.

10. REGAN stated that on December 20, 2000, the NASD approved a mass transfer of eVision 100 stockbrokers over to Auerbach Pollak & Richardson and supplied a fully staffed back office in Denver, Colorado.

11. REGAN stated that prior to combining with eVision Auerbach Pollak & Richardson used ADP to handle payroll but afterwards used Ceridian. All administrative and processing work on payroll was done at Auerbach Pollak & Richardson's Denver office, including sending out paychecks. LEWIS COHEN and MICHAEL BENVENUTO, however, were the Auerbach Pollak & Richardson executives ultimately responsible for managing payroll matters, including deduction of payments for benefits from employee wages. Both worked out of Auerbach Pollak & Richardson's New York City office. REGAN appointed both COHEN and BENVENUTO to their executive positions with Auerbach Pollak & Richardson

12. REGAN stated that eVision continued to pay for the benefits of its own employees. GARY L. COOK and ROBERT TRAPP were principles of eVision, TRAPP being the company's President and CEO.

13. REGAN stated that after the deal with eVision was completed numerous problems arose which ultimately caused Auerbach Pollak & Richardson to collapse. eVision had failed to inform Auerbach Pollak & Richardson about equity put into eVision by other parties. Auerbach Pollak & Richardson inherited some problem brokers in the deal resulting in numerous arbitration decisions unfavorable to Auerbach Pollak & Richardson. These decisions were costly for Auerbach Pollak & Richardson and the firm began to have capitalization problems, becoming about $1 million in debt. One major arbitration case involved a dispute between Auerbach Pollak & Richardson and a clearing firm. Initially successful, Auerbach Pollak & Richardson won an award large enough to resolve Auerbach Pollak & Richardson's capitalization problem. The decision was appealed to New York State Court where the judge unexpectedly overthrew the award. Auerbach Pollak & Richardson became insolvent as a result the appellate decision.

SCUV/DOL0012

14. REGAN stated that Auerbach Pollak & Richardson ceased to be able to fulfill meet the mandatory capitalization requirements of Federal regulation 15c3-1 and took a voluntary cease under SEC Rule 15.3. On May 29, 2001, the firm withdrew as broker dealer participating in the securities industry by filing a form with the NASD and the SEC. Customer accounts which were domiciled at a clearing house were transferred to other dealers Auerbach Pollak & Richardson's last Payroll was on June 15, 2001. In the fall of 2001 Auerbach Pollak & Richardson ceased all operations and went out of business. Auerbach Pollak & Richardson still exists as a corporation. It entered into liquidating transactions but has not filed for bankruptcy.

15. REGAN stated that Auerbach Pollak & Richardson sponsored a 401(k) Plan and a medical insurance health plan.

16. REGAN stated that he knows nothing about the structure, administration or operation of either the Auerbach Pollak & Richardson Health Plan or the Auerbach Pollak & Richardson 401(k) Plan. He himself was a participant in the Auerbach Pollak & Richardson Health Plan but not in the Auerbach Pollak & Richardson 401(k) Plan.

17. REGAN stated that ALEXANDER (AKA "SANDY") BALDWIN served as Auerbach Pollak & Richardson's Senior Vice President for Administration for years and kept that position after Auerbach Pollak & Richardson combined with eVision. BALDWIN was also responsible for managing the Auerbach Pollak & Richardson Health Plan and the Auerbach Pollak & Richardson 401(k) Plan both before and after Auerbach Pollak & Richardson combined with eVision. REGAN said that he appointed BALDWIN to be Auerbach Pollak & Richardson's Senior Vice President for Administration and made him responsible for the management of the two Plans. BALDWIN's telephone number is ⁊c

18. REGAN stated that after Auerbach Pollak & Richardson combined with eVision, TERRI SPAHN handled the day-to-day operations of the Plan out of Denver.

19. REGAN stated that prior to the spring of 2001 employees of Auerbach Pollak & Richardson were covered by the Oxford health Plan. BALDWIN dealt wit Oxford for Auerbach Pollak & Richardson. On April 4, 2001, TERRI SPAHN switched the Auerbach Pollak & Richardson employees into the eVision Plan, which was insured by Great West Life Insurance. REGAN does not know why SPAHN made this switch. He does not recall who terminated Auerbach Pollak & Richardson's agreement with Oxford and does not recall who decided to have Great West Life Insurance cover Auerbach Pollak & Richardson employees for health insurance.

20. REGAN stated that he did not terminate either the Auerbach Pollak & Richardson Health Plan or the Auerbach Pollak & Richardson 401(k) Plan. He did not order or authorize any one else to terminate the Auerbach Pollak & Richardson 401(k) Plan or the Auerbach Pollak & Richardson Health Plan . REGAN is not sure what has happened to the plans in light of Auerbach Pollak & Richardson's collapse. He believes that the Auerbach Pollak & Richardson 401(k) Plan continues to exist and has assets but does not know who is managing the plan.

SCOV/DOL0013

21. REGAN stated that records for both the Auerbach Pollak & Richardson **Health Plan** and the Auerbach Pollak & Richardson 401(k) Plan were maintained by TERRI **SPAHN in the** Colorado office of Auerbach Pollak & Richardson and eVision from early in 2001 **to June 2001.** He believes that SPAHN shipped the plan records to Auerbach Pollak & Richardson's **New York** City office in June, 2001. REGAN does not know what became of the records **after they were** received in New York and does not know where the records of the Auerbach **Pollak &** Richardson Health Plan or the Auerbach Pollak & Richardson 401(k) Plan are **now.**

22. REGAN stated that eVision/American Frontier sponsored its own **401(k) Plan.** REGAN believes that after eVision bought into Auerbach Pollak & Richardson, **brokers** transferred from eVision to Auerbach Pollak & Richardson remained in the e **Vision Plan. All** matters relating to eVision benefits were handled by SPAHN in Colorado and **REGAN knows** nothing about them.

SCOV/DOL0014