IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM SCOVIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GREAT-WEST LIFE & ANNUITY INS. )<br>CO., ONE HEATH PLAN, INC., )<br>AUERBACH, POLLAK & RICHARDSON, )<br>INC., HUGH REGAN, LEWIS COHEN, )<br>ROBERT DRAKE and A. JONES YORKE, )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO.<br>3:02CV01161(AWT)<br><br><br><br><br><br><br><br><br>JULY 13, 2007 |

**DEFENDANTS HUGH REGAN'S, LEWIS COHEN'S AND A. JONES YORKE'S SUPPLEMENTAL REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR <u>MOTION FOR SUMMARY JUDGMENT</u>**

Mark S. Gregory (ct 01252)
James M. Moriarty(ct 21876)
KELLEY DRYE & WARREN LLP
400 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 324-1400
Facsimile: (203) 327-2669
mgregory@kelleydrye.com
jmoriarty@kelleydrye.com

Richard G. Cushing (ct 15997)
CUSHING LAW FIRM, P.C.
420 East 54th Street
New York, New York 10022
Telephone: (212) 371-8880
Facsimile: (212) 704-6288

## **PRELIMINARY STATEMENT**

Pursuant to Federal Rule of Civil Procedure 56 and D.Conn.L.Civ.R. 7(d), Defendants Hugh Regan ("Regan"), Lewis Cohen ("Cohen") and A. Jones Yorke ("Yorke") (collectively, the "Individual Defendants") respectfully submit this Supplemental Reply Memorandum in Further Support of their Motion for Summary Judgment in order to respond to arguments raised by Plaintiff William Scovin ("Scovin") in his June 28, 2007 Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment (hereinafter "Supp. Opp.").

The Individual Defendants filed their Summary Judgment Motion on January 12, 2006. In the eighteen months since that filing, Scovin has done all that he could to prevent that motion from being heard on the merits. His most recent maneuver was filing a misguided Motion for Sanctions, which Magistrate Judge Martinez denied on June 5, 2007. Now, faced with the reality that the Defendants' Summary Judgment Motion will finally be addressed, Scovin desperately attempts to paint the Individual Defendants as nefarious self-dealers. Nothing could be further from the truth.

There is simply no evidence that any of the Individual Defendants exercised discretionary authority over the Auerbach, Pollak and Richardson, Inc. ("APR") health care plan (the "Plan") or its assets. This is a fact. Faced with a lack of evidence to support the contrary notion, Scovin again attempts to create an issue of fact by arguing that the Individual Defendants exercised the requisite control necessary for a finding that they are ERISA fiduciaries solely by reference to the position or positions that each of them held with APR. Making broad conclusory propositions does not defeat a properly supported motion for summary judgment. By failing to meet his burden to come forward with admissible evidence

demonstrating the existence of a genuine issue of material fact necessitating a trial with respect to the ERISA claims against each of the Individual Defendants, his efforts to defeat the motion fail.

As for his common law causes of action, Scovin is so desperate to save his piercing the corporate veil claim he continues to argue that APR failed to adhere to corporate formalities at the same time he supplements the record with numerous minutes from APR Board of Director meetings, conclusively demonstrating that APR did comply with corporate formalities and was not run as a shell for the benefit of the Individual Defendants. Moreover, and significantly, Cohen was not a member of the APR Board of Directors and Scovin proffers no evidence that he had any authority to make decisions on behalf of APR, let alone the types of decisions that would be required to run a corporation for one's personal benefit. With respect to Yorke and Regan, they were only two members of a larger Board of Directors that made decisions with respect to the business of APR. As Scovin well knows, there is simply no evidence that any of the Individual Defendants was draining assets from APR or utilizing them for any wrongful purpose. Indeed, Yorke, Regan and Regan's family lost substantial sums of money as a result of APR's failure.

## ARGUMENT

### I.
### THE ERISA CLAIMS

**A. Yorke was not an Employee of APR and had
No Authority, Discretionary or Otherwise, Over the Plan**

In their January 12, 2006 Memorandum of Law in Support of their Motion for Summary Judgment, the Individual Defendants set forth the relevant legal standard for analyzing whether an individual is a fiduciary for purposes of determining liability under

ERISA. Under that standard, in order to be deemed an ERISA fiduciary, a person must exercise discretionary authority or discretionary control over the management, assets or administration of an ERISA plan. 29 U.S.C. §1002(21)(A). Scovin argues that Yorke is an ERISA fiduciary because APR's Board of Directors approved a "proposed" employment agreement for Yorke pursuant to which Yorke was to serve as APR's Vice Chairman and as its Chief Administrative Officer (Supp. Opp., at 9). The fundamental problem with his argument is that the employment agreement proffered by Scovin is not executed. (See Exhibit 42 to the June 28, 2007 Supplemental Declaration of Kevin M. Greco (hereinafter "Supp. Decl.")). Yorke's uncontradicted deposition testimony demonstrates that he served only as a member of APR's Board of Directors. (See Defendants' January 12, 2006 Local Rule 56(A)1 Statement of Undisputed Facts (hereinafter "DSUF"), at ¶¶ 11-12). Moreover, on March 12, 2001, APR's Board appointed Operating Officers for the Company. Yorke was appointed as Director, nothing more. (Supp. Decl., at Exhibit 48, Schedule A); (DSUF, at ¶¶ 11-12).

      Presenting an unsigned, proposed employment agreement does not suffice to create an issue of fact with respect to Yorke's role at APR. Even if it did, however, it is insufficient to cloak him with ERISA fiduciary status. There is nothing in the unexecuted, proposed employment agreement requiring Yorke to oversee employee benefit plans generally or the Plan in particular and there is nothing in that agreement inferring or implying that Yorke is to be responsible for any human resource related issues, let alone have discretionary authority over the Plan or its assets. Simply put, even if the employment agreement had been validly executed and fully performed by Yorke and APR, Yorke would still be entitled to summary judgment on the ERISA claims asserted against him.

Scovin also argues that Yorke is an ERISA fiduciary because the corporate minutes reflect that Yorke was present at all of APR's Board meetings. (Supp. Opp., at 9). The fact that Yorke, as a member of APR's Board, attended Board meetings and voted on various matters that came before the Board, cannot, as a matter of law, cloak him with ERISA fiduciary status. In re Worldcom ERISA Litig., 263 F.Supp.2d 745, 760 (S.D.N.Y. 2003) ("[a] corporation and its board may wear two 'hats' -- that of an employer and of an ERISA fiduciary. ERISA liabilities arise only from actions taken or duties breached in the performance of ERISA obligations."). Scovin's efforts to create a genuine issue of material fact with respect to his ERISA claims against Yorke fall woefully short and Yorke is entitled to summary judgment on those claims.

**B. Cohen Did Not Have Discretionary Authority Over the Plan or its Assets**

Scovin argues at page 9 of his Supp. Opp. that "Regan stated that Cohen was responsible to manage employee benefits . . . ." What Regan actually said, at least as recorded by a Department of Labor interviewer, is that Cohen and Michael Benvenuto were "ultimately responsible for managing payroll matters, including deduction of payments for benefits from employee wages." (Supp. Dec'l., exhibit 45, at pg. 2). Benvenuto was Cohen's boss. (DSUF ¶ 10). Cohen did nothing more than pay APR's bills and he did so at Benvenuto's instruction. (Id.). Scovin offers no evidentiary support for his statement that "clearly, by Defendant Regan's own words, Cohen was responsible on many levels for the medical Plan, employee deductions, and the Plan's financial status." (Supp. Opp. p. 9.). Indeed, all the record evidence establishes is that Cohen followed the instructions of his boss in carrying out the responsibilities of his position. There is no evidence that Cohen exercised

4

any discretionary authority with respect to the administration or assets of the Plan. He is entitled to summary judgment on the ERISA claims asserted against him.

### C. Regan Is Not an ERISA Fiduciary

Scovin argues that Regan exercised discretion and control over the Plan because he was "interwoven in all aspects of the financial decision making process." (Supp. Opp., at 9). The fact that Regan may have served as APR's President, Treasurer and a member of its Board is insufficient to create a genuine issue of material fact as to whether Regan exercised discretionary authority or control over the Plan or its assets and the unexecuted employment agreement proffered by Scovin does nothing to alter this fact. See, e.g., In re Worldcom ERISA Litig., 263 F.Supp.2d at 760. Scovin must come forward with evidence, not argument or allegations, demonstrating that Regan made decisions regarding the administration of the Plan or exercised discretionary authority over the Plan's assets. Scovin has failed to satisfy this burden. Indeed, the undisputed facts conclusively show that Terri Spahn, not Regan or any of the other defendants, was the Plan administrator. (DSUF, at ¶ 29). Regan's positions with APR are not enough, standing alone, to create an issue of fact necessitating a trial on the ERISA claims brought against him and he is entitled to Summary Judgment on those causes of action.

### D. APR's Voluntary Cease Does Not Convert Certain Of Its Officers and Directors Into ERISA Fiduciaries

Scovin argues at page 10 of his Supplemental Opp. that once APR voluntarily ceased trading, the Individual Defendants were aware that APR would be put out of business and they acquired certain obligations to APR's employees. First, Scovin fails to cite any authority for his argument that knowledge of an ERISA plan sponsor's financial difficulties can cloak certain officers and directors with ERISA fiduciary status. In fact, if that was the

5

law, every officer and director of each financially troubled company that offered employee benefit plans subject to ERISA regulation would be deemed a fiduciary for purposes of ERISA. Second, Scovin does not explain why only two of APR's four Board members owed obligations to its employees. Scovin does not explain why Michael Benvenuto, APR's Chief Financial Officer who, contrary to Scovin's argument did not resign from APR until June, 2001 and stayed on as a consultant for a period of time after his resignation, (January 12, 2006 Declaration of James M. Moriarty, Ex. 4 (pg. 78); Ex. 19; ex. 5 (pgs. 15-16)), did not owe the same obligations to employees as the Individual Defendants. The fact is, none of the Individual Defendants became cloaked with ERISA fiduciary status as a result of APR's financial difficulties brought on by an unfavorable arbitration award and, as stated, Scovin cites no authority to support his argument to the contrary.

Lastly, Scovin argues the Individual Defendants exercise of discretion and control over the Plan is evidenced by the fact that an APR Board meeting took place on June 20, 2001. With respect to Cohen, he was not a Board member and there is no evidence that he attended that Board meeting. With respect to the meeting itself, there is nothing in the minutes indicating that the Board discussed the Plan or any other human resources issues. Indeed, based on the minutes, it appears that the meeting participants, in an effort to save APR, discussed the potential settlement of the very arbitration that had caused APR to take a voluntary cease in late May, 2001. Pointing to a June, 2001 APR Board meeting does not create an issue of fact about whether any of the Individual Defendants was a fiduciary for purposes of ERISA.

## II.
## SCOVIN'S COMMON LAW CLAIMS

Scovin contends that there are genuine issues of material fact necessitating a trial on his common law claims. As set forth at length by the Individual Defendants in their January 12, 2006 Memorandum of Law and April 20, 2006 Reply Memorandum of Law, Scovin's common law claims and his claim under the Connecticut Unfair Trade Practices Act are preempted by ERISA. Even if, however, those claims are not preempted, there is no genuine issue of material fact necessitating a trial of any of them.

Scovin claims, without citing any evidentiary basis, that "at the June 20, 2001 Meeting of the Board, Defendants/Directors Regan and Yorke were still cutting financial deals for themselves." (Supp. Opp., at 12). There is no evidence that Regan and Yorke ever cut financial deals for themselves, let alone that they were still doing so in June, 2001. Indeed, the evidence is quite to the contrary:

- Yorke was never paid by APR for serving as a member of its Board of Directors (August 16, 2005 testimony of A. Jones Yorke ("Yorke Tr."), pg. 7 (4-8), attached to the July 13, 2007 Supplemental Declaration of James M. Moriarty ("Moriarty Supp. Dec'l.") as Ex. 23);

- Yorke made a $100,000 loan to APR in 1993 or 1994. Only $6,000 of this was repaid and Yorke wrote off the remainder of the loan as a bad debt (Yorke Tr., pg. 5(19)-6(11), Ex. 23 to the Moriarty Supp. Dec'l);

- Regan put substantially more money into APR then he received from APR (August 16, 2005 testimony of Hugh Regan, Pg. 13(21)-14(6), attached to the Moriarty Supp. Dec'l. as Ex. 24);

- In 2001, Regan, with the assistance of family members, infused APR with more than $1,000,000 of fresh capital. The entirety of this investment was lost when APR failed. (Yorke Tr., pg. 17 (7-12), Ex. 23 to the Moriarty Supp. Dec'l.; (DSUF 44)).

Scovin knows all of these facts and he also knows full well that the settlement discussed at the June 20, 2001 Board meeting, as reflected in the Board minutes from that meeting, was the settlement of an arbitration award against APR. That award, which totaled nearly $3,000,000,

7

was the event that had caused APR to take a voluntary cease. (DSUF ¶ 40). Obviously, any settlement would have required APR to pay money to the Arbitration Claimant; Scovin fails to explain how it is that Regan and Yorke could escrow settlement proceeds for their own benefit under such a scenario.

Scovin continues to argue, in the face of overwhelming evidence to the contrary, that the Individual Defendants ran APR with a complete lack of corporate formality. Scovin himself has supplemented the summary judgment record with minutes from numerous APR Board meetings demonstrating that all corporate formalities were followed. In addition, Scovin argues that there is a genuine issue of material fact with respect to his piercing the corporate veil claim because Regan "told the DOL that he essentially did nothing as the company collapsed." Nowhere in the DOL May 21, 2002 Report of Interview does Regan say that "he essentially did nothing as the company collapsed." (See Supp. Dec'l., at ex. 45). It is the contrary that was true:

> Q. During June and July, were you trying to recapitalize APR?
>
> A. Was I personally?
>
> Q. Yes.
>
> A. During June and July I think the hope was that the arbitration award would come in, which would stabilize things, that the SBI transaction would close, which was intended to finance the growth of the firm, and if that didn't happen, find alternatives to, so, yes, I entertained, as numbers of us did, trying to find new sources of capital or groups to join to put in money.

(Exhibit 4 to the January 12, 2006 Declaration of James M. Moriarty, pg. 77(9-19)).

8

Scovin is talking out both sides of his mouth. He accuses the Individual Defendants of failing to adhere to corporate formalities even though he has records demonstrating that corporate formalities were followed and then, based on the information contained in the Board minutes, he accuses the Individual Defendants of running APR for their own benefit. As evidence of this alleged self-dealing, Scovin points to minutes of a September, 2000 Board meeting wherein the APR Board, believing that APR had just won a major arbitration award against UBS, "granted a first priority security interest in the award in favor of the Senior Secured Promissory notes held by Hugh Regan and his family." (Supp. Decl., Ex. 43). In other words, the APR Board was granting a security interest in an arbitration award to secure the debt of a creditor. Scovin attempts to paint this action by the APR Board as wrongful and states that the Defendants, not the APR Board, but the Defendants, "were granting security interests in company money to Defendant Regan himself and to counsel for attorney's fees." (Supp. Opp., at 4). The Individual Defendants did not grant anybody anything. The APR Board granted a security interest to a creditor that held Senior <u>Secured</u> Promissory notes and to lawyers to secure fees owed to them resulting from their prosecution of the UBS arbitration.[1] Scovin fails to explain how this action by the APR Board was wrongful or how it creates a genuine issue of material fact. Scovin's piercing the corporate veil claim is frivolous. The Individual Defendants are entitled to summary judgment on that and all of Scovin's claims.

---

[1] There is no dispute that the UBS arbitration award was subsequently vacated by the New York Courts and no proceeds from that vacated award were ever received.

9

## CONCLUSION

For all of the foregoing reasons, as well as the reasons set forth in the Individual Defendants' January 12, 2006 Memorandum in Support of their Motion for Summary Judgment, D.Conn.L.Civ.R. 56(a)(1) Statement of Undisputed Facts and their April 20, 2006 Reply Memorandum in Further Support of Their Motion for Summary Judgment, the Individual Defendants' Motion for Summary Judgment should be granted in all respects.

|  |  |
|---|---|
| Richard G. Cushing (ct15997)<br>Cushing Law Firm, P.C.<br>420 East 54th Street<br>New York, New York 10022<br>Telephone: (212) 371-8880<br>Facsimile: (212) 704-6288<br>richard.cushing@trautman.com | THE DEFENDANTS HUGH REGAN,<br>LEWIS COHEN AND A. JONES YORKE<br><br>By: /s/ James T. Moriarty<br>Mark S. Gregory (ct 01252)<br>James M. Moriarty (ct 21876)<br>KELLEY DRYE & WARREN LLP<br>400 Atlantic Street<br>Stamford, Connecticut 06901<br>Telephone: (203) 324-1400<br>Facsimile: (203) 327-2669<br>mgregory@kelleydrye.com<br>jmoriarty@kelleydrye.com |

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via overnight mail, postage prepaid this 13th day of July, 2007 on all counsel of record as follows:

>Kevin M. Greco, Esq.
>Stephanie A. McLaughlin, Esq.
>Peter M. Nolin, Esq.
>Sandak Hennessey & Greco
>707 Summer Street
>Stamford, Connecticut 06901
>(203) 425-4200
>(203) 325-8608 (facsimile)
>***Attorneys for William Scovin***

>Mr. Robert Drake
>558 Lime Rock Road
>Lakeville, Connecticut 06039
>***(Pro se)***

*(signature)*
James M. Moriarty

CT01/MORIJA/243799.1